UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(Miami Division)

Case No. 25-cv-23202-JB

ZOHRA KHORASHI,

    Plaintiff,

v.

GADI BEER AND BETH GELLMAN BEER,

    Defendants.

_____/

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

Defendants, Gadi Beer and Beth Gellman Beer ("Defendants"), by and through their undersigned counsel, reply as follows to Plaintiff's Response to Defendants' Motion to Dismiss [DE 23] (the "Response").

**INTRODUCTION**

Plaintiff's Response [DE 23] does not cure the fundamental defects in her Complaint [DE 1]. She concedes that Defendants' alleged conduct consisted of reposting only truthful, publicly available information about her law firm in the context of a viral public controversy concerning the Israel–Hamas conflict and alleged antisemitism. As a matter of law, such expressive activity is protected speech on a matter of public concern, not actionable interference. Florida and federal courts have consistently held that the republication of truthful, lawfully obtained information cannot give rise to tort liability absent falsity or independent unlawful conduct.

Moreover, Plaintiff has not and cannot plausibly allege causation. Her own pleadings admit that Chartwell terminated her based on its independent judgment that her social-media activity did not align with the firm's values, and amid widespread attention from other actors.

1

Plaintiff's reliance on inapposite authorities—including cases involving knowingly false accusations, misuse of confidential insider information, or fiduciary misconduct—only underscores the weakness of her position. None of the cases cited by Plaintiff stand for the proposition she attributes to them, and none support imposing liability on Defendants.

Because Plaintiff seeks to punish Defendants for participating in constitutionally protected public debate, her claim is barred by the First Amendment and Florida's Anti-SLAPP statute, and dismissal with prejudice, as well as an award of reasonable attorneys' fees and costs to Defendants, is warranted.

## ARGUMENT

**I. PLAINTIFF HAS FAILED TO STATE A COGNIZABLE CLAIM FOR TORTIOUS INTERFERENCE AGAINST EITHER DEFENDANT.**

**A. Publication of truthful, publicly available information cannot serve as the predicate for a tortious interference claim.**

In her Response, Plaintiff argues that Defendants' publication of truthful, publicly available information—her Chartwell Law profile—can serve as the predicate for a tortious interference claim. This contention fails for at least three reasons.

First, the law is clear that no tort liability can attach for the mere republication of truthful, public information. *See e.g.*, *Florida Star v. B.J.F.*, 491 U.S. 524, 541 (1989) (reversing Florida court decision imposing liability for publishing a rape victim's name taken from public records and opining that when a defendant "publishes truthful information which it has lawfully obtained, punishment may lawfully be imposed, if at all, only when narrowly tailored to a state interest of the highest order"); *Palm Beach Newspapers, LLC v. State*, 183 So. 3d 480, 483 (Fla. 4th DCA 2016) ("Where matters of public concern are involved, privacy interests give way to the First Amendment right to publish lawfully obtained, truthful information about such matters."); *Wesley Financial Group, LLC v. Westgate Resorts, Ltd.*, 746 F.Supp.3d 1342 (M.D. Fla. 2024) (dismissing

a tortious interference claim and noting that "a plaintiff cannot succeed in a tortious interference case if the defendant merely gave a third party truthful information."); *Worldwide Primates, Inc. v. McGreal,* 26 F.3d 1089, 1092 (11th Cir. 1994); <u>see also</u> Restatement (Second) of Torts § 772. Even accepting Plaintiff's allegations as true, Defendants' only alleged conduct that serves as the predicate for Plaintiff's tortious interference claim is Defendants purportedly posting a link to Plaintiff's publicly available law firm profile page. Without more, Plaintiff's tortious interference claim must fail.

Second, the cases Plaintiff relies upon in her Response to support her assertion that "Florida law does not immunize malicious interference simply because the information disclosed was true," [DE 23, at 4], are all either clearly distinguishable from the instant case or they do not in fact stand for the principle that Plaintiff asks this court to adopt. *See Id.* (citing *Salit v. Ruden McClosky, Smith, Schuster & Russell, P.A.*, 742 So.2d 381, 384-85 (Fla. 4th DCA 1999);[1] *Ethyl Corp. v. Balter*, 386 So. 2d 1220, 1223–24 (Fla. 3d DCA 1980);[2] *Drewes v. Cetera Financial Group, Inc.*, 2021 WL 5810634 (S.D. Fla. Dec. 7, 2021)).[3]

---

[1] *Salit* involved allegations that a company president and his lawyer allegedly presented *knowingly false accusations* to the board of directors, it did not concern the disclosure of truthful information as Plaintiff erroneously claims. *See* 742 So.2d 381, 384-85 (Fla. 4th DCA 1999).

[2] The decision in *Ethyl* actually favors Defendants. In *Ethyl,* the court reversed judgment for a plaintiff on a tortious interference claim due to a lack of causation, opining that plaintiff was able to show "at most, that steps taken by [the defendant] very indirectly led to" the damages claimed, and holding that "[t]here is no such thing as a cause of action for interference which is only negligently or consequentially effected." *See* 386 So. 2d 1220, 1223–24 (Fla. 3d DCA 1980).

[3] *Drewes* involved insider misconduct and fiduciary duties surrounding a financial advisor retirement program, where plaintiffs alleged that company executives acted "under the control, authorization and order of [the defendant]" to cancel the program and induce execution of a release relinquishing valuable contractual rights. *See* 2021 WL 5810634, at *14-17 (S.D. Fla. Dec. 7, 2021). Although defendants in *Drewes* claimed they had merely provided "truthful information," the court held disputes remained because, "but for [the defendant's] statements, [the plaintiff] would not have signed the release." *Id.* at *14-15. Here, by contrast, Defendants owed no fiduciary or contractual duties to Plaintiff and did not induce her to give up rights or execute agreements.

Third, accepting Plaintiff's theory would stretch tortious inference law far beyond its limits and impermissibly chill protected speech. Plaintiff cannot transform constitutionally protected speech into tortious interference merely because she dislikes the consequences of public attention to her own professional identity. Courts have routinely rejected attempts by litigants to recast inadequate defamation claims as interference claims in order to evade the requirements of falsity and privilege. *See Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. 4th DCA 2002); *Klayman v. Jud. Watch, Inc*., 22 F. Supp. 3d 1240, 1255-56 (S.D. Fla. 2014).

What's more, the Court's decision carries implications far beyond the confines of this case. Were Plaintiff's theory of liability to be accepted, any individual who suffers employment repercussions after disseminating controversial online content could pursue claims against any member of the public who merely republishes or comments upon that content. Such a result would open the courthouse doors to a torrent of lawsuits arising from every modern "cancel culture" dispute, effectively transforming tort law into a tool for suppressing protected expression. Florida law and the First Amendment alike foreclose such a boundless and chilling expansion of liability. Recognizing Plaintiff's claim would threaten the vitality of public discourse, while dismissal preserves both employer accountability for independent employment decisions and the freedom of citizens to engage openly in matters of public concern.

**B. Plaintiff cannot establish a causal relationship between Defendants' alleged interference and her damages.**

Plaintiff's reliance on S*t. Johns River Water Mgmt. Dist. v. Fernberg Geological Servs., Inc.*, 784 So.2d 500 (Fla. 5th DCA 2001), to support her assertion that she has "plausibly alleged

---

They simply reposted employer information that was already publicly available. The type of "malice" at issue in *Drewes*—contractual bad faith and alleged exploitation of a 77-year-old stroke victim, *id.*, at *4—is wholly distinct from online criticism in the context of political debate like that at issue here.

causation" is similarly misplaced. [*See* DE 23, at 8-9]. Far from supporting her position, *St. Johns* underscores that causation cannot be established by speculation. The court reversed a jury verdict because the plaintiff had only a "speculative hope of future business," holding that the plaintiff "did not make this requisite prima facie showing" that its contract "would have been completed had the defendant not interfered." *Id.* at 505. The court emphasized that "suppositions of what [the client] would or would not have done are not relevant," and that a directed verdict was required because there was a "complete absence of competent substantial evidence" of causation. *Id.* Here, Plaintiff similarly speculates that her termination was caused by Defendants' online posts, despite acknowledging that her employer acted based on its own independent judgment and amid publicity and pressure from multiple sources. Under *St. Johns,* such conjecture is insufficient as a matter of law to sustain a tortious interference claim.

### C. **Plaintiff's arguments relating to "doxing" cases and cases discussing privilege doctrines are red herrings.**

In her Response, Plaintiff devotes substantial briefing to issues that have no bearing on the claims actually pled. She cites out-of-circuit and unpublished cases involving so-called "doxxing" and asserts that Defendants' speech was not protected by any applicable privilege. But Plaintiff has not brought a claim for "doxxing," and no such cause of action exists under the governing law. Nor has she brought a defamation claim that would implicate questions of privilege. These arguments are therefore distractions from the dispositive issues before the Court and provide no basis to deny dismissal. By raising these arguments in her Response, Plaintiff only underscores the weakness of her case: she is importing doctrines from a different body of law in an effort to manufacture liability where none exists. The Court should disregard these arguments as irrelevant.

A cursory review of the authorities cited by Plaintiff to support her arguments on these points further confirms the irrelevance of Plaintiff's positions. For example, in *Couture v.*

*Noshirvan*, No. 2:23-cv-340-SPC-KCD, 2024 WL 1530723 (M.D. Fla. Apr. 9, 2024) (unpublished), the court sustained a tortious interference claim where the defendant allegedly used confidential information provided by a former employee with "practice-wide access and knowledge of Garramone's business operations" to target the plaintiffs' patients. *Id.* at 3. The allegations included that the defendant "flood[ed] the social media accounts of Garramone's patients with links to his videos" and relied on "private and confidential information concerning Garramone Plastic Surgery's business relationships with its existing patients." *Id.* By contrast, Defendants here did not exploit confidential data or insider contacts to interfere with Plaintiff's employer. Plaintiff admits Defendants posted only truthful, publicly available information linking her to her law firm. The critical factor in *Couture*—the misuse of non-public patient information obtained through an insider—is absent here. Thus, this unpublished decision does not support Plaintiff's attempt to transform online reposting of public facts into tortious interference.

Similarly, in *Vangheluwe v. Got News, LLC*, 365 F. Supp. 3d 850 (E.D. Mich. 2019), the court addressed personal jurisdiction over a defendant who doxed and falsely identified a Michigan resident as the Charlottesville car attacker. *Id.* at 853-56. The case turned on the extreme and false nature of the allegations and the jurisdictional effects of targeting a forum resident. This case is wholly different. Defendants did not falsely attribute criminal conduct to Plaintiff; they reposted truthful, publicly available information about her employer. *Vangheluwe* dealt with jurisdiction and false criminal accusations, not truthful speech tied to political commentary.

## II. DEFENDANTS' ALLEGED "INTERFERENCE" IS SPEECH ON A MATTER OF PUBLIC CONCERN PROTECTED BY THE FIRST AMENDMENT.

In an apparent attempt to avoid dismissal and liability for Defendants' attorneys' fees under Florida's Anti-SLAPP statute, Fla. Stat. § 768.295, Plaintiff asserts in her Response that Defendants' speech giving rise to the allegations of "interference" in the Complaint "did not

6

protest or comment on any public issues of importance." [DE 23, at 11]. This assertion cannot withstand scrutiny.

As Plaintiff's own Complaint [DE 1] repeatedly acknowledges, the controversy surrounding her social media activity did not arise in a vacuum—it was part of a viral, highly charged public debate regarding the Israel-Hamas war and alleged antisemitism. Plaintiff admits that her posts "predictably drew negative and sometimes threatening reactions and comments from supporters of Israel and self-proclaimed Zionists." [DE 1, at ¶ 17]. She further concedes that her purported "doxxing" on the "jewhatedb" page "generated dozens of hateful and threatening comments, as well as speculation about where she worked and demands that she be fired by whatever Law Firm employed her." *Id.* at ¶ 26. Plaintiff's own allegations therefore make clear that the viral controversy was not a private dispute but a public debate about antisemitism, community values, and professional integrity.

Once Plaintiff's posts were perceived (rightly or wrongly) as antisemitic, members of the public naturally connected those views to the law firm employing her. In fact, according to the Complaint, one commenter specifically requested that someone "find out who this person is and have her fired . . . she's a lawyer, should be easy to find her," *id.*, and Defendants—along with several other commenters—simply responded to such requests. These allegations confirm that the public debate had already expanded beyond Plaintiff's personal views to include her professional role and the identity of her employer. Whether one agrees or disagrees with the merits of that debate, there can be no question that it was a matter of significant public interest and therefore entitled to First Amendment protection. *See Snyder v. Phelps,* 562 U.S. 443, 451-52 (2011). As the Supreme Court explained, "[s]peech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when

7

it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." See Lane v. Franks, 573 U.S. 228, 241, 134 S. Ct. 2369, 2380, 189 L. Ed. 2d 312 (2014) (internal citations and quotations omitted).

Under settled First Amendment principles, discussion of her employer in that context was inseparable from the broader public discourse. The Complaint alleges no falsity, no defamation, and no independently wrongful conduct—only the republication of truthful, publicly available information. Florida law forecloses tortious interference claims based on such conduct, and Plaintiff's authorities, properly understood, confirm rather than contradict that result.

Because the Complaint targets protected expression, it falls squarely within the scope of Florida's Anti-SLAPP statute. The Court should therefore dismiss this action with prejudice on an expedited basis and award Defendants their reasonable attorneys' fees and costs under Fla. Stat. § 768.295.

Dated: October 16, 2025.

Respectfully Submitted,

/s/ Jaclyn S. Clark

KENNETH G. TURKEL
Florida Bar No. 867233
Email: kturkel@tcb-law.com
DAVID A. HAYES
Florida Bar No. 96657
TURKEL • CUVA • BARRIOS • GUERRA
100 N. Tampa Street, Suite 1900
Tampa, FL 33602
Phone: (813) 834-9191
Fax:    (813) 443-2193

JACLYN S. CLARK
Florida Bar No. 117652
Email: Jaclyn@thelawfareproject.org
THE LAWFARE PROJECT

633 THIRD AVENUE, 21ˢᵗ Floor
New York, NY 10017
Phone: (212) 339-6995

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on <u>October 16, 2025</u>, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification to all counsel of record.

<u>/s/ *Jaclyn S. Clark*</u>
Counsel