IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(Miami Division)
Case No. 25-cv-23202-JB

ZOHRA KHORASHI,

    Plaintiff,

vs.

GADI BEER and BETH GELLMAN BEER,

    Defendants.

_____/

## **Plaintiff's Motion for Sanctions and to Disqualify Defendants' Counsel for Extrajudicial Conduct**

Plaintiff, Zohra Khorashi, hereby moves for sanctions and to disqualify Defendants' counsel in this matter, based on defense counsels' extrajudicial statements in a "Press Release" issued by the Lawfare Project on December 3, 2025, that clearly violate both the letter and spirit of Local Rule 77.2 regarding restrictions on extrajudicial statements by attorneys about criminal and civil proceedings in the Southern District of Florida. For the following reasons, the Motion for Sanctions should be GRANTED.

### **Introduction**

On November 19, 2025, this Honorable Court heard oral arguments on Defendants' Motion to Dismiss Plaintiff's Complaint filed on July, 2025. After hearing both sides, the Court announced its ruling on the record and on November 20, 2025, entered a paperless order granting and denying the motion in part, without prejudice to Plaintiff and with leave to amend within twenty days, or on or before December 10, 2025.

1

The stated basis for this Court's decision at the hearing was that Plaintiff had not alleged sufficient facts to support an inference of causation based on the Defendants' alleged tortious interference and failed to rebut the legal presumption that the mere posting of truthful information about her identity and employment in Chartwell Law's Miami Office employer could not support a claim for tortious interference under Florida Law.

Before stating its reasons for granting the Motion to Dismiss at the hearing, the Court specifically rejected all of Defendants' arguments regarding the applicability of Florida's Anti-SLAPP statute § 768.295(1), Fla. Stat. to Plaintiff's claims and denied their claim that the statements attributed to them as part of the tortious interference case were protected by the First Amendment. The Court further advised Defendants not to raise the argument again if Plaintiff amended her tortious interference claim filed an amended complaint.

On December 3, 2025 – one week prior to the deadline for Plaintiff's amended complaint -- The Lawfare Project, which is one of two firms representing the Defendants in this case, issued the following "Press Release" about the case on its publicly accessible Lawfare Project Website, with an active link to the case docket on CM/ECF. The Press Release carried the heading "**Federal Judge dismisses CAIR-backed lawsuit targeting Jewish community**" and includes the following information, quotes and opinions about the case from Defendants' counsel of record Kenneth Turkel, Esq. and Jaclyn S. Clark, Esq.:

> The Lawfare Project, together with its co-counsel at [Turkel Cuva Barrios Guerra, P.A.](), announced today that the U.S. District Court for the Southern District of Florida has dismissed a lawsuit filed by Zohra Khorashi, a former attorney at Chartwell Law terminated for her

2

antisemitic social media posts against a Pennsylvania Jewish couple who were targeted for sharing truthful, publicly available information.

The case—*Khorashi v. Beer,* No. 25-cv-23202-JB (S.D. Fla.)—was filed by attorneys from the Council on American-Islamic Relations (CAIR), an organization with ties to the Muslim Brotherhood and which was designated as a Foreign Terrorist Organization by the State of Texas last month. The lawsuit alleges that the Defendants "doxed" Khorashi by posting a link to her already-public Chartwell Law profile in the comments of a viral "jewhatedb" Instagram post, where speculation was circulating about her employment following outrage over her antisemitic statements.

"In light of Governor Abbott's designation of CAIR as a terrorist organization, it's more urgent than ever for Americans to understand how lawfare is being deployed as a weapon of war—to intimidate, to silence, and to punish those who speak the truth," said Brooke Goldstein, Executive Director and Founder of The Lawfare Project. "CAIR has relied on these tactics for years. But that era is ending. Thanks to the courage of our clients and our co-counsel Ken Turkel, these abusive legal assaults are being exposed and defeated. The American public is finally seeing lawfare for what it is—and refusing to be bullied by it."

"Our clients in this case were sued not for spreading falsehoods, but for posting the truth," said Jaclyn S. Clark, The Lawfare Project attorney who argued on behalf of Defendants at the motion to dismiss hearing. "CAIR's latest lawfare tactic is to weaponize tort law against Jewish community members who speak out against antisemitism. We're seeing similar lawsuits across the country. This ruling reaffirms what should never be in doubt: the First Amendment does not yield to harassment litigation. If the Plaintiff chooses to refile, we will vigorously defend our clients and use this case to establish precedent that stops CAIR's attempts to intimidate Jews into silence."

Represented by attorneys from The Lawfare Project and Turkel Cuva Barrios, P.A., the Defendants moved to dismiss the case for failure to state a claim. The Honorable Jacqueline Becerra granted the motion after holding oral argument on November 19th, dismissing the Complaint without prejudice. In doing so, the Court recognized that the Complaint was fatally flawed on causation: Khorashi's own complaint acknowledges that Chartwell Law alone decided to terminate her based on its assessment of her social media activity, and that widespread attention to her posts came from many sources.

The Court also made clear that sharing truthful, publicly available information–as the Defendants did here–cannot give rise to a tortious interference claim under Florida law.

> "This decision reflects proper application of core First Amendment principles in this case," said Ken Turkel, partner at Turkel Cuva Barrios Guerra, P.A. "Florida law and the Constitution protect the right to share truthful information about matters of public concern. We will continue to defend these rights to the full extent of the law should Plaintiff attempt to refile."
>
> The Lawfare Project's defense of this case underscores the vital importance of protecting constitutional rights from those who seek to erode them through intimidation and litigation.

*See* Exhibit A, copy of Press Release issued December 3, 2025, which can be found at https://www.thelawfareproject.org/releases/2025-12-03/federal-judge-dismisses-cair-backed-lawsuit-targeting-jewish-community.

A fair reading of the "Press Release" leaves little doubt that it was intended to convey the following message regarding the case:

- Plaintiff's counsel of record in this case have been designated by the government as members of an active domestic Islamic terrorist group that is affiliated with the international Muslim Brotherhood;

- Because CAIR and Plaintiff's counsel have been designated as terrorists, cases brought by CAIR on behalf of other Muslims like Ms. Khorashi are an abuse of the legal system that are ruthlessly deployed as "weapons of war" to silence Jewish individuals who only "speak the truth" when they publicly accuse others of antisemitism;

- The court's dismissal without prejudice of Plaintiff's Complaint was a vindication of Defendants' First Amendment rights and reflects a proper application of First Amendment principles and their rights to freely discuss matters of public concern.

4

- American citizens should speak out and refuse to be bullied by the abusive legal tactics of Muslim terrorist organization like CAIR and its attorneys in this case who are maliciously weaponizing tort law to intimidate, silence and punish Jewish citizen who simply speak out about alleged antisemitism.

Florida law is unequivocal that attorneys may not publicly mischaracterize judicial proceedings or inject bias, hostility, or intimidation into litigation. As the Florida Supreme Court held in *Florida Bar v. Norkin*, 132 So.3d 77, 87 (Fla. 2013): "An attorney who impugns the integrity of the judiciary, misstates the substance of a court order, or otherwise demeans the justice system engages in conduct prejudicial to the administration of justice." That is precisely what occurred here. Based on clear and convincing evidence, defense counsel's inexplicable actions were undertaken in subjective bad faith and with an improper purpose that makes a mockery of the mutual respect, decorum and professionalism that is expected of attorneys who practice in the Southern District of Florida.

Because there is no doubt that defense counsel's self-published extrajudicial statements about this case violated the clear restrictions of Local Rule 77.2 on the release of information in criminal and civil proceedings, Plaintiff and her undersigned counsel respectfully request the court to exercise its inherent powers to severely punish these transgressions and prevent them from being repeated as part of Defendants' tactical agenda to try this case in the court of public opinion before they have any additional negative impact on Ms.

Khorashi's case, the public reputation and character of her attorneys or the efficient and orderly administration of justice under the federal rules.[1]

### Applicable legal Standards

The Eleventh Circuit has recognized that "[c]ourts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates.' " *Thomas v. Tenneco Packaging Co.* , 293 F.3d 1306, 1320 (11th Cir. 2002) (quoting *Chambers v. NASCO, Inc.* , 501 U.S. 32, 43, 501 S. Ct. 2123, 2132, 115 L. Ed. 2d 27 (1991)). "This power 'must be exercised with restraint and discretion' and used 'to fashion an appropriate sanction for conduct which abuses the judicial process.' " *Purchasing Power, LLC v. Bluestem Brands, Inc.* , 851 F.3d 1218, 1223 (11th Cir. 2017) (quoting *Chambers* , 501 U.S. at 44-45, 111 S. Ct. at 2132-33). "A court may exercise this power to sanction the willful disobedience of a court order, and to sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* (internal citations and quotation marks omitted).

The Supreme Court has specifically recognized the Court's "power to proscribe 'extrajudicial statements by any lawyer, party, witness, or court official which divulged prejudicial matters.'" *Adams v. Lab. Corp. of Am.,* No. 1:10-CV-3309-WSD, 2014 WL 7336697, at *3 (N.D. Ga. Dec. 22, 2014) (quoting *Sheppard v. Maxwell*, 384 U.S. 333, 361, 86 S. Ct. 1507, 16 L. Ed. 2d 600 (1966)). "Indeed,

---

[1] Based on the recent date, content and other metadata embedded in the "Press Release" it also currently appears as the number one search result for "Zohra Khorashi" on the Google Chrome browser.

6

'[a]lthough litigants do not surrender their First Amendment rights at the courthouse door, those rights may be subordinated to other interests that arise' in the context of both civil and criminal trials." *United States v. Brown*, 218 F.3d 415, 424 (5th Cir. 2000) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 n. 18, 104 S. Ct. 2199, 2207-08 n.18, 81 L. Ed. 2d 17 (1984)).

Although a court should exercise its inherent authority with "restraint and discretion," *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764 (1980), that discretion is properly exercised when necessary to protect the integrity of judicial proceedings. *Id.*; *see also Purchasing Power, LLC*, 851 F.3d 1218 at 1233 (Federal courts possess an inherent power to "police those appearing before them," and to punish bad faith conduct that affects proceedings pending before the Court). "The dual purpose of this power is to vindicate judicial authority without resorting to a contempt of court sanction and to make the prevailing party whole." *Id.* Sanctions can be imposed under this power only if a party has acted in subjective bad faith. *Id.*

In addition to the court's inherent authority, Rule 77.2 of the Local Rules for the Southern District of Florida specifically addresses the information that may be included in an extrajudicial public statement or release of information in criminal and civil proceedings.

Local Rule 77.2(a) makes clear that lawyers shall not "release or authorize the release of information or opinion which a reasonable person would expect to be disseminated by means of public communication, in connection with pending or imminent criminal litigation with which the lawyer or the firm is associated,

7

if there is a reasonable likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice." Local Rule 77.2(g) further states that "[a] lawyer or law firm associated with a civil action shall not during its investigation or litigation make or participate in making an extrajudicial statement, other than a quotation from or reference to public records . . . if there is a reasonable likelihood that such dissemination will interfere with a fair trial and which relates to: (1) Evidence regarding the occurrence or transaction involved; (2) The character, credibility, or criminal record of a party, witness, or prospective witness . . . (4) The lawyer's opinion as to the merits of the claims or defenses of a party, except as required by law or administrative rule [or] (5) Any other matter reasonably likely to interfere with a fair trial of the action."

## Argument

**The Press Release issued by Defendants' counsel of record in this case represents a clear and willful violation of counsel's duties and obligations under Local Rule 77.2 that cannot be permitted by the court or repeated in the future**

Here, it is undisputed that the Press Release was either written or approved by the Beers defense counsel before it was intentionally published on the Lawfare Project's Firm website and therefore constitutes an extrajudicial public statement under Local Rule 77.2. It is equally self-evident from a fair reading of defense counsel's emotionally charged words, statements and opinions about the case that the public dissemination of a "Press Release" of this nature would have a reasonable likelihood of interfering with Plaintiff's right to a fair trial or otherwise prejudicing the due administration of justice by the court,

8

making it prohibited under Local Rule 77.2(a).  And by virtue of the fact that defense counsel's press release comes up as the first article on a Google search of Plaintiff's name, if the case ultimately proceeds to trial there is also a significant likelihood of it being seen by potential jurors in Miami-Dade County, or generating negative pretrial publicity about the case based on the baseless defamatory accusation that Plaintiff's counsel of record are members of a domestic Muslim terrorist organization.

In addition to the clear and convincing evidence that the statements and opinions expressed by defense counsel in Press Release constitute a *per se* violation of Local Rule 77.2(a) that was specifically intended to interfere with a fair trial or otherwise prejudice the due administration of justice, defense counsel's gratuitous, unprofessional and baseless personal attacks on Plaintiff and her undersigned counsel show their complete lack of respect for this court's authority as well as the decorum, respect and professionalism that is expected from members of the Florida Bar and the Bar of this court.  But for the nearly absolute litigation privilege under Florida law, defense counsels' malicious and knowingly false accusations that Plaintiff's Muslim attorneys in this case are members of a violent domestic Islamic terrorist group affiliated with the international Muslim Brotherhood would surely be actionable as defamation *per se* under Florida law.

If the gratuitous personal attacks on Plaintiff's counsel were not bad enough, the "Press Release" also includes a false claim that the Court's order granting the motion to dismiss was based on Defendants' arguments regarding

9

the applicability of Florida's Anti-SLAPP statute § 768.295(1), Fla. Stat. and represented a vindication of Defendants' First Amendment rights to freely discuss matters of public concern. Defense counsels' lack of candor and their self-serving public mischaracterization of the true reasons for dismissal show a fundamental lack of respect for the Court and the integrity of its rulings in this case.

In addition to the Local Rules, Florida Rule of Professional Conduct 4-3.6 (Trial Publicity) prohibits any attorney from making public statements that the lawyer "knows or reasonably should know will have a substantial likelihood of materially prejudicing an adjudicative proceeding." In *Florida Bar v. Wasserman*, 675 So. 2d 103, 105 (Fla. 1996), the Florida Supreme Court disciplined an attorney for statements that "were likely to prejudice ongoing litigation and undermine the fairness of courtroom proceedings." Defense counsel's press release here – which misrepresents the basis of the Court's ruling, invokes inflammatory religious themes, and frames Plaintiff's counsel as domestic terrorists aligned with extremist causes -- is precisely the type of prejudicial public commentary prohibited by Rule 4-3.6 and sanctioned in Wasserman.

Florida Rule of Professional Conduct 4-8.4(d) (Conduct Prejudicial to the Administration of Justice) similarly forbids any conduct that is "prejudicial to the administration of justice." In *Florida Bar v. Ray*, 797 So. 2d 556, 558 (Fla. 2001), the Court explained that "[s]tatements by an attorney that diminish the public's confidence in the integrity and neutrality of our judicial system constitute conduct prejudicial to the administration of justice." Defense

10

counsel's press release falsely stating that the Court's dismissal without prejudice of Plaintiff's claims vindicated Defendants' First Amendment Rights diminishes public faith in the fairness of this proceeding and undermines judicial neutrality.

Florida law forbids attorneys from injecting discriminatory or religious hostility into litigation. In *Florida Bar v. Schwartz,* 605 So.2d 465, 466 (Fla. 1992), the Florida Supreme Court sanctioned a lawyer for comments that carried "ethnic and religiously charged overtones," holding that such statements violate Rule 4-8.4(d) because they "create prejudice and hostility inconsistent with the standards of our profession."  By invoking fears of Muslim extremism and terrorism, "CAIR-backed assaults" and weaponization of the legal system and linking Plaintiff to Islamic political or ideological threats, the "Pres Release" falls squarely within the type of religiously coded rhetoric that was strongly condemned in *Schwartz.*

In *Florida Bar v. Martocci,* 791 So.2d 1074, 1077-1078, the Court imposed sanctions on an attorney whose comments "created an atmosphere of hostility, intimidation, and disrespect that had no place in our justice system." The "Press Release" here – which portrays Plaintiff and her counsel as terrorists trying to manipulate and abuse the justice system to intimidate and silence the First Amendment rights of Jewish Americans — creates the same hostile and intimidating environment condemned in *Martocci.*

Finally, in *Norkin, supra,* the Florida Supreme Court held that "[m]isrepresenting the substance of a court's ruling is a serious ethical breach

11

that demeans the justice system and warrants significant discipline." 132 So. 3d at 87. The "Press Release" written and published by defense counsel falsely represents that the Court ruled for the Beers on the merits of their affirmative defense under Florida's Anti-SLAPP statute § 768.295(1), Fla. Stat. is exactly the type of public misrepresentation that is prohibited under *Norkin*.

In the absence of any possible justification for defense counsel's bad faith conduct in connection with issuance and publication of their "Press Release" about this case on December 3, 2025, the court should exercise its inherent powers to sanction Kenneth Turkel, Esq. and Jaclyn S. Clark, Esq. and to deter them and others from engaging in similar abusive conduct that maliciously demonizes the opposing party and their counsel, undermines the court's authority and ultimately the integrity of the judicial system and right to a fair jury trial under the United States Constitution.

Under Eleventh Circuit precedent, case-ending sanctions are proper only if there is "clear and convincing evidence that (1) a defendant acted in bad faith, (2) the plaintiff was prejudiced by this conduct, and (3) lesser sanctions would not adequately serve the goals of punishment and deterrence." *Sprint Sols., Inc. v. Fils-Amie*, 83 F. Supp. 3d 1290, 1295 (S.D. Fla. 2015) (J. Cohn); *see also Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009) (case-ending sanctions under inherent authority appropriate "only as a last resort, when less drastic sanctions would not ensure compliance with the court's orders.") (citation omitted); *Tarasewicz v. Royal Caribbean Cruises Ltd.*, No. 14-CIV-60885, 2016 WL 3944178, at *2 (S.D. Fla. Mar. 17, 2016) ("Further,

when imposing sanctions pursuant to their inherent authority, courts require that the conduct or fraud be proven by clear and convincing evidence"); *accord Shepherd v. American Broadcasting Cos., Inc.*, 62 F.3d 1469, 1478 (D.C. Cir. 1995) (clear and convincing proof required for "inherent power sanctions that are fundamentally penal — dismissals and default judgments, as well as contempt orders, awards of attorneys' fees, and imposition of fines"). In deciding how to exercise inherent authority discretion, courts also look to whether the "misconduct relates to the pivotal or 'linchpin' issue in the case." *Qantam Communications Corp. v. Star Broadcasting, Inc.*, 473 F. Supp. 2d 1249, 1269 (S.D. Fla. 2007)

Plaintiff has presented clear and convincing evidence of defense counsel's subjective bad faith in this case, their malicious and indefensible personal and professional attacks leveled at Plaintiff's counsel and their motives in representing Plaintiff and the significant potential that the public dissemination of the Lawfare Project's "Press Release" could prejudicially impact this case all the way to trial.  The Court should exercise its inherent authority to impose severe penal sanctions on Mr. Turkel and Ms. Clark to deter them and others from engaging in such misconduct in the future as well as to prevent them from gaining any improper advantage in this case as a result of their inexcusable conduct in violation of  Local Rule 77.2, their utter lack of respect for this Court and their malicious  personal attacks on Plaintiff, her counsel and the Muslim religion.

**Conclusion**

Based on the evidence and legal arguments presented herein, the Court should GRANT Plaintiff's Motion and enter severe penal sanctions against Defendants' counsel of record in this case, including but not limited to the following:

1. Disqualifying defense counsel Kenneth Turkel, Esq., Jaclyn S. Clark, Esq, and their respective law firms from further representation of the Defendants in this case and giving Defendants 30 days to retain new counsel or proceed *pro se*;

2. Ordering defense to permanently delete the "Press Release" regarding this case from the Lawfare Project website, cease any further publication of the "Press Release" and replace the "Press Release" on the Lawfare Project website with a copy of the sanctions order in this case, to publicize their misconduct and deter others from engaging in similar future misconduct;

2. Permanently restraining defense counsel or the Lawfare Project from making or publishing any future extrajudicial statements about Plaintiff, her counsel, or the facts and events in this case,

3. Referring defense counsel to the Southern District of Florida Peer Review committee for remedial training and education in the areas of ethics and professionalism;

4. Awarding Plaintiff the reasonable costs and attorney's fees incurred by her counsel for the preparation of this Motion for Sanctions; and

5.  Ordering such additional sanctions as the Court deems appropriate based on the severe misconduct and subjective bad faith of defense counsel in issuing the "Press Release."

Respectfully submitted,

*Christopher C. Sharp*
Christopher C. Sharp, Esq.
Fla. Bar No. 996858
E-Mail: csharplaw@aol.com
SHARP LAW FIRM, P.A.
1600 West State Road 84, Suite C
Fort Lauderdale, Florida 33441
Telephone: (954) 909-4246

*Omar Mustafa Saleh*
Omar Mustafa Saleh, Esq.
Fla. Bar No. 091216
E-mail: osaleh@cair.com
Secondary: saleh@floridalegalconsulting.com
Syed Ahmed Ali Khan, Esq.
Florida Bar No. 061470
Email: akhan@cair.com
COUNCIL ON AMERICAN ISLAMIC RELATIONS
9000 N.W. 44TH Street, Suite 200
Sunrise, FL 33351
Phone: (954) 272-0490

Dated: December 9, 2025        Attorneys for Plaintiff

## Certificate of Service

I hereby certify that on December 9, 2025, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification to the following counsel of record.

By: *Christopher C. Sharp*
Christopher C. Sharp, Esq.

Christopher C. Sharp, Esq.
E-Mail: csharplaw@aol.com
Secondary Email:  chris@csharplawfirm.com
SHARP LAW FIRM, P.A.
1600 West State Road 84, Suite C
Fort Lauderdale, Florida 33441
Telephone: (954) 909-4246
Facsimile: (954) 827-8028

Omar Mustafa Saleh, Esq.
E-mail: osaleh@cair.com
Secondary: saleh@floridalegalconsulting.com
Syed Ahmed Ali Khan, Esq.
Email: akhan@cair.com
Secondary:  akanew@yahoo.com
COUNCIL ON AMERICAN ISLAMIC RELATIONS
000 N.W. 44TH Street, Suite 200
Sunrise, FL 33351
Phone: (954) 272-0490

Kenneth G. Turkel, Esq.
Email: kturkel@tcb-law.com
TURKEL CUVA BARRIOS, P.A.
100 N. Tampa Street, Suite 1900
Tampa, FL 33602
Phone: (813) 834-9191
Attorneys for Defendants

Jaclyn S. Clark, Esq.
Email: Jaclyn@thelawfareproject.org
THE LAWFARE PROJECT
633 THIRD AVENUE, 21st Floor
New York, NY 10017
Phone: (212) 339-6995
Attorneys for Defendants