IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(Miami Division)
Case No. 25-cv-23202-JB

ZOHRA KHORASHI,

     Plaintiff,

vs.

GADI BEER and BETH GELLMAN BEER,

     Defendants.

_____/

## FIRST AMENDED COMPLAINT FOR DAMAGES

Plaintiff, Zohra Khorashi, hereby sues Defendants, Gadi Beer and Beth Gellman Beer, and states as follows:

### Introduction

1.    This is an action by Zohra Khorashi against Gadi and Beth Gellman Beer for their intentional, malicious and unjustified interference with Plaintiff's business relationship with her former employer, Chartwell Law Offices, LLP.

### Jurisdiction

2.    This Court has diversity jurisdiction over Plaintiff's Florida state law claim  claims pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00 and there is completely diversity of citizenship between Plaintiff and each of the individual Defendants.

3.    The Court has personal jurisdiction over the out-of-state Defendants under Florida's Long-Arm Statute, § 48.193, Fla. Stat. based on their

commissions of a tortious act within this state and their intent to cause damages to Plaintiff at her place of employment in Miami-Dade County Florida.

4.      Specifically, Defendants engaged in a well-coordinating doxing attack against Plaintiff which included revealing her name and her contact information with her then-employer Chartwell Law in Miami, Florida, of which Defendant Gadi Beer was a founding member and CFO until he left the Firm in early 2023.  After publicly identifying Ms. Khorashi as an attorney with Chartwell Law in Miami and providing a link to her profile on the Firm website, Defendant Beth Beer disclosed the fact that Plaintiff had Jewish clients and encouraged others to target Chartwell Law's Miami office with accusations that Ms. Khorashi was unfit for continued employment because she was an outspoken antisemite who hated Jews and supported Hamas terrorism.  Although the Defendants' public posts on the JewhateDB Instagram page with the link to Plaintiff's Chartwell Law profile were accessible from anywhere, they knew that Plaintiff was an attorney whose career and continued employment with Chartwell Law depended on her reputation in Florida and it is therefore reasonable to infer that they hoped to motivate others in South Florida who were more likely to do business with Chartwell Law's Miami office or have contacts at the Firm to take actions that would inflict the maximum amount of personal and professional reputational harm on Plaintiff in Florida.

5.      The reputational injury and ultimate termination of Plaintiff's business and employment relationship with Chartwell Law would not have

2

occurred but for the fact that Defendants publicly disclosed the link to her Firm profile on a well-known anti-Muslim doxing page that was viewed and followed by many individuals in Florida and elsewhere.  If the Defendants had only intended to injure Plaintiff's general online reputation as a social media influencer there would have been no need to identify her employer as Chartwell Law or provide the address and contact information for the Firm's office in Miami where she worked.

6.     The claims against Defendants arose in Miami-Dade, County, Florida, in the Miami Division of the United States District Court for the Southern District of Florida, which is where venue is proper.

### Parties

7.     Plaintiff, Zohra Khorashi ("Plaintiff" or "Ms. Khorashi") is a resident of Miami-Dade County, Florida, who was formerly employed as an attorney by Chartwell Law Offices LLP at its office located in Miami, Miami-Dade County Florida, until her termination on February 29, 2024.

8.     Defendant, Gadi Beer ("Beer" or "Defendant") is a resident of Pennsylvania and played a key role in the establishment of Chartwell Law in Valley Forge, Pennsylvania, along with founding partners Charles (Chuck) Barreras, Esq., Thomas Strohmetz, Esq., Michael Diamiond, Esq. and Andrew Greenberg, Esq.  After helping to launch the Firm in 2002, Gadi Beer was the CEO of Chartwell Law until he left the Firm in early 2023 to pursue other interests.

3

9.      Defendant, Beth Gellman Beer ("Beer" or "Defendant") is a resident of Pennsylvania.  She is Gadi Beer's wife and a licensed attorney who served as Regional Director at the U.S. Department of Education Office for Civil Rights when she engaged in the conduct underlying the Plaintiff's claims.

### Factual Allegations

10.     In or about September 2018, Plaintiff Zohra Khorashi was hired by Chartwell Law, a Philadelphia based Law Firm with a national presence and more than 250 attorneys, for the position of associate attorney in the Firm's Miami office, located 100 S.E. 2nd Street #2150, Miami, FL 33131.

11.     At the time of Plaintiff's hiring, Gadi Beer was the Firm's CEO, before leaving the Firm in early 2023 to pursue other endeavors.

12.     Defendant's duties and responsibilities as CEO encompassed management, planning and coordination of the Firm's administrative functions, including personnel and human resources.

13.     In late 2022, a few months before he left his position as the Firm's CEO, Gadi Beer was advised by the Firm's Human Resource Manager that Plaintiff had filed multiple written complaints of discrimination based on alleged disparate by one of the Firm's partners based on her Muslim religion and Pakistani national origin.  Although Gadi Beer was not directly involved in the resulting HR investigation, he was also well-aware that Ms. Khorashi subsequently notified HR about escalating retaliation from the partner and associate that were named in her initial complaints and that she had evidence of their fraudulent billing practices

4

that resulted in overbilling certain clients for work that was never done and crediting themselves for hours that were worked by others and double billing the client at higher hourly rates.

14.     Upon information and belief, even after leaving Chartwell Law in early 2023, Gadi Beer retained an equity interest in the Firm and remained in contact with the Firm's Founding partners and others who he had befriended during his more than 20 years as Chartwell's CEO.

15.     From the time she started working at Chartwell, Ms. Khorashi maintained an Instagram account called "thatlawyermomlife" and was active on social media for several years before she even went to law school.  Plaintiff's real name is disclosed on her Instagram page, and her profile picture matches the one she submitted to Chartwell Law for the Firm website.  Otherwise, there are no references to Chartwell Law anywhere on Plaintiff's Instagram page and she avoids posting anything that references Chartwell Law or identifies her as having any connection to or employment relationship with the Firm.

16.     When the armed conflict between Israel and Hamas erupted on October 7, 2023, Plaintiff, like millions of other Americans, started to post and comment about the conflict on her social media page.  Her posts consistently supported the Palestinian cause, and as a Muslim mother of three young children, she expressed her strong personal opposition to the increasing number of casualties inflicted on innocent Palestinian women and children by the Israeli Defense Forces (IDF).

17.     As the conflict expanded and the siege of Gaza intensified, Ms. Khorashi's social media activity continued to focus on bringing attention to the tens of thousands of Palestinian women, children and other non-combatants who were being killed or subjected to food insecurity, lack of shelter, medical supplies and other humanitarian aid.  To present a more complete picture of the debate, in addition to simply posting pro-Palestinian memes and adding her own comments, she also posted unedited footage and statements of the pro-Israeli position from Israeli citizens, politicians, members of the Israeli Defense Forces (IDF) and even some Zionists with whom she disagreed.

18.     Plaintiff was well-aware that given the divisive political climate in America in 2023, there was a high likelihood that her social media activity about the Gaza conflict and her outspoken support of the Palestinian cause could be misconstrued by some people as antisemitism.  To keep the discussions and comments on her social media about the Gaza conflict respectful and avoid any violations of Chartwell Law's social media policies, Plaintiff consciously avoided any negative references to Jews or Judaism on her social media.  To defend herself against accusations that she was a Muslim antisemite who supported Hamas and terrorism against the Jewish people, she also made it clear that her criticism of the "other side" was directed towards Israel's government, the IDF and the Zionists who continued to push for a military solution that targeted innocent Palestinians even as public opinion in Israel started turn against the war.

19.     Plaintiff's Instagram page and her social media presence was no secret to many of her co-workers, many of whom enjoyed her content about being a mom and a lawyer.   Her social media pages and postings were routinely "liked" and commented on by her co-workers at Chartwell Law and she was even "followed" by some of the Firm's partners and associates.   These positive reactions from her co-workers continued even when Plaintiff began to use her social media platforms to speak out about the Gaza conflict after October 7, 2023, and to condemn the targeted killing of innocent unarmed Palestinian Muslim women and children.

20.     Although none of  her co-workers at Chartwell Law ever complained to Plaintiff about any of her social media posts in 2023 regarding the Gaza conflict, several of her posts drew negative and sometimes threatening reactions and comments from supporters of Israel and self-proclaimed Zionists. Despite Ms. Khorashi's efforts to politely and respectfully engage some of these individuals in a non-threatening manner, there were several individuals who began to regularly "troll" her social media posts with vile comments about the Muslim religion and even personal threats towards Plaintiff and her family for opposing the actions of the IDF.

21.     Toward the end of November of 2023 and early December of 2023, Ms. Khorashi noticed that an Instagram profile with the handle "Beth Margot" was consistently attacking and criticizing nearly every one of her posts about Gaza.  Over time, the trolling from "Beth Margot" became increasingly obsessive,

vile and hateful, and Plaintiff finally blocked "Beth Margot" after she posted a threatening comment that Ms. Khorashi did not deserve to be a mother or an attorney due to her support of the Palestinians and her opposition to the actions of IDF and the Zionists.

22.     On January 11, 2024, Plaintiff attended a Teams call with Chartwell Law's Human Resources Director Jennifer Majewski, founding partners Tom Strometz and Chuck Barreras, and Michelle Greenberg, the Firm's new General Counsel who had been hired in September 2023.  Mr. Barreras stated the Firm had been monitoring her social media content since the outbreak of the Gaza conflict and had reviewed all her posts and comments after certain unidentified individuals had allegedly expressed "concerns" that some of her statements could be perceived as antisemitic.  After Mr. Barreras showed Plaintiff two of her nearly 70 posts about the Gaza conflict that concerned him, she agreed to be "mindful" of her social media posts going forward and more careful about her use of emotionally charged language.

23.     At no time during the meeting did Mr. Barreras or anyone else ask Ms. Khorashi to remove the two posts in question or to stop posting about Gaza on her social media going forward, nor was she advised to remove or even consider removing any of the other posts on her Instagram page.  Instead, Mr. Barreras simply advised her to be "mindful" of her social media posts going forward and to try to be more "positive" so that they did not disparage others and aligned with the Firm's values of inclusivity and diversity.

24.     Approximately a week after this meeting, on or about January 19, 2024, Ms. Majewski scheduled another Teams call with Plaintiff and Michelle Greenberg.  During this meeting, Ms. Greenberg showed Plaintiff a new post that appeared on her Instagram page on January 18, 2024 and raised concerns that it could be perceived be construed as inciting hatred or violence towards Jewish people.  The post in question noted that in 104 days, more than 24,000 Palestinians had been killed in Gaza, with 1.9 million displaced from their homes and the casualty figures were followed by a quote from Thomas Jefferson that "when tyranny becomes law, rebellion becomes a duty," to which Plaintiff  added her own comment that "the time for a revolution is now."

25.     In response to Ms. Greenberg's concerns, Plaintiff pointed out that apart from condemning the rising death toll among Palestinian civilians, the post made no reference whatsoever to "Jews" or even to Israel, and there was no other language or opinions expressed that could be reasonably construed as condoning violence or inciting hatred against the "Jewish people" or anyone else. They also discussed Chartwell's social media policy which did limit or restrict the content of private comments on social media so long as the view and opinions expressed are not inappropriate or harmful to Chartwell Law, its employees, or clients.

26.     Plaintiff was never advised during these meeting or afterwards that her social media activity – which, according to Chuck Barreras, was being monitored by the Firm on a regular and ongoing basis --  violated the Firm's

policies nor was she ever directed by anyone at Chartwell Law to cease posting on social media about the Gaza conflict.

27.     In January and February 2024, Plaintiff posted more than 50 times on her Instagram page about the Gaza conflict and her opposition to what she described as a genocide against the Palestinian people.  From January 19, 2024 until February 29, 2024, Plaintiff posted two to the three times daily and Chartwell did not find issues with her content during that time frame.

28.     In a post on February 15, 2024, Plaintiff posted a warning about the weaponization of social media by people "who repeatedly dox, attack and threaten [the] livelihood" of those who use their "power and influence" to speak out in  favor of the Palestinian cause in Gaza.

21.     Doxing is a type of cyber-harassment which involves the online public release of personal information that can be used to identify or locate an individual, usually without the individual's consent. A doxing attack generally involves gathering private or identifying information about an individual or group and then publishing it publicly to facilitate harassment or ruin their reputation. Once the information is made public, other users use it to target the individual. This can lead to various forms of harassment, including, but not limited to: threats, abusive emails, calls, and texts; attacks on their place of work; "swatting," where authorities are anonymously called to a victim's address based on false claims (e.g., hostage situation, bomb threat); criminal cyberstalking and even real-life harassment and violence.

22.     Ironically, within three days of her warning to others about doxing attacks by supporters of Israel, on February 18, 2024, Ms. Khorashi was "doxed" on an Instagram page called Jew Hate Database ("Jewhatedb") which is operated by the organization Stopantsemitism.org and is administered by an individual with the handle "Stellaingerescobedo" who follows and is followed by the page "Stopantisemitism.org."   To falsely portray Plaintiff as antisemitic, Jewhatedb claimed to have "fixed it" a post from her Instagram page condemning the perpetrators of violence against Gaza by crossing out and replacing the pronoun "they" with the word "Jews." A copy of the initial doxing post from the Jewhatedb page is attached hereto as Exhibit 1.

23.     Although the image that was posted on Jewhatedb did not include Plaintiff's name or any reference to her employment at Chartwell Law, it predictably generated dozens of hateful and threatening comments about Ms. Khorashi, as well as speculation about where she worked and demands that she be fired by whatever Law Firm employed her.   Although Chartwell Law had previously reviewed the post that was submitted to JewhateDB to dox Plaintiff, it found no issues with the content.

24.     The Jewhatedb Instagram page boasts 137,000 followers and is a project that exists for the purpose of "[e]xposing the faces of Jew hatred," and it publicly proclaims that "[w]e've got all the receipts" in addition to encouraging its followers to "[s]ubmit Jew hatred incidents via link."   The dashboard for Jewhatedb includes links to other pages on the site such as "Exposed" where

followers can see a gallery of hundreds of posts "outing" Muslims and other supporters of Palestine, labelling them as  vicious and dangerous antisemites, calling for them to be harassed online and in person and, in most cases, demanding that they be summarily fired from their employment without any due process or opportunity to defend themselves.   There is also a "Do You Recognize?" tab where people can provide contact information for the targeted individuals and their employers, which is then served up to the 137,000 followers of Jewhatedb in order to mobilize a temporary lynch mob that is anonymous, highly motivated and which can collectively cause far more damage to the target and with a much better chance of success than one or two individuals acting on their own.  It also provides the added benefit of deniability since the individual who submits the victim for doxing does not even have to participate in the doxing attack themselves.

25.    In virtually all cases, the stated goal of the doxing attacks initiated and launched from Jewhatedb is to publicly damage a person's personal and professional reputation to such an extent that the negative backlash to their employer's business "forces" the employer to publicly fire them and makes them "radioactive" to any future employers.  To tout its success rate, Jewhatedb has an "Updates" section where followers can view hundreds of posts confirming the significant harm suffered by the targeted individuals because of the doxing.  In addition, there are numerous examples of collaboration between Jewhatedb, "Stellaingerescobedo" and Stopantisemitism.org where an individual like Plaintiff

who is first targeted for doxing on Jewhatedb is subsequently "exposed" on stopantisemitism.org's X page.

26. Upon information and belief, Defendants Gadi and Beth Beer conspired to submit Plaintiff's Instagram post to the Jewhatedb Instagram page and had advance notice that Ms. Khorashi was going to be "exposed" as an alleged antisemite and Jew hater on February 18, 2024. Their simultaneous appearances in the comments section of Jewhatedb immediately following the posting was for the sole and improper purpose of providing the critical missing information that was required to launch the doxing attack: Plaintiff's real name and a link to her Firm profile at Chartwell Law. Timing was critical and although there was a possibility that the commenters calling for Plaintiff's termination would eventually discover the information themselves, the Beers were able to capitalize on their personal knowledge of Plaintiff and Chartwell Law and immediately provide the link to the Firm website at a point in time where it would be most effective in priming the attack by commenters who were ready to mobilize now.

27. The first commenter to call for Ms. Khorashi's termination was an individual with the profile "gramm_tamm" who suggested that they should "find out who this person is and have her fired . . . she's a lawyer, should be easy to find her." This comment dew a quick response from Defendant Beth Beer who concealed her identity by using her fake screenname "Beth Margot" to disclose that "she works at Chartwell Law Offices" while providing a link to Plaintiff's

Chartwell Law profile which included her work email, phone number and the contact information for Chartwell's office in Miami.

28.    To further motivate the commenters who expressed interest in contacting Chartwell Law to demand Plaintiff termination, Defendant made an additional inflammatory statement based on non-public and highly confidential information about Plaintiff's and the Firm's clients that only she and her husband possessed:  "I wonder how her Jewish clients would feel about her public posts. This one is innocuous compared to her regular posts. It's disgraceful." After a commenter identified as "billssunshine" exclaimed that he "Found her in a second" with the link and that  "[s]he's horrible," Gadi Beer re-posted the same link to Chartwell Law that "Beth Margot" had posted. Defendants' posts on the jewhatedb page providing Plaintiff's contact information at Chartwell Law are included with Exhibit 1.

29.    The sequence here -- requests for employer information, Defendants' disclosure, amplification by others, doxxing by a large organization, and termination -- is consistent with the well-recognized chain reaction of harassment campaigns. Once Defendants posted Plaintiff's employer name, website link, and workplace location in a thread explicitly encouraging her firing, it was reasonably foreseeable that larger actors would amplify the post, that Plaintiff would be doxed, and that her employer would face pressure to terminate her.

29.     By their actions in posting the direct link to Plaintiff's Firm profile at Chartwell Law in response to a request to "find out who this person is and have her fired" and then adding fuel to the fire by disclosing confidential non-public information about Plaintiff having Jewish clients in the context of what they knew to be a doxing attack that was intended to harm Ms. Khorashi based on the malicious accusation that she was an antisemite and Jew hater, the Beers utilized the Jewhatedb Instagram page as the instrument to exponentially increase the magnitude and intensity of the doxing attack they hoped would ultimately force Chartwell Law to terminate Plaintiff in order to avoid further damage to the Firm's business and reputation. Gadi Beer prior employment with Chartwell also gave him insider knowledge of how highly the Firm valued its reputation and how it would likely react to the impact of negative backlash, public pressure, and criticism that would result from any doxing attack on social media.

30.     When Plaintiff was informed by some of her friends that she had been doxed on the Jewhatedb Instagram page, she tried to access the page to respond to the false and malicious accusations of antisemitism, but she had already been pre-emptively blocked from accessing or commenting on the doxing post by the page administrator.   Based on the screenshots that were sent to her by others, however, she was able to see that Gadi Beer and "Beth Margot," the individual that had been "trolling" her on her Instagram page almost incessantly

since November 2023 had each responded to the calls to fire her by posting a link to her profile and contact information on the Chartwell Law website.

31.     After looking closely at Gadi Beer's public profile on Facebook, Ms. Khorashi was able to verify that "Beth Margot" was a pseudonym used by Gadi Beer's wife, Beth Gellman Beer, who, in February 2024, was employed as a Regional Director at U.S. Department of Education Office for Civil Rights.  After trolling Plaintiff under the fake name "Beth Margot" for almost four months, it appeared that Ms. Beer and her husband were now actively working together and with other online trolls to have her terminated from her employment with Chartwell Law because she was a Pakistani Muslim woman who opposed what she and many others deemed the "genocide" of Palestinians in Gaza.

32.     On February 28, 2025, just ten days after Gadi and Beth Beer posted a link to Plaintiff's Chartwell Law profile and contact information on the Jewhatedb Instagram page, Plaintiff was doxed again from a public X (formerly known as Twitter) account called "stopantisemitism.org" which also identified her by name and her position with Chartwell Law.

33.     Like the affiliated Jewhatedb Instagram account which it operates, Stopantisemitism is a well-known page with a history of doxing, harassing and intimidating Pro-Palestinian advocates on social media.  In addition, there are numerous examples of where a doxing collaboration between Jewhatedb and "Stellaingerescobedo" is then duplicated on stopantisemitism.org's X page to boost the exposure and synergistic effect of the initial doxing.,

34.   Similar to Jewhatedb, a typical campaign by the stopantisemitism account involves posting the target's personal and professional information on its page to gin up the controversy before specifically encouraging its significantly larger base of more than 237,000 followers to harass the individual.   The resulting harassment varies depending on the target and the goal of the doxing attack, but can typically include reposting the false and malicious accusations to other pages to make them go "viral" and increase the negative exposure, trolling the target directly with threating "comments" on their social media pages and posts, contacting the individual's employer to accuse them of employing a known antisemite and demand their immediate termination, and, in some particularly egregious cases, physically stalking the accused person or showing up announced at their home to threaten them or commit acts of violence.

35.   Plaintiff's name and personal information were posted by the stopantisemitism account on February 28, 2024 at approximately 2:29 p.m.  The doxing attack highlighted two social media posts from Plaintiff's Instagram and attributed them to Ms. Khorashi, even though one of them was a post written by someone else that she simply "liked" without further comment.  Similar to the doxing attack on Jewhatedb ten days earlier, commentary was added to both posts to amplify the false narrative that Plaintiff was a virulent antisemite and supporter of terrorism by Hamas.

36.   Chartwell Law was already well-aware of the social media posts that were highlighted in the doxing attack since it had reviewed all of Plaintiff's posts

since October 7, 2023 and met with her twice in January 2024 to reiterate the Firm's social media policy and advise her that her social media posts would be monitored by the Firm going forward. Although the Firm asked Plaintiff to be mindful of the policy and the Firm's values when posting on her private social media about the Gaza conflict, prior to the doxing attack on February 28, 2024, Plaintiff was never advised that any of her posts violated Chartwell's social media policy or could subject her to potential disciplinary action, let alone termination.

37.     Within a few minutes of going public, the second doxing attack on Plaintiff began to hit the mark. That afternoon, Ms. Khorashi began to receive dozens of emails, voice mails and phone calls at work containing anti-Muslim rhetoric and graphic threats of violence against her and her family and demanding that she be fired by Chartwell Law, Gadi Beer's former employer. Her social media accounts were flooded with vile threats from dozens of anonymous internet "trolls" who concealed their true identities, and several hateful comments were openly posted by licensed Jewish attorneys under the real names. For example, Matthew H. Friedman, Esq., Founding Partner of Ford & Friedman in Henderson, Nevada, wrote the following on February 29, 2024 at 8:06 a.m.: "Good luck getting a job in a law office again you jew hating cunt."

38.     In addition to the harassing messages and emails received by Ms. Khorashi in the hours immediately the doxing on February 28, 2024, Chartwell Law also began to receive an overwhelming number of phone calls, voicemails, emails and social media messages from supporters of Israel expressing anger,

dismay, offense and disgust at Plaintiff's social media posts about the Gaza conflict, and demanding that Chartwell Law fire her immediately for her alleged antisemitic words and opinions.

39.    The following morning, on February 29, 2024 at approximately 10:20 a.m., Plaintiff was called to a meeting with Chartwell Law's founding partner Charles J. Barreras, Esq., General Counsel Michelle Greenberg, Esq. and Human Resources Manager Jennifer Majewski.  Mr. Barreras then informed Ms. Khorashi that she was being terminated because the doxing incident on February 28 had resulted in widespread criticism and hostility towards Chartwell Law on its own social media pages for continuing to employ an accused antisemite and supporter of Hamas terrorism against Israel.  Mr. Barreras also claimed that in addition to damaging the Firm's reputation and client relationships the negative fallout from the doxing attack made some of the Firm's Jewish employees fearful about working with Plaintiff.

40.    Plaintiff's termination by Chartwell Law was a direct, proximate and foreseeable result of the Defendants' actions and their combined efforts to interfere with her employment relationship with Firm.  But-for the doxing attacks that were planned, enabled and encouraged by the Defendants on the Jewhatedb website on February 18, 2024 and Stopantisemitism on February 28, 2024 – which Chartwell itself referred to as the climactic triggering event that resulted in Plaintiff's termination -- her employment and business relationship with Chartwell Law would not have ended on February 29, 2024.

41.     Although Plaintiff's termination by Chartwell resulted in significant wage losses, compensatory damages and harm to Plaintiff's career and reputation in the legal profession, the conduct of Defendants as described herein and the public dissemination of her termination that resulted from the doxing attacks caused Plaintiff to suffer significant additional damages from the hundreds of hateful comments about her on social media, which quickly escalated to graphic personal threats via Ms. Khorashi's cellphone, private email and social media accounts.

### Count I

**Tortious Interference with a Business Relationship
(against Defendant Gadi Beer)**

42.     Plaintiff realleges the allegations of Paragraphs 1 through 41 above.

43.     From April 2018 until her termination on February 29, 2024, Plaintiff had a business relationship with Chartwell Law under which she was employed as an Associate Attorney assigned to the Firm's Miami and Deerfield Beach offices in South Florida.

44.     As the former CEO of Chartwell Law until early 2023, Defendant Gadi Beer had knowledge of Plaintiff's business relationship and employment with Chartwell Law.

45.     By his actions in submitting one of Plaintiff's social media posts to the doxing website Jewhatedb, and then posting the direct link to Plaintiff's profile at Chartwell Law in response to a request to "find out who this person is and have her fired," Defendant Gadi Beer engaged in unjustified and intentional

interference with Ms. Khorashi's business relationship with Chartwell Law.

46.     As a direct, proximate and foreseeable result of Gadi Beer's intentional, malicious and unjustified interference in Plaintiff's business relationship with Chartwell Law, Plaintiff has suffered significant and continuing economic damages, emotional distress, depression, anxiety and other emotional pain and suffering, in addition to irreparable damage to her personal and professional reputation and diminution of her future earning capacity, for which she is entitled to an award of monetary damages and other relief.

47.     The actions of Defendant Gadi Beer involved intentional misconduct, actual malice or gross negligence with a specific intent to harm Plaintiff and were in such reckless indifference to Plaintiff's rights as to justify an award of punitive damages.

WHEREFORE, Plaintiff Zohra Khorashi prays that this Court:

A.     Declare that the actions of Defendant Gadi Beer constitute intentional and unjustified interference with Plaintiff's business and employment relationship with Chartwell Law

B.     Enter judgment in favor of Plaintiff and against Defendant Gadi Beer for intentional and unjustified interference with Plaintiff's business and employment relationship with Chartwell Law;

C.     Award Plaintiff compensatory damages, including, but not limited to, damages for emotional distress, in such amount as will reasonably compensate her for her losses;

D.    Award Plaintiff punitive damages in such amount as the Court deems just and proper;

E.    Award Plaintiff her costs incurred in this this action;

F.    Grant Plaintiff such other and further relief as the Court deems equitable, just and proper.

## Count II

### Tortious Interference with a Business Relationship
### (against Defendant Beth Beer)

48.    Plaintiff realleges Paragraphs 1 through 41 above.

49.    From April 2018 until her termination on February 29, 2024, Plaintiff had a business relationship with Chartwell Law under which she was employed as an Associate Attorney assigned to the Firm's Miami and Deerfield Beach offices.

50.    As the wife of Gadi Beer, who was the former CEO of Chartwell Law until early 2023, Defendant Beth Beer had knowledge of Plaintiff's business relationship and employment with Chartwell Law.

51.    By her actions in submitting one of Plaintiff's social media posts to the doxing website Jewhatedb, and then posting the direct link to Plaintiff's profile at Chartwell Law in response to a request to "find out who this person is and have her fired," Defendant Beth Beer engaged in unjustified and intentional interference with Ms. Khorashi's business relationship with Chartwell Law.

52.    As a direct, proximate and foreseeable result of Beth Beer's intentional, malicious and unjustified interference in Plaintiff's business

relationship with Chartwell Law, Plaintiff has suffered significant and continuing economic damages, including lost past and future income, compensation and benefits lost income and benefits, emotional distress, damage to her personal and professional reputation and diminution of her future earning capacity.

53.    Defendant's intentional and unjustified interference has caused Plaintiff to suffer and continue to suffer severe mental anguish and emotional distress, including, but not limited to, depression, stress, anxiety and other emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

54.    The actions of Defendant Beth Beer involved intentional misconduct, actual malice or gross negligence with a specific intent to harm Plaintiff and were in such reckless indifference to Plaintiff's rights as to justify an award of punitive damages.

WHEREFORE, Plaintiff Zohra Khorashi prays that this Court:

A.    Declare that the actions of Defendant Beth Beer constitute intentional and unjustified interference with Plaintiff's business and employment relationship with Chartwell Law

B.    Enter judgment in favor of Plaintiff and against Defendant Beth Beer for intentional and unjustified interference with Plaintiff's business and employment relationship with Chartwell Law;

C.    Award Plaintiff compensatory damages, including, but not limited to, damages for emotional distress, in such amount as will

reasonably compensate her for her losses;

D.   Award Plaintiff punitive damages in such amount as the Court deems just and proper;

E.   Award Plaintiff her costs incurred in this this action;

F.   Grant Plaintiff such other and further relief as the Court deems equitable, just and proper.

## Count III

### Defamation by Implication
### (against Defendant Beth Beer only)

55.   Plaintiff reallages Paragraphs 1 through 41 above.

56.   On February 18, 2024, Defendant Beth Beer posted the following statement on the Jewhatedb Instagram page:  "I wonder how [Plaintiff's] Jewish clients would feel about her public posts. This one is innocuous compared to her regular posts. It's disgraceful."

57.   By strategically omitting and juxtaposing public information that was known to Defendant about the entirety of Plaintiff's "regular" social media posts, and combining it with private confidential information that was exclusively available to Defendant and her husband Gadi Beer about the specific Jewish clients for whom Plaintiff performed legal work  at Chartwell, Defendant's published statements create a false and defamatory implication that Plaintiff was a virulent and irredeemable antisemite whose visceral hated of Jews and support of terrorism against Israel made her unfit as an attorney to represent any Jewish clients of the Firm.

58.     In order to make the implied defamation more effective, Defendant deliberately omitted any facts or references to the literally dozens of Plaintiff's social media posts – many of which she had personally trolled under her alter-ego "Beth Margot" -- where Plaintiff disclaimed any belief in or support for in antisemitism, expressed solidarity with and empathy for the Israeli hostages and victims of the Hamas terrorist attacks on Israel and make it clear to detractors and trolls like "Beth Margo" that her ongoing criticism of the IDF's actions in Gaza and the escalating death toll among Palestinian women and children was directed towards Israel's government and not its people.

59.     As an attorney herself, Defendant Beth Beer was also well-aware that any questions about Plaintiff's professional competence and fitness to practice law in Florida could be answered by simply accessing the Florida Bar website to confirm that Plaintiff had no disciplinary history or other negative information on her public profile.  Instead, she recklessly disregarded the truth and falsely implied that Plaintiff's alleged antisemitism would compel her to do harm to her own clients, which, if true, would amount to a serious violation of the Rules of Professional Conduct that could potentially lead to disbarment.

60.     Defendant's documented history of posting angry and hateful personal comments on Plaintiff's Instagram page while using a fake name to conceal her identity as an attorney with the U.S. Dept. of Education Civil Rights Division shows a pattern of reckless disregard for the truth about Plaintiff's motives in posting about the Gaza conflict as well the actual content and

25

opinions expressed by Plaintiff.

61.     Although even a cursory of Plaintiff's social media posts regarding the Gaza conflict would have refuted any notion that she was a virulent antisemite or that she was unfit to practice law, Defendant deliberately omitted these inconvenient facts in her effort to defame Plaintiff both personally and professionally, with the ultimate goal of interfering with her business relationship with Chartwell Law and preventing her from earning a living as a lawyer.

62.     Defendant's defamation by implication has caused Plaintiff to suffer and continue to suffer severe mental anguish and emotional distress, including, but not limited to, depression, stress, anxiety and other emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

63.     The actions of Defendant Beth Beer involved intentional misconduct, actual malice or gross negligence with a specific intent to harm Plaintiff and were in such reckless indifference to Plaintiff's rights as to justify an award of punitive damages.

WHEREFORE, Plaintiff Zohra Khorashi prays that this Court:

A.     Declare that the actions of Defendant Beth Beer constitute defamation by implication with the intent to interfere with Plaintiff's business and employment relationship with Chartwell Law

B.     Enter judgment in favor of Plaintiff and against Defendant Beth Beer

26

for defamation by implication with the intent to interfere with Plaintiff's business and employment relationship with Chartwell Law;

C.   Award Plaintiff compensatory damages, including, but not limited to, damages for emotional distress, in such amount as will reasonably compensate her for her losses;

D.   Award Plaintiff punitive damages in such amount as the Court deems just and proper;

E.   Award Plaintiff her costs incurred in this this action;

F.   Grant Plaintiff such other and further relief as the Court deems equitable, just and proper.

**Count IV**

**Civil Conspiracy to Interfere with a Business Relationship
With Peculiar Power of Persuasion
(against both Defendants)**

64.   Plaintiff realleges Paragraphs 1 through 41 above.

65.   To state a claim for civil conspiracy under Florida law, a plaintiff must allege: (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy.

66.   As alleged herein, Defendants Gadi and Beth Beer agreed to participate in a common plan to use unlawful means to interfere in Plaintiff's

business relationship with Chartwell Law.  The objective of the agreement was intentional interference with Plaintiff's employment and Defendants engaged in multiple overt and covert acts to advance the goals of the conspiracy.

67.    Because the Beers did not possess the resources, power or the influence to engineer Plaintiff's termination alone, they utilized the affiliated public self-service doxing platforms provided by Jewhatedb and Stopantisemitism as the instrumentality and means by which to publicly expose Plaintiff as an alleged Jew hater and antisemite who was unfit to practice law or represent Jewish clients and ultimately interfere with her employment relationship with Chartwell Law.

68.    Ordinarily, there can be no independent tort for conspiracy. However, if the plaintiff can show some peculiar power of coercion possessed by the conspirators by virtue of their combination and the instrumentality utilized to achieve the goal of the conspiracy, which power an individual would not possess, then conspiracy itself becomes an independent tort.  The essential elements of this tort are a malicious motive and coercion through numbers or economic influence, which is precisely what occurred as the result of Defendants' collective efforts in this case.

WHEREFORE, Plaintiff Zohra Khorashi prays that this Court:

A.    Declare that the actions of Defendants Gadi and Beth Beer constitute a civil conspiracy to defame Plaintiff by implication and interfere with Plaintiff's business and employment relationship with

Chartwell Law;

B.      Enter judgment in favor of Plaintiff and against Defendants, jointly and severally, for civil conspiracy to defame Plaintiff by implication and interfere with Plaintiff's business and employment relationship with Chartwell Law;

C.      Award Plaintiff compensatory damages against Defendants, jointly and severally, including, but not limited to, damages for emotional distress, in such amount as will reasonably compensate her for her losses;

D.      Award Plaintiff punitive damages against Defendants, jointly and severally, in such amount as the Court deems just and proper;

E.      Award Plaintiff her costs incurred in this this action;

F.      Grant Plaintiff such other and further relief as the Court deems equitable, just and proper.

Respectfully submitted,


**_Christopher C. Sharp_**
Christopher C. Sharp, Esq.
Fla. Bar No. 996858
E-Mail: csharplaw@aol.com
Secondary Email:  chris@csharplawfirm.com
SHARP LAW FIRM, P.A.
1600 West State Road 84, Suite C
Fort Lauderdale, Florida 33441
Telephone: (954) 909-4246
Facsimile: (954) 827-8028


**_Omar Mustafa Saleh_**
Omar Mustafa Saleh, Esq.
Fla. Bar No. 091216
E-mail: osaleh@cair.com
Secondary: saleh@floridalegalconsulting.com
Syed Ahmed Ali Khan, Esq.
Florida Bar No. 061470
Email: akhan@cair.com
Secondary:  akanew@yahoo.com
COUNCIL ON AMERICAN ISLAMIC RELATIONS
9000 N.W. 44TH Street, Suite 200
Sunrise, FL 33351
Phone: (954) 272-0490

Dated: December 10, 2025   Attorneys for Plaintiff

## **Certificate of Service**

I hereby certify that on December 9, 2025, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification to the following counsel of record.

By:   *Christopher C. Sharp*
Christopher C. Sharp, Esq.

Christopher C. Sharp, Esq.
E-Mail: csharplaw@aol.com
Secondary Email:  chris@csharplawfirm.com
SHARP LAW FIRM, P.A.
1600 West State Road 84, Suite C
Fort Lauderdale, Florida 33441
Telephone: (954) 909-4246
Facsimile: (954) 827-8028

Omar Mustafa Saleh, Esq.
E-mail: osaleh@cair.com
Secondary: saleh@floridalegalconsulting.com
Syed Ahmed Ali Khan, Esq.
Email: akhan@cair.com
Secondary:  akanew@yahoo.com
COUNCIL ON AMERICAN ISLAMIC RELATIONS
000 N.W. 44TH Street, Suite 200
Sunrise, FL 33351
Phone: (954) 272-0490

Kenneth G. Turkel, Esq.
Email: kturkel@tcb-law.com
TURKEL CUVA BARRIOS, P.A.
100 N. Tampa Street, Suite 1900
Tampa, FL 33602
Phone: (813) 834-9191
Attorneys for Defendants

Jaclyn S. Clark, Esq.
Email: Jaclyn@thelawfareproject.org
THE LAWFARE PROJECT
633 THIRD AVENUE, 21st Floor
New York, NY 10017
Phone: (212) 339-6995
Attorneys for Defendants