UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(Miami Division)

Case No. 25-cv-23202-JB

ZOHRA KHORASHI,

    Plaintiff,

v.

GADI BEER AND BETH GELLMAN BEER,

    Defendants.
_____/

## DEFENDANTS' MOTION FOR SANCTIONS FOR MISREPRESENTATIONS TO THE COURT

Defendants Gadi Beer and Beth Gellman Beer move for sanctions against Plaintiff Zohra Khorashi and her counsel, Christopher C. Sharp and Omar Mustafa Saleh, based on this Court's inherent authority, S.D. Fla. L.R. 6(b)(2)(A), and 28 U.S.C. § 1927, for misrepresentations of fact and authority cited in Plaintiff's pending Motion for Sanctions, which is itself frivolous.

**1.0   INTRODUCTION AND FACTUAL BACKGROUND**

The Plaintiff filed a frivolous motion for sanctions that misrepresents the facts and that relies on case law that does not exist at all and nonexistent quotes from cases that do exist. It has the hallmarks of AI generated work, which is the most innocent explanation for it.

On December 9, 2025, Plaintiff filed the frivolous "Motion for Sanctions and to Disqualify Defendants' Counsel for Extrajudicial Conduct" (ECF No. 32) (the "Frivolous Motion").[1] Plaintiff

---

[1] It is worth noting that the Plaintiff based this on a misstatement of S.D. Fla. L.R. 77.2, but never bothered to meet and confer as required by S.D. Fla. L.R.7.1(a)(3). Nevertheless, had her counsel done so, it likely would not have changed the outcome – since during the meet and confer on this motion, the undersigned attempted to convince counsel for the Plaintiff to abandon the entire frivolous motion's positions, but counsel remained steadfast that the Defendants and their counsel should be sanctioned, and no matter how clearly the factual misrepresentations were laid in front of him, he insisted that the Frivolous Motion was a righteous event.

argues in the Frivolous Motion that Defendants' counsel violated S.D. Fla. L.R. 77.2 regarding extrajudicial statements concerning pending civil proceedings by issuing a press release about this Court's order granting Defendants' motion to dismiss. The Frivolous Motion relies on factual misrepresentations and hallucinated AI case law, which is not tolerated in Florida. *See, e.g., Russell v. Mells,* 2025 Fla. App. LEXIS 9332, at *12 (Fla. 2d DCA 2025). The Court should sanction Plaintiff and her counsel, jointly and severally, to pay all costs and reasonable attorneys' fees incurred in connection with this Motion and Plaintiff's Frivolous Motion, and should take any other corrective action the Court sees fit.

## 2.0 LEGAL STANDARD

Federal courts have inherent powers to manage their cases. *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017). This inherent power can be used to sanction bad faith conduct. *Versant Funding LLC v. Teras Breakbulk Ocean Navigation Enters., LLC*, No. 17-81140, 2025 U.S. Dist. LEXIS 98418, *9 (S.D. Fla. May 20, 2025) (citing *McDonald v. Cooper Tire & Rubber Co.*, 186 F. App'x 930, 931 (11th Cir. 2006)). Submitting a filing that is both reckless and frivolous can evidence bad faith. *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1224-25 (11th Cir. 2017). This is especially so when it is based on false renditions of the facts and fake case law.

28 U.S.C. § 1927 permits the imposition of sanctions against an attorney who "engag[es] in practices that unnecessarily delay or increase the complexity of the litigation" so long as the court finds "(1) the attorney engaged in unreasonable and vexatious conduct; (2) such conduct multiplied the proceedings; and (3) the amount of the award does not exceed the costs, expenses, and attorney's fees reasonably incurred due to such conduct." *Versant*, 2025 U.S. Dist. LEXIS 98418 at *10. The Motion certainly has violated § 1927, and should be sanctioned as such.

### 3.0 ARGUMENT

Courts despise the use of AI to produce inaccurate or fictitious case citations in a legal brief. *See Russell v. Mells*, 2025 Fla. App. LEXIS 9332, at *12 (Fla. 2d DCA 2025) (referring lawyer for bar discipline for using hallucinated cases); *Park v. Kim*, 91 F.4th 610, 615 (2d Cir. 2024) ("the duties imposed by [Federal Rule of Civil Procedure 11] require that attorneys read, and thereby confirm the existence and validity of, the legal authorities on which they rely."); *In re Martin*, 670 B.R. 636, 638 (Bankr. N.D. Ill. 2025) (imposing sanctions on attorney citing hallucinated cases and noting that claimed ignorance of how generative AI worked did not excuse attorney's misconduct); *Kohls v. Ellison*, No. 24-cv-3754, 2025 U.S. Dist. LEXIS 4928, *13 (D. Minn. Jan. 10, 2025) (finding that "citation to fake, AI-generated sources" in expert testimony "shatters [] credibility" and "imposes many harms"); *Noland v. Land of the Free, L.P.*, 114 Cal. App. 5th 426, 445 (2025) (noting that "[a]n attempt to persuade a court or oppose an adversary by relying on fake opinions is an abuse of the adversary system"); *Hanson v. Nest Home Lending, LLC*, No. 25-cv-02599-GPG-KAS, 2025 U.S. Dist. LEXIS 205468, *7-8 (D. Colo. Oct. 17, 2025) ("[t]he Court will not tolerate pleadings riddled with hallucinated citations masquerading as legitimate legal authority. This conduct undermines the integrity of the judicial process and disrespects and wastes the Court's and Defendants' time and resources").

This district is no different in declaring that using fake case law is not kosher. *Dubinin v. Papazian*, No. 25-CV-23877-RAR, 2025 U.S. Dist. LEXIS 229362 (S.D. Fla. Nov. 21, 2025). Sanctions are appropriate under Fed. R. Civ. P. 11, the Court's inherent authority, violation of S.D. Fla. L.R. 6(b)(2)(A), and 28 U.S.C. § 1927. *Id*. at *5-6. "Courts in this District have found that sanctions are appropriate where counsel repeatedly used artificial intelligence to cite hallucinated cases and quotations." *Id*. at *7 (citing *ByoPlanet Int'l, LLC v. Johansson*, 792 F. Supp. 3d 1341,

2025 U.S. Dist. LEXIS 144449, *27 (S.D. Fla. July 15, 2025) (finding that use of AI "led to repeated bad-faith misrepresentations to the Court" which justified "monetary sanctions, referral to the Florida bar, and required notification to other courts and litigants") and *Versant*, 2025 U.S. Dist. LEXIS 98418 at *14 (finding violation of Fed. R. Civ. P. 11 by "submitting a fake hallucinated case citation which allegedly supported a principle of law for which they were advocating").

The *Papazian* Court found that sanctions were appropriate against the attorney who signed a response to a motion to dismiss containing hallucinated cases and quotations because it was the signing counsel's "duty to ensure that all legal contentions are supported by existing law." *Papazian*, 2025 U.S. Dist. LEXIS 229362 at *7. The Court imposed sanctions despite the attorney claiming she was "suffering from medical issues which may have contributed to her lack of oversight and overreliance on artificial intelligence." *Id*. at *8. There is no indication that Plaintiff's counsel have such an excuse here, but even if they did, it would not help them. As a sanction for this misconduct, the Court struck the plaintiff's complaint, required the signing attorney to pay the defendant's attorneys' fees, and referred the attorney to this Court's Grievance Committee. *Id*. at *9-10.

The following citations in the Frivolous Motion are either hallucinated or are deliberate attempts to mislead the Court:

On page 5 of the Frivolous Motion, Plaintiff quotes the following language from *Florida Bar v. Norkin*, 132 So. 3d 77 (Fla. 2013): "An attorney who impugns the integrity of the judiciary, misstates the substance of a court order, or otherwise demeans the justice system engages in conduct prejudicial to the administration of justice." He purports to quote further language from the case on pages 11-12: "[m]isrepresenting the substance of a court's ruling is a serious ethical

breach that demeans the justice system and warrants significant discipline." None of this language appears in *Norkin*, however, and its *actual* language does not help Plaintiff. This is a case that dealt with finding that an attorney violated Florida Rule of Professional Conduct 4-8.4(d) for "incessantly disparaging and humiliating" another attorney by sending letters, emails, and public insults disparaging and humiliating the attorney, as well as shouting at the attorney in chambers and courthouse hallways while others were present. *Id*. at 86. The conduct at issue in *Norkin* is categorically different than what Plaintiff alleges in the Frivolous Motion, and the actual holding of *Norkin* does nothing to help Plaintiff.

On page 10 of the Frivolous Motion, Plaintiff cites *Florida Bar v. Wasserman*, 675 So. 2d 103 (Fla. 1996), claiming that the Florida Supreme Court disciplined an attorney's statements that "were likely to prejudice ongoing litigation and undermine the fairness of courtroom proceedings." Again, this language does not exist in *Wasserman*. That case dealt with an attorney who was disciplined for the following conduct:

> On August 23, 1993, Wasserman attended a hearing before Judge Bonnie Newton and lost his temper after a ruling by Judge Newton. He stood and shouted his criticism, he waved his arms, he challenged Judge Newton to hold him in contempt and displayed his arms as if to be handcuffed, he stated his "contempt" for the court, he banged on the table and generated such a display of anger that the bailiff who was present felt it necessary to call in a backup bailiff. Immediately thereafter, outside the hearing room, in the presence of both parties and opposing counsel, Wasserman stated that he would advise his client to disobey the court's ruling.
> …
> On April 14, 1994, after getting an unfavorable response to a question asked over the telephone of Judge John Lenderman through his judicial assistant, Wasserman said to the assistant, Cynthia Decker, "You little motherf-----; you and that judge, that motherf----- son of a b----." Ms. Decker was so upset by the incident that she had to leave the office early that day.

*Wasserman*, 675 So. 2d at 104. As with *Norkin*, it is astonishing bad faith to imply that the press release mentioned in the Frivolous Motion is remotely comparable to the conduct at issue in *Wasserman*.

Next up is *Florida Bar v. Ray*, 797 So. 2d 556 (Fla. 2001), which Plaintiff cites on page 10 of the Frivolous Motion, claiming that the court said "[s]tatements by an attorney that diminish the public's confidence in the integrity and neutrality of our judicial system constitute conduct prejudicial to the administration of justice." Once again, this quoted language appears nowhere in the case. Instead, the court noted that ethics rules "are designed to preserve public confidence in the fairness and impartiality of our system of justice," such that courts may use standards other than defamation to impose discipline based on statements by attorneys. *Id*. at 558-59. There is no mention of conduct prejudicial to the administration of justice at all.

Then, and most egregiously, Plaintiff quotes at page 11 from *Florida Bar v. Schwartz*, 605 So. 2d 465 (Fla. 1992), claiming the Florida Supreme Court sanctioned a lawyer for comments that carried "ethnic and religiously charged overtones," and that such statements violated Rule 4-8.4(d) because they "create prejudice and hostility inconsistent with the standards of our profession." This entire case appears to be hallucinated. The citation provided resolves to *Dowling v. State*, 605 So. 2d 465 (Fla. Oct. 8, 1992), which has nothing to do with attorney discipline. There are two *Florida Bar v. Schwartz* cases that address Rule 4-8.4(d), but neither one contains any of the quoted language, nor do they address anything related to ethnicity or religion. *See Fla. Bar v. Schwartz,* 334 So 3d 298 (Fla. 2022); *Fla. Bar v. Schwartz*, 382 So 3d 600 (Fla. 2024).

Finally, at page 11, Plaintiff cites *Florida Bar v. Martocci*, 791 So. 2d 1074, 2001 Fla. LEXIS 843 (Fla. Apr. 26, 2001), claiming that the court imposed sanctions on an attorney whose comments "created an atmosphere of hostility, intimidation, and disrespect that had no place in our justice system." This case exists, but the quoted language does not. The court disciplined an attorney for "making 'disrespectful and abusive comments [that] cross the line from that of zealous

advocacy to unethical misconduct.'" *Id*. at *10. The conduct that the court found worthy of discipline was:

> [I]n December 1996, Martocci called Ms. Berger a "nut case." After a deposition on May 5, 1998, Martocci referred to Ms. Berger as a "crazy" and a "nut case." During another deposition on May 5, 1998, Martocci made demeaning facial gestures and stuck out his tongue at Ms. Berger and Ms. Figueroa. After a hearing on June 24, 1998, upon exiting an elevator, Martocci told Ms. Figueroa that she was a "stupid idiot" and that she should "go back to Puerto Rico." In another incident, on June 19, 1998, during an intermission of a deposition, Ms. Figueroa telephoned the office of Judge Edward J. Richardson and reached Pamela Walker, a judicial assistant. After Ms. Figueroa spoke to Ms. Walker, Martocci took the telephone and yelled the word "bitch." Martocci admitted that because the phone was dead when he received it from Ms. Figueroa, he said "son of a bitch" as a frustrated response to missing the opportunity to speak to Ms. Walker. Martocci claims that he did not say these words to anyone in particular. The referee also found that throughout the Berger proceedings Martocci repeatedly told Ms. Figueroa that she did not know the law or the rules of procedure and that she needed to go back to school.
> …
> [D]uring a recess to a hearing in the Berger proceedings, when Mr. Paton entered the courtroom, Martocci said "here comes the father of the nut case." Mr. Paton responded by approaching respondent and saying, "If you have something to say to me, say it to my face, not in front of everyone here in the courtroom." Thereafter, in open court and for all to see, Martocci closely approached Mr. Paton and threatened to beat him. Upon Ms. Figueroa's attempt to intervene, Martocci told her to "go back to Puerto Rico." This confrontation only ended when a bailiff entered the courtroom.

*Id*. at *2-4. Predictably, Plaintiff makes no attempt to explain how this conduct is comparable to the press release mentioned in the Frivolous Motion.

The Court may have noticed a pattern in the above cases: they represent *the entirety of Plaintiff's legal argument* that Defendants' alleged conduct was sanctionable.[2] Every other case citation is provided only for basic, uncontroversial propositions of law such as that courts have inherent authority to impose sanctions, that courts need to exercise restraint in imposing sanctions,

---

[2] These misrepresentations regarding cited authority are in addition to Plaintiff's flagrant mischaracterizations of Defendants' counsel's press release, but the Court can see for itself that such characterizations are not consistent with the press release.

that an attorney's First Amendment rights are not unlimited, and that case-ending sanctions should rarely be imposed. Every single authority cited to explain specifically how Defendants' alleged conduct is sanctionable is either hallucinated or egregiously misrepresented. Maybe this was due to reckless use of artificial intelligence, without realizing that it is prone to hallucinations. If that is the case, Plaintiff's counsel violated Florida Rule of Professional Conduct 4-1.1, as the comment to this rule states that a lawyer should stay current on updates in the law, "including an understanding of the benefits and risks associated with the use of technology, including generative artificial intelligence . . . ." *See Papazian*, 2025 U.S. Dist. LEXIS 229362, *6 (finding sanctions for violation of Rule 4-1.1 appropriate based on use of AI-generated citations). If the hallucinated cases and quotations were deliberate, then Plaintiff's counsel violated Rules 4-3.3(a) and 8.4(c) and (d), which require candor to the tribunal and forbid misrepresentations and conduct prejudicial to the administration of justice. *See In re Neusom*, No. 2:23-cv-00503-JLB-NPM, 2024 U.S. Dist. LEXIS 47595, *11 (M.D. Fla. Jan. 12, 2024) (finding probable cause to conclude attorney violated Rules 3.3 and 8.4 for misrepresenting cited cases and fabricating authority).

   This is not an isolated incident, either, as Plaintiff's counsel misrepresented the authority they cited in their opposition to Defendants' motion to dismiss (DE 23), they just seem to have gotten away with it with a light tap.  During the hearing, the Court noted that Plaintiff's cases cited for the proposition that the publication of truthful information can support a tortious interference claim did not actually stand for that proposition. Hr'g. Tr. at 17:19-18:6. At page 4 of their opposition, Plaintiff cited *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 386 (Fla. 4th DCA 1999), for the proposition that "Florida law does not immunize malicious interference simply because the information disclosed was true and even truthful information may constitute tortious interference where it is published with malice or without a legitimate business

purpose." But *Salit* does not support this claim at all; the case briefly discusses truthfulness in addressing an injurious falsehood claim, but there is no discussion of it related to malicious interference. Plaintiff also cites *Ethyl Corp. v. Balter*, 386 So. 2d 1220, 1225 (Fla. 3d DCA 1980), for the same proposition, but this case doesn't discuss truthfulness at all. Rather, it held that "so long as improper means are not employed, activities taken to safeguard or promote one's own financial, and contractual interests are entirely non-actionable." *Id*. at 1225. And there were other misrepresentations the Court did not note on the record. At pages 9-10, Plaintiff cited *St. Johns River Water Mgmt. Dist. v. Fernberg Geological Servs., Inc*., 784 So. 2d 500, 505 (Fla. 5th DCA 2001), for the argument that "Causation is ordinarily a jury question. Only when the chain of events is 'too remote' should causation be decided on the pleadings." But *St. Johns* dealt with an appeal of a verdict where causation was an issue, and there was no discussion of causation typically being a jury question. More egregiously, the quoted "too remote" language appears nowhere in that case. And worst of all is Plaintiff's citation to *Gulf Coast Home Health Servs. of Fla., Inc. v. Dep't of Health & Rehab. Servs*., 503 So. 2d 415, 418 (Fla. 1st DCA 1987), at pages 13-14 of the opposition, for the proposition that "Courts have rejected Anti-SLAPP defenses where speech was weaponized to interfere with contractual relations." *Gulf Coast* is not an Anti-SLAPP case, and in fact long predates Florida's Anti-SLAPP law. The case is about when taking judicial notice of documents is appropriate, and has nothing to do with the issues in the motion to dismiss. The case, while extant, appears to be a hallucinated citation. Plaintiff's counsel has thus established a pattern of using misleading, if not outright fabricated, case citations, and the Court should approach every filing from Plaintiff with deep skepticism.

Plaintiff's misrepresentations are not limited to hallucinated cases and quotes, but extend to all of the evidence on which the Frivolous Motion relies. Plaintiff asserts that this Court

"rejected" Defendants' First Amendment and Anti-SLAPP arguments and advised Defendants not to raise them again. (DE 32 at 2). The transcript (DE 37 at 15-35) says otherwise. The Court actually stated: "I don't really need to hear much argument on that because, quite frankly, I don't think your motion really seriously or significantly makes that argument, and so I don't intend to rely on that argument for my ruling." (Hr'g Tr. at 8:21-25). Far from barring Defendants from raising those arguments again, the Court observed that it had not been presented with adequate briefing on those issues at that stage. Defendants' Motion to Dismiss [DE 17] advanced three independent grounds for dismissal. The Court elected to rule on two, namely deficiencies in causation and the inability to premise tortious interference liability on the dissemination of truthful, publicly available information,[3] and the Court expressly declined to reach the First Amendment and Anti-SLAPP grounds. (Hr'g Tr. at 4:14-29; 17:9-18; 8:21-25). The Court made ***no ruling on the merits*** of Defendants' First Amendment or Anti-SLAPP arguments. Its decision not to reach those grounds reflects restraint, not rejection. And the Court's reference to insufficient briefing implies that more comprehensive briefing on those issues could warrant consideration in the future. Nevertheless, the Court grounded its ruling on the principle that tort liability cannot attach to truthful, publicly available speech. (Hr'g Tr. at 18:2-13).

The Frivolous Motion also fabricates facts about Defendants' counsel's press release. The release did not mischaracterize the Court's motion to dismiss ruling by describing it as reflecting First Amendment principles. Defendants were explicit about the actual basis of dismissal. The press release states that the Court: (1) recognized the Complaint was "fatally flawed on causation," and (2) made clear that "sharing truthful, publicly available information cannot give rise to a tortious interference claim under Florida law." Those statements track the Court's analysis. (Hr'g

---

[3] Of course, the First Amendment would not abide any tort liability for such.

Tr. 17:20-18:24). Even stranger is Plaintiff's objection to the press release truthfully stating that CAIR has been designated as a terrorist organization. The press release referenced governmental actions taken by the State of Texas. Coincidentally, subsequent to the release's publication, the State of Florida issued a similar designation relating to CAIR.[4] The release does not accuse Plaintiff or her individual attorneys of criminal conduct or violence.

## 4.0   CONCLUSION

This motion is not about a mere difference of opinion on what a case says or what a fact is – every misrepresentation is easily verifiable.  Defense counsel and the court should be able to rely on the factual and legal representations in a brief.  In this case, we can not do so because one side prefers to try and get away with what it can, hoping that nobody will notice.  We noticed.  They have done it twice now.  The first time, the unethical conduct was to try and avoid dismissal.  Now that conduct is aimed at the heart of the First Amendment and the right to counsel.  This Court should not let this go unaddressed.

"To state the obvious, it is a fundamental duty of attorneys to read the legal authorities they cite in appellate briefs or any other court filings to determine that the authorities stand for the propositions for which they are cited." *Noland v. Land of the Free, L.P.,* 336 Cal. Rptr. 3d 897, 912 (Cal. Ct. App. 2025).  To further state the obvious, this applies to facts as well as case law.

How all these misrepresentations happened does not matter. Whether by recklessness or deceit, Plaintiff's counsel signed a motion containing gross misrepresentations as to the facts and legal authority cited, and those misrepresentations would have been obvious to any reasonably competent attorney performing even a cursory review of the Frivolous Motion before filing it.

---

[4] *See* State of Florida, Gov. Exec. Order 25-244 (Recognizing that CAIR was an unindicted co-conspirator "in the largest terrorism-financing case in American history" and designating CAIR as a "terrorist organization."

RANDAZZA | LEGAL GROUP

Attorneys Sharp and Saleh are thus equally responsible for this misconduct, no matter which of them is responsible as both of them signed the Frivolous Motion.[5] Sanctions should come in the form of requiring Khorashi, Sharp, and Saleh, jointly and severally, to pay all costs and reasonable attorneys' fees incurred in connection with the Frivolous Motion and this Motion and any other sanctions or discipline that this Court deems just and proper.

## CERTIFICATION OF CONFERRAL

In compliance with LR 7.1(a)(3), counsel for Defendants met and conferred with counsel for Plaintiff regarding the relief requested in this Motion by telephone on December 12, 2025, in a good faith effort to resolve the issues raised in the Motion. Despite this attempt, the parties were unable to resolve the issues. There are no other parties or non-parties who may be affected by the relief sought in this Motion.

Dated: December 15, 2025.

/s/ Marc J. Randazza
MARC J. RANDAZZA
Florida Bar No. 625566
Email: ecf@randazza.com
RANDAZZA LEGAL GROUP, PLLC
2 S Biscayne Blvd #2600
Miami, FL 33131
Phone: (888) 887-1776

*Attorneys for Defendants*

---

[5] *See, e.g., Johnson v. Dunn,* 792 F. Supp. 3d 1241, 1264-65 (N.D. Ala. 2025) (It is appropriate for all attorneys on a signature block to share responsibility for AI hallucinations).

**CERTIFICATE OF SERVICE**

I hereby certify that on December 15, 2025, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification to all counsel of record.

/s/ *Marc J. Randazza*
Marc J. Randazza