**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No. 25-cv-23202-JB**

ZOHRA KHORASHI,

Plaintiff,

v.

GADI BEER AND BETH GELLMAN BEER,

Defendants.
_______________________________________/

**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Defendants, Gadi Beer and Beth Gellman Beer ("Defendants"), by and through their undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6) and Fla. Stat. § 768.295, respectfully move for an Order dismissing Plaintiff's First Amended Complaint [DE 33] for failure to state a cause of action and violating Florida's Anti-SLAPP statute, and in support thereof state as follows:

## INTRODUCTION

This case seeks to impose tort liability on private citizens for constitutionally protected speech on a matter of profound public concern. It raises a fundamental question: whether Florida law permits a licensed attorney to silence critics after voluntarily participating in heated public debate. Here, Plaintiff posted more than 50 times about the Israeli-Palestinian conflict between January and February 2024 alone. DE 33 at ¶ 27. She now seeks to hold Defendants liable for posting a hyperlink to publicly available information. Both the First Amendment and Florida's Anti-SLAPP statute, Fla. Stat. § 768.295, bar such claims.

Plaintiff is a licensed attorney who maintains a public Instagram account called "thatlawyermomlife" where she discloses her real name, identifies herself as a lawyer, and uses the same profile picture that appeared on her Chartwell Law attorney profile. *Id.* at ¶ 15. She admits posting "on her Instagram page about the Gaza conflict and her opposition to what she described as a genocide against the Palestinian people" on a more-than-daily basis. *Id.* at ¶¶ 16-17, 27. She also acknowledges that "her outspoken support of the Palestinian cause could be misconstrued by some people as antisemitism." *Id.* at ¶ 18.

Plaintiff's former employer, Chartwell Law, began monitoring her social media activity in late 2023 after receiving complaints that her posts could be perceived as antisemitic. *Id.* at ¶ 22. On January 11, 2024, Chartwell's leadership met with Plaintiff, advised her that individuals had expressed concerns that her content "could be perceived as antisemitic," and counseled her to be more "mindful" and "positive" in posts moving forward. *Id.* at ¶¶ 22-23.[1] Plaintiff continued

[1] On October 7, 2023, Hamas conducted attacks in Israel that resulted in approximately 1,200 deaths and the abduction of more than 200 people, including children. This was the deadliest single day for Jewish people since the Holocaust. Following these events, documented incidents of antisemitism increased significantly worldwide. *See* World Zionist Organization et al., "Antisemitism General Review and Summary Report for 2024," https://www.wzo.org.il/department/combatting-antisemitism/antisemitism_2024/en (reporting 340% increase in global antisemitic incidents). This context

posting about the conflict incessantly—more than 50 additional times between January 19 and February 29, 2024. *Id.* at ¶ 27.

On February 18, 2024, Defendants posted comments on an Instagram thread about Plaintiff, including a hyperlink to her attorney profile on Chartwell's public website—information also available through the Florida Bar's public database. *Id.* at ¶¶ 27-28. Eleven days passed. On February 28, 2024, a different organization posted about Plaintiff on a different platform. *Id.* at ¶¶ 32-33. Chartwell terminated Plaintiff the next day, February 29, 2024, citing "the doxing incident on February 28" as causing "widespread criticism and hostility towards Chartwell Law." *Id.* at ¶¶ 39-40. The Amended Complaint does not allege Defendants were involved with or aware of the February 28 post.

Plaintiff seeks to hold Defendants liable for her termination based on their February 18 comments, asserting tortious interference, defamation by implication, and civil conspiracy claims. These claims are barred for multiple independent reasons.

First, Florida's Anti-SLAPP statute prohibits lawsuits "without merit and primarily because such person . . . has exercised the constitutional right of free speech in connection with a public issue." Fla. Stat. § 768.295(3). All four counts are "primarily" based on Defendants' comments about Plaintiff's public statements on the Israeli-Palestinian conflict and antisemitism—core matters of public concern. The claims are also "without merit" for the reasons detailed below. The statute requires dismissal with prejudice and mandatory attorney's fees. Fla. Stat. § 768.295(4).

Second, the First Amendment independently bars claims seeking to punish publication of truthful, publicly available information. Defendants posted a hyperlink to information Chartwell

---

is relevant to understanding the public debate in which Defendants' speech occurred and the concerns that motivated their comments about perceived antisemitism in social media discourse regarding the conflict.

and Plaintiff made publicly available. No legitimate state interest supports expanding tort liability to punish such speech or chill public discourse about antisemitism.

Third, the claims fail on the merits. The Amended Complaint's own allegations establish that Chartwell made an independent business decision based on its months-long investigation, its January 2024 warnings, Plaintiff's 50+ subsequent posts, and the impact of viral February 28 post—not Defendants' February 18 comments. *Id.* at ¶¶ 22-27, 32-40. This negates causation for all four counts.

This Court previously dismissed Plaintiff's original Complaint, identifying causation deficiencies and the failure to address how posting truthful public information could be actionable. The Amended Complaint does not cure these deficiencies. Its allegations detail Chartwell's independent evaluation process and expressly identify the February 28 incident—not Defendants' February 18 comments—as the proximate cause of termination. *Id.* at ¶ 39. Because this lawsuit seeks to punish constitutionally protected speech, violates Florida's Anti-SLAPP statute, and fails to state viable claims, the Amended Complaint should be dismissed with prejudice. Defendants also respectfully request mandatory attorney's fees and costs under Fla. Stat. § 768.295(4).

## MEMORANDUM OF LAW

### I. LEGAL STANDARD

To survive dismissal under Rule 12(b)(6), a complaint must plead sufficient factual allegations to state a plausible claim. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Where allegations show relief is barred, dismissal is proper. *Jones v. Bock*, 548 U.S. 199, 215 (2007).

Florida's Anti-SLAPP statute provides that "[a] person … in this state may not file or cause to be filed … any lawsuit … against another person [] without merit and primarily because such person [] has exercised the constitutional right of free speech in connection with a public issue." Fla. Stat. § 768.295(3). A person sued in violation of the statute "has a right to an expeditious resolution of" the claims, allowing them to "move the court for an order dismissing the action." Fla. Stat. § 768.295(4). The prevailing party on a motion brought under this statute is entitled to a mandatory award of "reasonable attorney fees and costs incurred in connection with a claim that an action was filed in violation of this section." *Id.* The term "free speech in connection with public issues" is defined as "any written or oral statement that is protected under applicable law and is made … in connection with a … radio broadcast, … news report, or other similar work." *Id.* at § 768.295(2)(a). To qualify as a SLAPP, a case must satisfy two conditions. First, the court must determine whether the claims at issue are "primarily" based on protected speech. *Vericker v. Powell,* 406 So. 3d 939, 945 (Fla. 2025); § 768.295(1), Fla. Stat. Second, the court must determine whether the claims asserted by the plaintiff are "without merit." *Id.*

## II. FLORIDA'S ANTI-SLAPP STATUTE BARS PLAINTIFF'S CLAIMS.

### A. Defendants' Statements Were Made in Connection with a News Report or Similar Work.

Florida's Anti-SLAPP statute defines "free speech in connection with public issues" to include "any written or oral statement ***made in or in connection*** with a play, movie, television program, radio broadcast, audiovisual work, book, magazine article, musical work, ***news report, or other similar work***." Fla. Stat. § 768.295(2)(a) (emphasis added). Defendants' comments on Instagram fall within the statute's enumerated categories of protected communications.[2] The

[2] *See, e.g., Gundel v. AV Homes, Inc.*, 264 So. 3d 304, 307 (Fla. 2d DCA 2019), *disapproved of on other grounds by Vericker v. Powell*, 406 So. 3d 939 (Fla. 2025) (involving posts on "Internet blogs"); *Rosenthal v. Council on American-Islamic Relations, Florida, Inc.*, 2017 WL 6390102 (Fla. 17th Jud. Cir. Ct. Nov. 8, 2017) (involving Facebook posts); *see also Wong v. Jing*, 189 Cal.App.4th 1354, 1366 (2010) (finding

Amended Complaint establishes that JewHateDB functions as a digital news outlet or watchdog reporting service. DE 33 at 11, ¶ 24. It describes JewHateDB as a public incident-reporting platform with 137,000 followers dedicated to documenting antisemitism. *Id.* The platform collects submissions, posts "receipts," maintains a gallery of reported incidents, and issues updates. *Id.* This is newsgathering and news-reporting. The statute requires only that speech be made in connection with a "news report, or other similar work," not that the speaker control the platform or that the speech be original content.

**B. Defendants' Statements Related to a Matter of Public Concern.**

Defendants' speech concerned matters of public importance: allegations of antisemitism, the Israeli-Palestinian conflict, and professional conduct of a licensed attorney. As the Supreme Court explained:

> Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public. The arguably inappropriate or controversial character of a statement is irrelevant to the question whether it deals with a matter of public concern.

*Snyder v. Phelps,* 562 U.S. 443, 453 (2011) (citations and quotations omitted). Courts analyzing similar facts recognize that debate over whether professionals should face employment consequences for controversial speech constitutes speech on matters of public concern.[3]

---

that "Web sites accessible to the public. . . are public forums for purposes of the anti-SLAPP statute") (citations omitted).

[3] *See e.g., DeHart v. Tofte*, 326 Or. App. 720, 533 P.3d 829 (2023) (publication of school board member's employer information in context of public controversy about their votes was protected speech about matters of public concern). In *DeHart*, school board members sued critics under Oregon's anti-doxxing law for posting information about their employers online after the board members voted to ban BLM and Pride symbols from schools. *Id.* at 723. The Oregon Court of Appeals dismissed the school board members' claims as an impermissible SLAPP suit, reasoning that each of the board members had themselves published information about their employers to the public, *id.* at 848, and that the ban on BLM and Pride symbols was a matter of public concern and significant public debate. *Id.* at 744.

Defendants' comments responded to a public post criticizing Plaintiff's Instagram content regarding the Israeli-Palestinian conflict, expressing opinions about professional accountability for attorneys who make statements that could be perceived as antisemitic. This is core protected speech.

**C. Plaintiff's Claims are Primarily Based on Protected Speech.**

The First Amended Complaint asserts two counts of Tortious Interference (Counts I and II), one count of Defamation by Implication (Count III), and one count of Civil Conspiracy (Count IV), all of which are based solely on Defendants' February 18, 2024 comments on the viral JewHateDB Instagram post concerning Plaintiff. All four counts are primarily based on Defendants' exercise of First Amendment rights to comment on Plaintiff's public statements about a matter of public concern. There is no non-speech conduct that could support these claims.

**D. Plaintiff's Claims are Without Merit.**

For the reasons set forth in detail in Sections III-VI Below, all four counts of Plaintiff's First Amended Complaint fail to state viable claims as a matter of law. Because Florida recognizes a substantive right to be protected from meritless litigation over the exercise of free speech in connection with public issues,[4] the Court should dismiss the Amended Complaint with prejudice and grant Defendants their reasonable attorneys' fees and costs incurred responding to this lawsuit.

## III. THE FIRST AMENDMENT BARS PLAINTIFF'S CLAIMS.

Independent of the Anti-SLAPP statute, the First Amendment bars Plaintiff's claims because they seek to punish Defendants for publishing truthful, publicly available information. As the Supreme Court held: "state action to punish the publication of truthful information seldom can

[4] *See Corsi v. Newsmax Media, Inc.*, 519 F.Supp.3d 1110, 1128 (S.D. Fla. 2021); *Vericker*, 406 So. 3d at 946 (clarifying that Florida's Anti-SLAPP statute provides substantive immunity from suit, protecting defendants from the burden of litigation itself).

satisfy constitutional standards." *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 102 (1979). Defendants' speech linked to information Chartwell published on its website and that was publicly available on the Florida Bar database. As this Court noted:

> If you're a lawyer, it is pretty easy. You go to the Florida Bar Website, and you know exactly where she works. Forget about Googling.

*See* Tr. At 12:5-7.[5] This public data, chosen for disclosure by Plaintiff and her employer, cannot support her claims without chilling public discourse.

In *Florida Star v. B.J.F.*, the Supreme Court held that imposing liability for publishing truthful, lawfully obtained information violates the First Amendment absent a state interest of the "highest order." 491 U.S. 524, 524 (1989). No such interest exists here. Plaintiff asks this Court to expand tort law to punish core protected speech—truthful speech from public sources in an ongoing public debate. This is precisely what the First Amendment forbids. Expanding tort law to punish this speech would silence Jewish voices countering perceived antisemitism, inverting First Amendment values.

## IV. PLAINTIFF'S TORTIOUS INTERFERENCE CLAIMS FAIL AS A MATTER OF LAW.[6]

### A. The Court's Causation Concerns Remain Unaddressed—and the Amended Complaint Makes Them Worse.

[5] *See* the November 19, 2025 hearing transcript ("Tr.") on Defendant's Motion to Dismiss Plaintiff's Original Complaint, a copy of which was filed as an exhibit to Defendants' Response to Plaintiff's Motion for Sanctions, DE 37 at 15-35.

[6] "Under Florida law, the elements of tortious interference with a contract or business relationship are: (1) the existence of a business relationship, not necessarily evidenced by an enforceable contract, under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by defendant; and (4) damage to the plaintiff as a result of the interference." *Menudo Int'l, LLC v. In Miami Prod., LLC*, No. 17-21559-CIV, 2018 WL 1138300, at *3 (S.D. Fla. Mar. 2, 2018) (citing *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 385–86 (Fla. 4th DCA 1999)).

This Court dismissed the original Complaint because Plaintiff failed to allege that Defendants' conduct, rather than Chartwell's independent business judgment, caused her termination. The Court explained:

> So she's fired because the law firm made the determination that someone with this kind of social media platform or statements created a situation that was bad for business . . . I'm still having difficulty as you have pled this complaint linking up the activity of the Beers with her actual damages, which was her eventual termination, which was a decision that the law firm made based on its best interests.

Tr. at. 16:1-9. Instead of addressing this gap, the Amended Complaint contains new allegations demonstrating Chartwell made an independent business decision based on its own assessment of Plaintiff's conduct and business impact—not because of Defendants' comments.[7] This is fatal to the interference claims.[8]

***i. Chartwell Was Already Aware of the Controversial Nature of Plaintiff's Posts and Had Received Complaints Alleging Antisemitism Weeks Before Defendants' Comments.***

---

[7] The causation deficiencies discussed in Section III are fatal to all four counts of the Amended Complaint, not merely the tortious interference claims. Count III (Defamation by Implication) requires Plaintiff to establish that Defendant's statement caused her alleged damages, including reputational harm and termination. DE 33 at ¶¶ 52-53, 62. Count IV (Civil Conspiracy) requires proof of "damage to plaintiff as a result of the acts done under the conspiracy." *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 4th DCA 1997). For the reasons stated in Section III.A, Plaintiff cannot plausibly allege that Defendants' February 18, 2024 comments—as opposed to Chartwell's independent business judgment following months of monitoring, the firm's January 2024 warnings, Plaintiff's continued posting, and the February 28, 2024 incident—caused her termination or any other damages. Accordingly, even if Plaintiff had adequately stated the other elements of her defamation and conspiracy claims (which she has not), those claims would still fail for lack of causation.

[8] *See Tietig v. Southeast Regional Construction Corp.*, 557 So. 2d 98, 99 (Fla. 3d DCA 1990) (holding that "lack of a causal relationship between the alleged 'interference'" and the alleged damage "precludes recovery as a matter of law"); *Ethyl Corp. v. Balter*, 386 So. 2d 1220, 1223–24 (Fla. 3d DCA 1980) (reversing judgment where plaintiff showed "at most" that defendant's steps "very indirectly led to" damages, holding that indirect or consequential interference cannot support liability); *St. Johns River Water Mgmt. Dist. v. Fernberg Geological Servs., Inc.*, 784 So. 2d 500, 505 (Fla. 5th DCA 2001) (reversing verdict where plaintiff's causation theory rested on speculation rather than evidence, holding plaintiff failed to show contract would have been completed but for interference and that "suppositions" about what client would have done "are not relevant").

The Amended Complaint reveals Chartwell's senior leadership was already evaluating Plaintiff's social media activity and its potential impact before Defendants commented. This independent investigation and decision-making began in January 2024 and continued through her February 29, 2024 termination. On January 11, 2024—more than a month before Defendants' comments—Plaintiff met via Teams with Chartwell's leadership. DE 33 at ¶ 22. According to Plaintiff:

> Mr. Barreras [the firm's founding partner] stated the Firm had been monitoring her social media content since the outbreak of the Gaza conflict and had reviewed all her posts and comments after certain unidentified individuals had allegedly expressed 'concerns' that some of her statements could be perceived as antisemitic.

*Id.* These allegations establish that Chartwell was already independently monitoring Plaintiff's social media, had received complaints that her posts could be perceived as antisemitic, and was assessing business risks—all before Defendants commented. This independent process negates any causal connection to Defendants' comments.

***ii. Chartwell Advised Plaintiff to Be More Mindful and Continued Monitoring Her Activity.***

After the January 11 meeting, Chartwell advised Plaintiff to be more "mindful" and "positive" in her social media posts going forward, so as to ensure they "aligned with the Firm's values." DE 33 at ¶ 23. These allegations demonstrate Chartwell had identified concerning posts, communicated those concerns to Plaintiff, and set expectations for her future conduct—all without Defendants' involvement. Chartwell continued this independent monitoring up through her termination on February 29, meeting with Plaintiff again on January 19 after another concerning post. *Id.* at ¶¶ 24-26. This pattern demonstrates Chartwell's independent business judgment process.

#### *iii. The Alleged "Triggering Event" that Led to Plaintiff's Termination was a February 28 Incident That the Amended Complaint Does Not Link to Defendants.*

The Amended Complaint asserts that Chartwell terminated Plaintiff because the February 28 incident "resulted in widespread criticism and hostility towards" the firm. DE 33 at ¶ 39. This February 28 incident involved a post by stopantisemitism.org on X, *id.* at ¶¶ 32-33—a different organization and platform than the February 18 JewhateDB post. Critically, the Amended Complaint does not allege Defendants had any involvement with the February 28 post. There is no allegation Defendants caused, contributed to, or knew about it. The temporal gap alone is fatal to causation. Defendants commented on February 18. For eleven days, Chartwell took no action. Then, on February 28, a different organization posted on a different platform, and Chartwell terminated Plaintiff the next day.[9]

#### *iv. The Amended Complaint Confirms Chartwell Made an Independent Business Decision.*

The timeline is dispositive: Between October 2023 and January 2024, Chartwell monitored Plaintiff's social media and received antisemitism complaints. On January 11, Chartwell reviewed her posts and warned her to be "mindful." She continued posting 50+ times. On February 18, Defendants commented. For eleven days, Chartwell took no action. On February 28, stopantisemitism.org posted about Plaintiff, triggering "widespread criticism." On February 29, Chartwell terminated her, citing the February 28 incident.

---

[9] The Amended Complaint attempts to paper over this causation gap by alleging vague "collaboration" between JewhateDB and stopantisemitism.org, suggesting that "there are numerous examples of collaboration between Jewhatedb, 'Stellaingerescobedo' and Stopantisemitism.org where an individual like Plaintiff who is first targeted for doxing on Jewhatedb is subsequently 'exposed' on stopantisemitism.org's X page." DE 33 at ¶ 33. But even accepting this allegation as true, it does nothing to establish that Defendants caused or participated in the February 28 post. At most, it suggests that two organizations sometimes post about the same individuals—which says nothing about whether Defendants caused, contributed to, or even knew about the February 28 post. The alleged pattern of organizational behavior cannot substitute for factual allegations connecting Defendants to the specific incident that Chartwell identified as the cause of termination.

Chartwell's decision was based on: (1) months-long monitoring; (2) complaints received before Defendants commented; (3) assessment of antisemitism concerns; (4) business judgment about firm values, and (5) the February 28 incident's impact. Defendants caused none of these factors. Chartwell would have faced the same decision even if Defendants had never commented. As this Court recognized, "at the end of the day, it is the firm that takes that position, that fires them for speech." Tr. at 18:1-14.

### B. Florida Law Prohibits Tortious Interference Claims Based on Providing Truthful Information.

Even if Plaintiff could plead causation—and she cannot—her interference claims fail independently: Florida law does not recognize interference claims based on providing truthful information.[10] Defendants' comments consisted of: (1) posting a hyperlink to Plaintiff's publicly available Chartwell profile, and (2) commenting "I wonder how her Jewish clients would feel about her public posts. This one is innocuous compared to her regular posts. It's disgraceful." Both components involve truthful, publicly available information:

- The hyperlink directed readers to information that Chartwell itself chose to publish on its website and that Plaintiff chose to include in the public Florida Bar database. This was truthful, publicly available information.
- The comment accurately stated Plaintiff had Jewish clients—a fact she admits. DE 33 at ¶ 28. Plaintiff does not allege this was false, only "confidential" (which it was not, as Chartwell's leadership knew which clients she worked with).[11]

---

[10] *See Worldwide Primates, Inc. v. McGreal*, 26 F.3d 1089, 1092 (11th Cir. 1994); *Wesley Fin. Grp., LLC v. Westgate Resorts, Ltd.*, 746 F. Supp. 3d 1342, 1359 (M.D. Fla. 2024), *see also*, Tr. 17:21-18:6 (flagging the fact that "truthful information can't constitute tortious interference" as one of "the deficiencies that have to be addressed" in Plaintiff's amended complaint, and directing Plaintiff's counsel to "look at Westlake Financial or World Primates, which were cited by the defense" for guidance on this issue).

[11] Plaintiff characterizes the fact that she had Jewish clients as "confidential non-public information" that only Defendants possessed. DE 33 at ¶ 28. This is absurd. Miami is the 11th largest Jewish community in the U.S. and is home to around 130,100 Jewish individuals in approximately 69,700 households, making up about 5% of the total county population. *See* Jewish Federations of North America, *2024 Jewish Community Study Press Release* (2024), https://jewishmiami.org/2024_Jewish_Community_Study_Press_Release.pdf. Chartwell Law is a large national firm with more than 250 attorneys and a significant presence in South Florida. DE 33 at ¶ 10. That

- The comment expressed the opinion that one of Plaintiff's posts was "innocuous compared to her regular posts" and that her posts were "disgraceful"—both non-actionable statements of opinion.

The law is clear: "a plaintiff cannot succeed in a tortious interference case if the defendant merely gave a third-party truthful information." *Wesley Fin.,* 746 F. Supp. 3d at 1359. The tortious interference claims should be dismissed for this reason as well.[12]

## V. PLAINTIFF'S DEFAMATION BY IMPLICATION CLAIM FAILS AS A MATTER OF LAW.

Count III alleges "Defamation by Implication" based solely on Defendant Beth Beer's single Instagram comment: "I wonder how her Jewish clients would feel about her public posts. This one is innocuous compared to her regular posts. It's disgraceful." DE 33 at ¶ 56. This claim fails for multiple independent reasons, each of which is dispositive.

### A. Plaintiff failed to plead special damages.

Before analyzing the specific statements at issue in this case, the Court can dispose Plaintiff's claim for defamation by implication because Plaintiff failed to plead special damages.

Under Florida law, a claim for defamation may be categorized in one of two ways: "(1) defamation *per quod*, which requires an additional explanation of, or an interpretation of innuendo suggested by the words used to demonstrate the defamatory meaning or that the plaintiff is the subject of the statement, or (2) defamation *per se*, which does not require any additional explanation in order to prove the defamatory nature of the statement." *Mac Isaac v. Twitter, Inc.*,

---

an attorney practicing at a large law firm in Miami—a city with one of the largest Jewish communities in America—would have Jewish clients requires no "insider knowledge." It would be surprising if she didn't. Defendant's comment was an obvious inference based on publicly known demographics, not a disclosure of confidential information.

[12] Plaintiff argues that Gadi Beer's prior employment at Chartwell gave him "insider knowledge" that made his conduct particularly harmful. DE 33 at ¶ 29. But the Amended Complaint does not allege that Beer disclosed any information that was not publicly available. His knowledge of where plaintiff worked came from the same source available to anyone: Chartwell's public website and the Florida Bar database.

557 F. Supp. 3d 1251, 1259–60 (S.D. Fla. 2021) (citations and quotations omitted). "The critical distinction between these actions is that in *per se* cases, consideration is given only to the four corners of the publication and the injurious nature of the statement must be apparent from the words of the publication itself." *Id.* (citations and quotations omitted).

Here, the statement at issue is not defamatory on its face, nor does Plaintiff allege as much. Instead, the alleged defamatory nature of the statement requires one to consider context, extrinsic facts, and innuendo. *See* DE 33, ¶¶ 58, 59. As a result, Plaintiff's claim is one for defamation per quod. *Paulson v. Cosmetic Dermatology, Inc.*, 2017 WL 2484197, at *4 (S.D. Fla. June 8, 2017) ("When context is considered and extrinsic facts and innuendo are needed to prove the defamatory nature of the words, the statements are not defamatory *per se*" (citations and quotations omitted)); *Doscher v. Holding*, 2020 WL 10318564, at *3 (M.D. Fla. Feb. 3, 2020) (dismissing claim for libel per se by implication because "if extrinsic facts or other information are necessary to understand the libelous nature of a statement, then the statement would be libelous per quod, not libelous per se");

To state a claim for defamation per quod, Plaintiff must plead special damages resulting from the alleged defamatory statements. *Moon & Star Logistics, LLC v. Direct Traffic Sols., Inc.*, 2023 WL 9283969, at *3 (S.D. Fla. Dec. 20, 2023), *report and recommendation adopted*, 2024 WL 167392 (S.D. Fla. Jan. 16, 2024). "Special damages are *actual, out of pocket losses* which must be proven by specific evidence as to the time, cause and amount; whereas general damages encompass the more customary harms inflicted by a defamatory falsehood, such as impairment of reputation and standing in the community." *Id.* (citations and quotations omitted).

Here, Plaintiff does not allege any "realized or liquidated loss" that could constitute special damages. Rather, Plaintiff alleges that she has suffered and continues to suffer "severe mental

anguish and emotional distress, including, but not limited to, depression, stress, anxiety and other emotional pain and suffering . . . ." DE 33, ¶ 62. Because Plaintiff has failed to plead special damages, her claim for defamation by implication should be dismissed.

**B. The Statement Is Non-Actionable Opinion and/or a Statement that is not Capable of being Proven False.**

Consistent with the First Amendment, a statement cannot give rise to actionable defamation unless it contains an assertion of fact that is provably false.[13] Here, Defendant's comment consists of three components, each of which constitutes protected opinion and/or statements that are not capable of being proven true or false:[14]

- <u>"I Wonder How Her Jewish clients Would Feel About Her Public Posts"</u>

This is a quintessential rhetorical question—a device that courts uniformly recognize as non-actionable opinion. The phrase "I wonder how her Jewish clients would feel" does not assert any provable fact. It poses a hypothetical question about how unidentified individuals might react to Plaintiff's posts. The statement has no "precise meaning." Different clients could react differently. Some might be troubled, some indifferent, some might agree. The statement invites speculation about possible reactions—it asserts no verifiable fact about how clients actually

---

[13] *Milkovich v. Lorain Journal Co*. 497 U.S. 1, 19-20 (1990); *Gertz v. Robert Welch, Inc*., 418 U.S. 323, 339-40 (1974) ("Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas.").

[14] "In determining whether an alleged libelous statement is pure opinion, the court must construe the statement in its totality, examining not merely a particular phrase or sentence, but all of the words used in the publication. The court must consider the context in which the statement was published and accord weight to cautionary terms used by the person publishing the statement. All of the circumstances surrounding the publication must be considered, including the medium by which it was disseminated and the audience to which it was published." *Hay v. Indep. Newspapers, Inc.,* 450 So. 2d 293, 295 (Fla. 2d DCA 1984); *Turner v. Wells,* 879 F.3d 1254, 1262 (11th Cir. 2018) ("True statements, statements that are not readily capable of being proven false, and statements of pure opinion are protected from defamation actions by the First Amendment.")

reacted. The rhetorical question reinforces its status as opinion. By framing it as "I wonder," Defendant signaled she was expressing speculation, not fact.[15]

- "This One Is Innocuous Compared to Her Regular Posts"

The term "innocuous" is inherently subjective. "Innocuous" means "not harmful or offensive,"[16] but what is "harmful" or "offensive" depends on the reader's perspective, values, and sensibilities. What one considers innocuous, another might find offensive. This is opinion and is not a statement that is capable of being proven false.

- "It's Disgraceful"

Similarly, "Disgraceful" expresses disapproval and moral judgment but asserts no provable fact. It is subjective evaluation depending on the speaker's values. What one considers "disgraceful," another might consider principled advocacy. The Israeli-Palestinian conflict is one of the most controversial debates of our time. In this context, calling posts "disgraceful" is precisely the type of expression the First Amendment protects.[17]

### C. The Defamation by Implication Theory Requires Proof of Deliberate Omission with Intent to Deceive

Plaintiff styles this as "defamation by implication," but such claims are only viable where a defendant "(1) juxtaposes a series of facts so as to imply a defamatory connection between them, or (2) creates a defamatory implication by omitting facts, [such that] he may be held responsible

---

[15] *See Akai Custom Guns, LLC v. KKM Precision, Inc.*, 707 F. Supp. 3d 1273, 1295 (S.D. Fla. 2023) (holding statement was not actionable defamation where it "begins with the phrase 'I do not know if,'" making it speculative rather than "authoritative or fact-based," and thus "not capable of being proven false")

[17] Even if Defendant's statement could imply facts—and it cannot—courts must ask whether Plaintiff's interpretation is reasonable. Plaintiff claims it falsely implies she was a "virulent and irredeemable antisemite whose visceral hatred of Jews and support of terrorism against Israel made her unfit as an attorney to represent any Jewish clients." DE 33 at ¶ 57. This is unreasonable. The statement says "I wonder how her Jewish clients would feel"—not that she has "visceral hatred" or is "unfit to practice law." No reasonable reader would so interpret it.

for the defamatory implication …" *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). Plaintiff fails to plead any specific omission or juxtaposition as to truthfully stated facts that gives rise to a false impression. Plaintiff's attempt to manufacture a defamation by implication claim by arguing Defendants referenced certain posts while omitting those containing her disclaimers of antisemitic intent fails as a matter of law.

Defendant had no duty to present a comprehensive account of Plaintiff's social media history or mention disclaimers. The First Amendment protects selective emphasis when commenting on public figures—and as discussed below, Plaintiff is a limited purpose public figure in this context. Defendant directed readers to examine Plaintiff's "regular posts," providing needed context. Disclaimers do not negate post content. A person can disclaim intent while making statements others reasonably perceive as offensive. That Plaintiff included disclaimers does not mean her posts could not be perceived as antisemitic—it means she claimed that was not her intent. Defendant's alleged failure to mention disclaimers does not create false implication. It means Defendant focused on post content rather than claimed intent. That is permissible editorial choice, not defamation.

**D. Plaintiff Cannot Establish Actual Malice.**

Because Plaintiff is a limited-purpose public figure with respect to the Israeli-Palestinian conflict, she must prove "actual malice" to prevail on her defamation claim. *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964). A person becomes a limited-purpose public figure by "voluntarily inject[ing] himself or [herself] . . . into a particular public controversy" thereby "invit[ing] attention and comment." *Gertz*, 418 U.S.at 345-51.

Plaintiff's allegations establish she is a limited-purpose public figure regarding the Israeli-Palestinian conflict and antisemitism allegations. She posted more than 50 times in less than two

months about Gaza to influence public opinion and bring attention to Palestinian casualties, generating controversy that triggered meetings with Chartwell's leadership. DE 33 at ¶¶ 16-17, 22, 24, 27. She acknowledged posts "could be misconstrued by some people as antisemitic." *Id.* at ¶ 18. By posting dozens of times to her ***hundreds of thousands of followers*** about a controversial issue,[18] with the goal of influencing opinion, Plaintiff voluntarily entered public controversy. She cannot now claim private-figure status.

Actual malice requires proof the defendant made the statement "with knowledge that it was false or with reckless disregard of whether it was false or not." *Sullivan*, 376 U.S. at 280. Plaintiff cannot establish actual malice because the statement contains no factual assertions that could be "known to be false." The statement consists of rhetorical questions, subjective opinions, and a true fact (she had Jewish clients). DE 33 at ¶ 28. There is no factual assertion that could be "known to be false." Because of this, there can be no knowledge of falsity or reckless disregard for truth. Defendant expressed sincere opinions—precisely the speech the actual malice standard protects. Even if some portion could be construed as factual, Plaintiff must show Defendant knew it was false or seriously doubted its truth. There are no such allegations. At most, Plaintiff disagrees with Defendant's characterization, but disagreement is not actual malice.

## VI. PLAINTIFF'S CIVIL CONSPIRACY CLAIM FAILS AS A MATTER OF LAW.

Count IV alleges "Civil Conspiracy to Interfere with a Business Relationship With Peculiar Power of Persuasion." DE 33 at ¶¶ 64-68. This claim fails for multiple independent reasons, each of which is dispositive.

### A. Civil Conspiracy is a Derivative Tort That Requires an Underlying Actionable Wrong.

[18] As of the date of this filing, Plaintiff has 300,000 followers on her "thatlawyermomlife" Instagram account. *See* https://www.instagram.com/thatlawyermomlife/.

"[C]ivil conspiracy is not an independent cause of action, it depends upon the commission of an underlying tort."[19] The rationale for this rule is straightforward: conspiracy liability is premised on an agreement to commit a tort. If no underlying tort exists, there is nothing unlawful to which the Defendants could have agreed. Here, for all the reasons stated in Sections III and IV above, Plaintiff has failed to state actionable claims for tortious interference (Counts I and II) or defamation (Count III). Because these underlying torts fail as a matter of law, the derivative conspiracy claim necessarily fails as well.

**B. Plaintiff Fails to Plead the Essential Elements of Civil Conspiracy with the Required Specificity.**

To state a claim for civil conspiracy under Florida law, a plaintiff must allege: "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Raimi*, 702 So. 2d at 1284.

The first element—an agreement between the defendants—is key. Without an agreement, there is no conspiracy. And while the agreement need not be proven through direct evidence, the plaintiff must still plead sufficient factual allegations to support a plausible inference that an agreement existed. Plaintiff's Amended Complaint fails this standard. The entirety of Plaintiff's allegations regarding an agreement between Defendants appears in paragraph 26 of the Amended Complaint:

> Upon information and belief, Defendants Gadi and Beth Beer conspired to submit Plaintiff's Instagram post to the Jewhatedb Instagram page and had advance notice that Ms. Khorashi was going to be 'exposed' as an alleged antisemite and Jew hater on February 18, 2024. Their simultaneous appearances in the comments section of Jewhatedb immediately following the posting was for the sole and improper purpose of providing the critical missing information that

[19] *See Raimi v. Furlong*, 702 So. 2d 1273, 1285-6 (Fla. 4th DCA 1997).

> was required to launch the doxing attack: Plaintiff's real name and a link to her Firm profile at Chartwell Law.

DE 33 at ¶ 26. This is precisely the kind of "naked assertion devoid of further factual enhancement" that *Iqbal* held insufficient. 556 U.S. at 678. The Amended Complaint pleads no facts to support the conclusory allegation that Defendants "conspired." The sole factual allegation is that both Defendants posted comments "simultaneously" after the JewhateDB post appeared. As *Twombly* held, "parallel conduct does not suggest conspiracy" without additional allegations of actual agreement. 550 U.S. at 557. Two people commenting on the same Instagram post at the same time is consistent with independent action—particularly where the post was viral.[20]

***i. The "Peculiar Power of Persuasion" Theory is Legally Unsound and Inapplicable***

Plaintiff invokes a "peculiar power of persuasion" theory, DE 33 at ¶ 68, but this doctrine does not apply here. Plaintiff has not alleged facts sufficient to meet the doctrine's "rigorous requirement" of proof of a "peculiar power of coercion possessed by the conspirators by virtue of their combination, which an individual acting alone does not possess," nor that "the result of the defendants' concerted action [is] different from anything that could have been accomplished separately." *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1319 (S.D. Fla. 2014) (internal citations and quotations omitted). Most notably, Plaintiff has not alleged Defendants possess any

[20] To be clear: Defendants did not submit Plaintiff's post to JewhateDB and had no advance notice of the February 18 post. Plaintiff's allegation to the contrary is pleaded "upon information and belief," DE 33 at ¶ 26, but the Amended Complaint provides no factual support for this speculation. Plaintiff identifies no communications between Defendants and JewhateDB, no evidence of coordination, and no basis for inferring that Defendants orchestrated the post beyond the fact that they commented after it appeared. "Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the [plausibility] standard." *Magnum Constr. Mgmt., LLC v. WSP USA Sols., Inc.*, 522 F. Supp. 3d 1202, 1209–10 (S.D. Fla. 2021) (quotations and citations omitted). According to Plaintiff's own allegations, JewhateDB is a platform with 137,000 followers that solicits public submissions, *id.* at ¶¶ 24, 67—any of whom could have submitted Plaintiff's post. The fact that Defendants later commented on the post no more suggests they submitted it than it does for the dozens of other users who also commented.

"peculiar power." Plaintiff's theory is that Defendants "utilized the affiliated public self-service doxing platforms provided by Jewhatedb and Stopantisemitism." DE 33 at ¶ 67. But access to Instagram is not "peculiar power"—it is ubiquitous capability available to anyone with a smartphone. There is nothing "peculiar" about Defendants' ability to do what millions do daily.

## VII. CONCLUSION.

Plaintiff seeks to hold Defendants liable for exercising their First Amendment right to comment on matters of public concern by posting a hyperlink to publicly available information. Because Florida's Anti-SLAPP statute bars such claims and because Plaintiff has failed to state viable tort claims, the Amended Complaint should be dismissed with prejudice.

WHEREFORE, Defendants, Gadi Beer and Beth Gellman Beer, respectfully request that this Court enter an Order dismissing Plaintiff's complaint with prejudice, awarding Defendants their attorneys' fees and costs pursuant to Fla. Stat. § 768.295(4), and granting such further relief that the Court may deem just and proper.

Respectfully Submitted,

*/s/ Jaclyn S. Clark*

KENNETH G. TURKEL
Florida Bar No. 867233
Email: kturkel@tcb-law.com
TURKEL CUVA BARRIOS, P.A.
100 N. Tampa Street, Suite 1900
Tampa, FL 33602
Phone: (813) 834-9191
Fax: (813) 443-2193

JACLYN S. CLARK
Florida Bar No. 117652
Email: Jaclyn@thelawfareproject.org
THE LAWFARE PROJECT
633 THIRD AVENUE, 21st Floor

New York, NY 10017
Phone: (212) 339-6995

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 9, 2026 the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification to all counsel of record.

/s/ *Jaclyn S. Clark*
Counsel