**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No. 25-cv-23202-JB**

ZOHRA KHORASHI,

     Plaintiff,

v.

GADI BEER AND BETH GELLMAN BEER,

     Defendants.

_____/

**DEFENDANTS' MOTION TO DISMISS**
**CORRECTED FIRST AMENDED COMPLAINT**

Defendants, Gadi Beer and Beth Gellman Beer ("Defendants"), by and through their undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6) and Fla. Stat. § 768.295, respectfully move for an Order dismissing Plaintiff's Corrected First Amended Complaint ("CFAC") [DE 60] for failure to state a cause of action and violating Florida's Anti-SLAPP statute, and in support thereof state as follows:

1

## INTRODUCTION

This case seeks to impose tort liability on private citizens for constitutionally protected speech on a matter of profound public concern.  It raises a fundamental question: whether Florida law permits a licensed attorney to silence critics after voluntarily participating in heated public debate. Here, Plaintiff posted more than 50 times about the Israeli-Palestinian conflict between January and February 2024 alone. DE 60 at ¶ 27. She now seeks to hold Defendants liable for posting a hyperlink to publicly available information. Both the First Amendment and Florida's Anti-SLAPP statute, Fla. Stat. § 768.295, bar such claims.

Plaintiff is a licensed attorney who maintains a public Instagram account called "thatlawyermomlife" where she discloses her real name, identifies herself as a lawyer, and uses the same profile picture that appeared on her Chartwell Law attorney profile. *Id.* at ¶ 15. She admits posting "on her Instagram page about the Gaza conflict and her opposition to what she described as a genocide against the Palestinian people" on a more-than-daily basis. *Id.* at ¶¶ 16-17, 27. She also acknowledges that "her outspoken support of the Palestinian cause could be misconstrued by some people as antisemitism." *Id.* at ¶ 18.

Plaintiff's former employer, Chartwell Law, began monitoring her social media activity in late 2023 after receiving complaints that her posts could be perceived as antisemitic. *Id.* at ¶ 22. On January 11, 2024, Chartwell's leadership met with Plaintiff, advised her that individuals had expressed concerns that her content "could be perceived as antisemitic," and counseled her to be more "mindful" and "positive" in posts moving forward. *Id.* at ¶¶ 22-23.[1] Plaintiff continued

---

[1] On October 7, 2023, Hamas conducted attacks in Israel that resulted in approximately 1,200 deaths and the abduction of more than 200 people, including children. This was the deadliest single day for Jewish people since the Holocaust. Following these events, documented incidents of antisemitism increased significantly across the country. *See U.S. Antisemitic Incidents Up About 400% Since Israel-Hamas War Began, Report Says*, Reuters (Oct. 25, 2023), https://www.reuters.com/world/us/us-antisemitic-incidents-up-about-400-since-israel-hamas-war-began-report-says-2023-10-25/. This context is relevant to understanding the public debate in

posting about the conflict incessantly—more than 50 additional times between January 19 and February 29, 2024. *Id.* at ¶ 27.

On February 18, 2024, Defendants posted comments on an Instagram thread about Plaintiff, including a hyperlink to her attorney profile on Chartwell's public website—information also available through the Florida Bar's public database. *Id.* at ¶¶ 35-36. Eleven days passed. On February 28, 2024, a different organization posted about Plaintiff on a different platform. *Id.* at ¶ 41. Chartwell terminated Plaintiff the next day, February 29, 2024, citing "the doxing incident on February 28" as causing "widespread criticism and hostility towards Chartwell Law." *Id.* at ¶ 48. The CFAC does not allege Defendants were involved with or aware of the February 28 post.

Plaintiff seeks to hold Defendants liable for her termination based on their February 18 comments, asserting tortious interference, defamation by implication, and civil conspiracy claims. These claims are barred for multiple independent reasons.

First, Florida's Anti-SLAPP statute prohibits lawsuits "without merit and primarily because such person . . . has exercised the constitutional right of free speech in connection with a public issue." Fla. Stat. § 768.295(3). All four counts are "primarily" based on Defendants' comments about Plaintiff's public statements on the Israeli-Palestinian conflict and antisemitism—core matters of public concern. The claims are also "without merit" for the reasons detailed below. The statute requires dismissal with prejudice and mandatory attorney's fees. Fla. Stat. § 768.295(4).

Second, the First Amendment independently bars claims seeking to punish publication of truthful, publicly available information. Defendants posted a hyperlink to information Chartwell and Plaintiff made publicly available. No legitimate state interest supports expanding tort liability to punish such speech or chill public discourse about antisemitism.

---

which Defendants' speech occurred and the concerns that motivated their comments about perceived antisemitism in social media discourse regarding the conflict.

Third, the claims fail on the merits. Plaintiff's own allegations establish that Chartwell made an independent business decision based on its months-long investigation, its January 2024 warnings, Plaintiff's 50+ subsequent posts, and the impact of the viral February 28 post—not Defendants' February 18 comments. *Id.* at ¶¶ 22-27, 41-49. This negates causation for all four counts.

This Court previously dismissed Plaintiff's original Complaint, identifying causation deficiencies and the failure to address how posting truthful public information could be actionable. The CFAC does not cure these deficiencies. Its allegations detail Chartwell's independent evaluation process and expressly identify the February 28 incident—not Defendants' February 18 comments—as the proximate cause of termination. *Id.* at ¶ 48-49. Because this lawsuit seeks to punish constitutionally protected speech, violates Florida's Anti-SLAPP statute, and fails to state viable claims, the CFAC should be dismissed with prejudice. Defendants also respectfully request mandatory attorney's fees and costs under Fla. Stat. § 768.295(4).

## MEMORANDUM OF LAW

### I.   LEGAL STANDARD

To survive dismissal under Rule 12(b)(6), a complaint must plead sufficient factual allegations to state a plausible claim. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Allegations pleaded "upon information and belief" that lack factual support also fail to satisfy this standard. *Magnum Constr. Mgmt., LLC v. WSP USA Sols., Inc.*, 522 F. Supp. 3d 1202, 1209-10 (S.D. Fla. 2021).   Where allegations show relief is barred, dismissal is proper. *Jones v. Bock*, 548 U.S. 199, 215 (2007).

Florida's Anti-SLAPP statute provides that "[a] person … in this state may not file or cause to be filed … any lawsuit … against another person [] without merit and primarily because such person [] has exercised the constitutional right of free speech in connection with a public issue." Fla. Stat. § 768.295(3). A person sued in violation of the statute "has a right to an expeditious resolution of" the claims, allowing them to "move the court for an order dismissing the action." Fla. Stat. § 768.295(4). The prevailing party on a motion brought under this statute is entitled to a mandatory award of "reasonable attorney fees and costs incurred in connection with a claim that an action was filed in violation of this section." *Id.* The term "free speech in connection with public issues" is defined as "any written or oral statement that is protected under applicable law and is made … in connection with a … radio broadcast, … news report, or other similar work." *Id.* at § 768.295(2)(a). To qualify as a SLAPP, a case must satisfy two conditions. First, the court must determine whether the claims at issue are "primarily" based on protected speech. *Vericker v. Powell,* 406 So. 3d 939, 945 (Fla. 2025); § 768.295(1), Fla. Stat. Second, the court must determine whether the claims asserted by the plaintiff are "without merit." *Id.* The Florida Supreme Court has clarified that this statute provides substantive immunity from suit, protecting defendants from the burden of litigation itself. *Id.* at 946.

## II.   FLORIDA'S ANTI-SLAPP STATUTE BARS PLAINTIFF'S CLAIMS.

Florida's Anti-SLAPP statute exists to protect citizens from meritless lawsuits designed to punish the exercise of free speech rights. To qualify for dismissal under the statute, a defendant must show two things: (1) the claims are "primarily" based on protected speech, and (2) the claims are "without merit." *Vericker*, 406 So. 3d at 945; § 768.295(3), Fla. Stat. Both elements are satisfied here.

### A. Defendants' Statements Were Made in Connection with a News Report or Similar Work.

The statute defines "free speech in connection with public issues" to include "any written or oral statement that is protected under applicable law and is made… *in or in connection* with a play, movie, television program, radio broadcast, audiovisual work, book, magazine article, musical work, *news report, or other similar work*." Fla. Stat. § 768.295(2)(a) (emphasis added). Defendants' comments on Instagram fall squarely within this definition.[2]

The CFAC itself establishes that JewhateDB functions as a digital watchdog reporting service. Plaintiff describes it as a public incident-reporting platform with 137,000 followers dedicated to "exposing the faces of Jew hatred." DE 60 at ¶ 32. The platform maintains a gallery of reported incidents under an "Exposed" section, solicits submissions via a public link, claims to have "all the receipts," and issues "Updates" on reported cases. *Id.* This is newsgathering and news-reporting. The statute requires only that speech be made "in connection with" a "news report, or other similar work"—not that the speaker control the platform or produce original reporting. Defendants commented on a JewhateDB post reporting an incident of alleged antisemitism. That speech was made "in connection with" JewhateDB's watchdog reporting function.

### B. Defendants' Statements Related to a Matter of Public Concern.

Defendants' speech concerned matters of public importance: allegations of antisemitism, the Israeli-Palestinian conflict, and the conduct of licensed professionals. As the Supreme Court explained:

> Speech deals with matters of public concern when it can be fairly
> considered as relating to any matter of political, social, or other
> concern to the community, or when it is a subject of legitimate news

---

[2] *See, e.g., Gundel v. AV Homes, Inc.*, 264 So. 3d 304, 307 (Fla. 2d DCA 2019), *disapproved of on other grounds by Vericker v. Powell*, 406 So. 3d 939 (Fla. 2025) (involving posts on "Internet blogs"); *Rosenthal v. Council on American-Islamic Relations, Florida, Inc.*, 2017 WL 6390102 (Fla. 17th Jud. Cir. Ct. Nov. 8, 2017) (involving Facebook posts); s*ee also Wong v. Jing*, 189 Cal.App.4th 1354, 1366 (2010) (finding that "Web sites accessible to the public. . . are public forums for purposes of the anti-SLAPP statute") (citations omitted).

> interest; that is, a subject of general interest and of value and concern
> to the public. The arguably inappropriate or controversial character
> of a statement is irrelevant to the question whether it deals with a
> matter of public concern.

*Snyder v. Phelps,* 562 U.S. 443, 453 (2011). Debate over whether professionals should face employment consequences for controversial speech constitutes speech on matters of public concern.[3] Defendants' comments responded to a public post criticizing Plaintiff's Instagram content regarding the Israeli-Palestinian conflict, expressing opinions about professional accountability for attorneys who make statements that could be perceived as antisemitic. This is core protected speech on matters of undeniable public concern.

### C.  Plaintiff's Claims are Primarily Based on Protected Speech.

Plaintiff asserts two counts of Tortious Interference (Counts I and II), one count of Defamation by Implication (Count III), and one count of Civil Conspiracy (Count IV). All four counts are based solely on Defendants' February 18, 2024 comments on the JewhateDB Instagram post concerning Plaintiff. There is no non-speech conduct that could support these claims. Each count identifies Defendants' Instagram comments as the actionable conduct. *See* DE 60 at ¶¶ 54, 60, 65, 75. The "primarily based on" element is therefore satisfied.

### D.  Plaintiff's Claims are Without Merit.

For the reasons set forth in detail in Sections III-VI Below, all four counts of Plaintiff's CFAC fail to state viable claims as a matter of law. The Court should dismiss the CFAC with prejudice and grant Defendants their reasonable attorneys' fees and costs incurred responding to this lawsuit.

### III.    THE FIRST AMENDMENT BARS PLAINTIFF'S CLAIMS.

---

[3] *See DeHart v. Tofte,* 326 Or. App. 720, 533 P.3d 829 (2023) (publication of public figure's employer information in context of public controversy was protected speech).

Independent of the Anti-SLAPP statute, the First Amendment bars Plaintiff's claims because they seek to punish Defendants for publishing truthful, publicly available information and expressing opinions about matters of public concern.

### A. The First Amendment Protects Publication of Truthful, Publicly Available Information.

As the Supreme Court held: "state action to punish the publication of truthful information seldom can satisfy constitutional standards." *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 102 (1979). In *Florida Star v. B.J.F.*, the Court held that imposing liability for publishing truthful, lawfully obtained information violates the First Amendment absent a state interest of the "highest order." 491 U.S. 524, 533 (1989). Defendants' speech linked to information Chartwell published on its website and that was publicly available on the Florida Bar database. As this Court noted:

> If you're a lawyer, it is pretty easy. You go to the Florida Bar Website, and you know exactly where she works. Forget about Googling.

*See* Tr. At 12:5-7.[4] This public data, chosen for disclosure by Plaintiff and her employer, cannot support her claims without chilling public discourse. No state interest of the "highest order" exists here. Plaintiff asks this Court to expand tort law to punish core protected speech—truthful speech from public sources in an ongoing public debate about antisemitism. This is precisely what the First Amendment forbids.

### B. The First Amendment Protects Expressions of Opinion.

The First Amendment also protects statements of opinion on matters of public concern. "Under the First Amendment there is no such thing as a false idea. However pernicious an opinion

---

[4] *See* the November 19, 2025 hearing transcript ("Tr.") on Defendant's Motion to Dismiss Plaintiff's Original Complaint, a copy of which was filed as an exhibit to Defendants' Response to Plaintiff's Motion for Sanctions, DE 37 at 15-35.

may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-40 (1974). A statement cannot give rise to actionable defamation unless it contains an assertion of fact that is provably false. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19-20 (1990).

Beth Beer's statement—"I wonder how her Jewish clients would feel about her public posts. This one is innocuous compared to her regular posts. It's disgraceful"—consists entirely of rhetorical questions and subjective evaluations. No portion of this statement asserts a provable fact. To the extent Plaintiff contends that opinions expressed on social media platforms can nonetheless form the basis of tort liability, that contention is foreclosed by controlling First Amendment precedent.

## IV.   ALL CLAIMS FAIL FOR LACK OF CAUSATION.

The causation deficiencies identified by this Court in dismissing Plaintiff's original Complaint remain uncured. Plaintiff's own allegations demonstrate that Chartwell made an independent business decision based on its assessment of Plaintiff's conduct and business impact—not because of Defendants' comments. This is fatal to all four counts.

### C. Plaintiff's Own Allegations Establish Chartwell's Independent Decision-Making.

Plainitff's allegations reveal that Chartwell's senior leadership was independently evaluating Plaintiff's social media activity and its potential business impact long before Defendants commented. This independent investigation began in late 2023 and continued through her February 29, 2024 termination.

#### i.   *Chartwell Was Already Monitoring Plaintiff and Had Received Complaints Before Defendants' Comments.*

On January 11, 2024—more than a month before Defendants' comments—Plaintiff met with Chartwell's leadership. According to Plaintiff's own allegations, "Mr. Barreras stated the

Firm had been monitoring her social media content since the outbreak of the Gaza conflict and had reviewed all her posts and comments after certain unidentified individuals had allegedly expressed 'concerns' that some of her statements could be perceived as antisemitic." DE 60 at ¶ 22. These allegations establish that Chartwell was already independently monitoring Plaintiff's social media, had received complaints that her posts could be perceived as antisemitic, and was assessing business risks—all before Defendants commented. This independent process negates any causal connection to Defendants' comments.

### ii. *Chartwell Advised Plaintiff to Be More Mindful and Continued Monitoring Her Activity.*

After the January 11 meeting, Chartwell advised Plaintiff to be more "mindful" and "positive" in her social media posts going forward, so as to ensure they "aligned with the Firm's values." DE 60 at ¶ 23. Chartwell met with Plaintiff again on January 19 after another concerning post. *Id.* at ¶ 24. Plainitff acknowledges that "Chartwell did not find issues with her content during that time frame" (¶ 27), but this only underscores that Chartwell was conducting its own ongoing independent evaluation. Chartwell continued monitoring Plaintiff's activity through her termination, demonstrating the Firm's independent decision-making process.

### iii. *The February 28 Incident—Not Defendants' February 18 Comments— Triggered Termination.*

The CFAC expressly identifies a different event as the cause of Plaintiff's termination. Plaintiff alleges that Chartwell terminated her because the "doxing incident on February 28" "resulted in widespread criticism and hostility towards Chartwell Law." DE 60 at ¶ 48. This February 28 incident involved a post by stopantisemitism.org on X—a different organization and platform than the February 18 JewhateDB post. *Id.* at ¶ 41. Critically, Plaintiff does not allege Defendants had any involvement with the February 28 post. There is no allegation that Defendants caused, contributed to, or even knew about it. The temporal gap alone is fatal to causation:

Defendants commented on February 18; for eleven days, Chartwell took no action; on February 28, a different organization posted on a different platform; Chartwell terminated Plaintiff the next day, citing the February 28 incident.[5]

### D. Plaintiff's Causation Theory Fails Even Under a "Contributing Cause" Standard.

To the extent Plaintiff may contend that Defendants' conduct need not be the exclusive or primary cause of her termination but need only "contribute substantially" to it, that theory fails on these allegations. Even under a contributing-cause standard, a defendant's conduct must "directly and in natural and continuous sequence produce[], or contribute[] substantially to producing, the loss, such that it is reasonable to conclude that, but for the conduct, the loss would not have occurred." *Emergency Recovery Inc. v. GEICO*, No. 8:23-CV-957-KKM-AEP, 2025 WL 3750697, at *6 (M.D. Fla. Dec. 29, 2025). Here, the Corrected Amended Complaint establishes a broken chain: Defendants commented on February 18; Chartwell took no action for eleven days; a different organization posted on a different platform on February 28; and Chartwell terminated Plaintiff the next day, specifically citing the February 28 incident as the cause.

Plaintiff cannot bridge this gap by invoking "foreseeability." Foreseeability that someone else might eventually act is not substantial contribution to that action. The Corrected Amended Complaint itself identifies the February 28 stopantisemitism.org post—not Defendants' February 18 comments—as the "triggering event" that resulted in Plaintiff's termination. DE 60 at ¶ 49.

---

[5] To the extent Plaintiff may argue that her allegations of "collaboration" between JewhateDB and Stopantisemitism establish a connection between Defendants and the February 28 post, that allegation is insufficient. Plaintiff alleges only that "there are numerous examples of collaboration" between the platforms where individuals "first targeted for doxing on Jewhatedb" are "subsequently 'exposed' on stopantisemitism.org." DE 60 at ¶ 33. But this describes a pattern of organizational behavior—it says nothing about whether Defendants caused, contributed to, or even knew about the February 28 post. A general pattern cannot substitute for specific factual allegations connecting these Defendants to the specific incident that Chartwell identified as the cause of termination.

This express allegation defeats any claim that Defendants' comments substantially caused Plaintiff's termination.

### E.  Chartwell's Independent Business Decision Breaks the Causal Chain.

The timeline established by Plaintiff's own allegations is dispositive:

- **October 2023 – January 2024:** Chartwell monitors Plaintiff's social media and receives antisemitism complaints.
- **January 11, 2024:** Chartwell reviews Plaintiff's posts and warns her to be "mindful."
- **January 19, 2024:** Chartwell meets with Plaintiff again after another concerning post.
- **January 19 – February 29, 2024:** Plaintiff continues posting 50+ times; Chartwell continues monitoring.
- **February 18, 2024:** Defendants comment on JewhateDB post.
- **February 18-27, 2024:** Chartwell takes no action (11 days).
- **February 28, 2024:** Stopantisemitism.org posts about Plaintiff, triggering "widespread criticism."
- **February 29, 2024:** Chartwell terminates Plaintiff, citing the February 28 incident.

Chartwell's decision was based on: (1) months-long monitoring; (2) complaints received before Defendants commented; (3) assessment of antisemitism concerns; (4) business judgment about firm values; and (5) the February 28 incident's impact. Defendants caused none of these factors. As this Court recognized at the prior hearing, "at the end of the day, it is the firm that takes that position, that fires them for speech." Tr. at 18:1-14. Chartwell would have faced the same decision even if Defendants had never commented.[6]

### V.   PLAINTIFF'S TORTIOUS INTERFERENCE CLAIMS FAIL AS A MATTER OF LAW.

Under Florida law, the elements of tortious interference with a contract or business relationship are: "(1) the existence of a business relationship, not necessarily evidenced by an

---

[6] The Court recognized this at the prior hearing: "But the problem is that the activity or the action doesn't take place by that website; it takes place by the law firm. The law firm gets this information and could certainly have concluded that it's speech that is in line with their values or speech that they otherwise have no issue with." Tr. at 12:21-13:2. The CFAC does nothing to address this. Chartwell made its own independent assessment of Plaintiff's conduct and whether continued employment aligned with firm values. That judgment—not Defendants' comments—caused Plaintiff's termination.

enforceable contract, under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by defendant; and (4) damage to the plaintiff as a result of the interference." *Menudo Int'l, LLC v. In Miami Prod., LLC*, No. 17-21559-CIV, 2018 WL 1138300, at \*3 (S.D. Fla. Mar. 2, 2018). Plaintiff's tortious interference claims (Counts I and II) fail for multiple independent reasons.

### A. Florida Law Prohibits Tortious Interference Claims Based on Truthful Information.

Even if Plaintiff could plead causation—and she cannot—her interference claims fail because Florida law does not recognize interference claims based on providing truthful, publicly available information. A "plaintiff cannot succeed in a tortious interference case if the defendant merely gave a third-party truthful information." *Wesley Fin. Grp., LLC v. Westgate Resorts, Ltd.*, 746 F. Supp. 3d 1342, 1359 (M.D. Fla. 2024), *see also*, *Worldwide Primates, Inc. v. McGreal*, 26 F.3d 1089, 1092 (11th Cir. 1994).

Defendants' comments consisted of: (1) posting a hyperlink to Plaintiff's publicly available Chartwell profile, and (2) commenting "I wonder how her Jewish clients would feel about her public posts. This one is innocuous compared to her regular posts. It's disgraceful." Both components involve truthful, publicly available information:

- The hyperlink directed readers to information that Chartwell itself chose to publish on its website and that Plaintiff chose to include in the public Florida Bar database. This was truthful, publicly available information.
- Beth Beer's comment accurately stated that Plaintiff had Jewish clients—a fact Plaintiff admits. DE 60 at ¶ 36. Plaintiff does not allege this was false, only "confidential"[7] (which it was not, as Chartwell's leadership knew which clients she worked with, and the inference

---

[7] Plaintiff alleges Beth Beer's statement that Plaintiff "had Jewish clients" was "non-public and highly confidential information" known only to the Beers. DE 60 at ¶ 36. This fails. Plaintiff does not allege Beth Beer identified any specific client—only that Plaintiff had Jewish clients generally, an obvious inference for any Miami attorney. Moreover, the statement is admittedly true. *Id.* Truthful information cannot support defamation or tortious interference. *See Wesley Fin. Grp.*, 746 F. Supp. 3d at 1359. And the notion that Gadi Beer—who left Chartwell in early 2023, over a year before these events—possessed unique current knowledge of Plaintiff's client assignments is speculative.

that a Miami attorney would have Jewish clients is obvious given Miami's large Jewish community).

• The comment expressed the opinion that one of Plaintiff's posts was "innocuous compared to her regular posts" and that her posts were "disgraceful"—both non-actionable statements of opinion.

### B. Allegations of Malice or Improper Purpose Do Not Create an Exception to the Truthful Information Rule.

To the extent Plaintiff may contend that truthful information can nonetheless support tortious interference when disclosed with malice or improper purpose, that contention finds no support in Florida law. This Court identified this very issue when dismissing Plaintiff's original Complaint, observing that Plaintiff's argument that tortious interference can proceed if the truthful information was disclosed "with malice or [il]legitimate purpose" is not supported by the cases Plaintiff cited. Tr. at 17:21-18:4 ("And so one of the deficiencies that have to be addressed – and again, this is part of the argument that they raise – that the truthful information can't constitute tortious interference. You respond that it can if it's done with malice or a [sic] legitimate purpose. I just note for the record that the cases you cite don't hold that.").

The rule that truthful information cannot support tortious interference is categorical—it does not contain an exception for disclosures made with malice or improper motive. *See Wesley Fin.*, 746 F. Supp. 3d at 1359; *Worldwide Primates*, 26 F.3d at 1092. To the extent any such exception exists, Plaintiff has not identified it despite being expressly directed by this Court to address the issue. Plaintiff's allegations of "malice" and "improper purpose" do not alter the analysis: where the information disclosed is truthful and publicly available, no tortious interference claim lies regardless of the defendant's subjective intent. Plaintiff's interference claims fail for this reason as well.

### C. The "Upon Information and Belief" Allegations Are Insufficient.

Plaintiff alleges "upon information and belief" that Defendants "conspired to submit Plaintiff's Instagram post to the Jewhatedb Instagram page and had advance notice" of the February 18 post. DE 60 at ¶ 34. This is precisely the kind of "naked assertion devoid of further factual enhancement" that *Iqbal* held insufficient. 556 U.S. at 678.

Plaintiff pleads no facts to support this conclusory allegation. The sole factual allegation is that both Defendants posted comments after the JewhateDB post appeared. As *Twombly* held, "parallel conduct does not suggest conspiracy" without additional allegations of actual agreement. 550 U.S. at 557. Two people commenting on the same viral Instagram post is consistent with independent action—particularly where the post had 137,000 potential viewers. The CFAC identifies no communications between Defendants and JewhateDB, no evidence of coordination, and no basis for inferring that Defendants orchestrated the post beyond the fact that they commented after it appeared. Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the plausibility standard. *Magnum Constr.*, 522 F. Supp. 3d at 1209-10.

## VI.   PLAINTIFF'S DEFAMATION BY IMPLICATION CLAIM FAILS AS A MATTER OF LAW.

Count III alleges "Defamation by Implication" based solely on Beth Beer's single Instagram comment: "I wonder how her Jewish clients would feel about her public posts. This one is innocuous compared to her regular posts. It's disgraceful." DE 60 at ¶ 65. This claim fails for multiple independent reasons.

### A.  Plaintiff Failed to Plead Special Damages.

Under Florida law, a claim for defamation may be categorized as either: "(1) defamation per quod, which requires an additional explanation of, or an interpretation of innuendo suggested

by the words used to demonstrate the defamatory meaning . . . or (2) defamation per se, which does not require any additional explanation." *Mac Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251, 1259-60 (S.D. Fla. 2021).

Here, the statement at issue is not defamatory on its face, nor does Plaintiff allege as much. Instead, the alleged defamatory nature of the statement requires one to consider context, extrinsic facts, and innuendo. *See* DE 60 at ¶¶ 66-67. As a result, Plaintiff's claim is one for defamation per quod.[8] To state a claim for defamation per quod, Plaintiff must plead special damages. *Moon & Star Logistics, LLC v. Direct Traffic Sols., Inc.*, 2023 WL 9283969, at *3 (S.D. Fla. Dec. 20, 2023).* "Special damages are actual, out of pocket losses which must be proven by specific evidence as to the time, cause and amount." *Id*. Here, Plaintiff does not allege any "realized or liquidated loss" that could constitute special damages. Rather, Plaintiff alleges only "severe mental anguish and emotional distress, including, but not limited to, depression, stress, anxiety and other emotional pain and suffering." DE 60 at ¶ 71. Because Plaintiff has failed to plead special damages, her claim for defamation by implication should be dismissed.

To the extent Plaintiff may contend that special damages are not required for defamation by implication, that contention is foreclosed by the distinction between per se and per quod claims. Where, as here, the allegedly defamatory meaning arises only through implication, innuendo, and extrinsic context, the claim sounds in defamation per quod and requires special damages. *Paulson*, 2017 WL 2484197, at *4.

**B. The Statement is Non-Actionable Opinion.**

---

[8] *Paulson v. Cosmetic Dermatology, Inc.*, 2017 WL 2484197, at *4 (S.D. Fla. June 8, 2017) ("When context is considered and extrinsic facts and innuendo are needed to prove the defamatory nature of the words, the statements are not defamatory per se"); *Doscher v. Holding,* 2020 WL 10318564, at 3 (M.D. Fla. Feb. 3, 2020) (dismissing claim for libel per se by implication because "if extrinsic facts or other information are necessary to understand the libelous nature of a statement, then the statement would be libelous per quod, not libelous per se").

16

Consistent with the First Amendment, a statement cannot give rise to actionable defamation unless it contains an assertion of fact that is provably false. *Milkovich*, 497 U.S. at 19-20; *Gertz*, 418 U.S. at 339-40. "In determining whether an alleged libelous statement is pure opinion, the court must construe the statement in its totality, examining not merely a particular phrase or sentence, but all of the words used in the publication." *Hay v. Indep. Newspapers, Inc.*, 450 So. 2d 293, 295 (Fla. 2d DCA 1984). Beth Beer's comment consists of three components, each of which constitutes protected opinion:

*"I Wonder How Her Jewish Clients Would Feel About Her Public Posts":* This is a quintessential rhetorical question. The phrase "I wonder how her Jewish clients would feel" does not assert any provable fact. It poses a hypothetical question about how unidentified individuals might react to Plaintiff's posts. Different clients could react differently—some might be troubled, some indifferent, some might agree. The statement invites speculation about possible reactions; it asserts no verifiable fact about how clients actually reacted. *See Akai Custom Guns, LLC v. KKM Precision, Inc.*, 707 F. Supp. 3d 1273, 1295 (S.D. Fla. 2023) (statement not actionable where phrased speculatively rather than "authoritative or fact-based").

*"This One Is Innocuous Compared to Her Regular Posts":* The term "innocuous" is inherently subjective—what one considers "not harmful or offensive" depends on the reader's perspective, values, and sensibilities. This is opinion, not a statement capable of being proven false.

*"It's Disgraceful":* "Disgraceful" expresses disapproval and moral judgment but asserts no provable fact. It is subjective evaluation depending on the speaker's values. In the context of the Israeli-Palestinian conflict—one of the most controversial debates of our time—calling posts "disgraceful" is precisely the type of expression the First Amendment protects.

17

**C.      No Reasonable Reader Would Draw the Alleged Defamatory Implication.**

Defamation by implication claims are viable only where a defendant "(1) juxtaposes a series of facts so as to imply a defamatory connection between them, or (2) creates a defamatory implication by omitting facts." *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). Even accepting this framework, Plaintiff's interpretation of Beth Beer's statement is unreasonable.

Plaintiff claims the statement falsely implied she was a "virulent and irredeemable antisemite whose visceral hatred of Jews and support of terrorism against Israel made her unfit as an attorney to represent any Jewish clients." DE 60 at ¶ 66. No reasonable reader would draw this implication from the actual statement: "I wonder how her Jewish clients would feel about her public posts." The statement does not say Plaintiff has "visceral hatred" or is "unfit to practice law." It poses a rhetorical question about client reactions. The gulf between the statement and Plaintiff's interpretation is vast.

Plaintiff's attempt to manufacture a defamation claim by arguing Beth Beer referenced certain posts while "omitting" Plaintiff's disclaimers of antisemitic intent fails as a matter of law. Beth Beer had no duty to present a comprehensive account of Plaintiff's social media history or mention disclaimers. The First Amendment protects selective emphasis when commenting on public figures. Beth Beer directed readers to examine Plaintiff's "regular posts," providing context. That Beer focused on post content rather than claimed intent is a permissible editorial choice, not defamation.

**D.      Plaintiff Cannot Establish Actual Malice.**

Because Plaintiff is a limited-purpose public figure with respect to the Israeli-Palestinian conflict, she must prove "actual malice" to prevail on her defamation claim. *New York Times Co. v.*

*Sullivan*, 376 U.S. 254, 279-80 (1964). A person becomes a limited-purpose public figure by "voluntarily inject[ing] himself or [herself] . . . into a particular public controversy" thereby "invit[ing] attention and comment." *Gertz*, 418 U.S. at 345-51.

Plaintiff's own allegations establish she is a limited-purpose public figure regarding the Israeli-Palestinian conflict and antisemitism allegations. She posted more than 50 times in less than two months about Gaza to influence public opinion, generating controversy that triggered meetings with Chartwell's leadership. DE 60 at ¶¶ 16-17, 22, 24, 27. She acknowledged her posts "could be misconstrued by some people as antisemitic." *Id.* at ¶ 18. She maintains a public Instagram account with 300,000 followers. By posting dozens of times to her hundreds of thousands of followers about a controversial issue, with the goal of influencing opinion, Plaintiff voluntarily entered public controversy. She cannot now claim private-figure status.

Actual malice requires proof the defendant made the statement "with knowledge that it was false or with reckless disregard of whether it was false or not." *Sullivan*, 376 U.S. at 280. Plaintiff cannot establish actual malice because Beth Beer's statement contains no factual assertions that could be "known to be false." The statement consists of rhetorical questions, subjective opinions, and a true fact (that Plaintiff had Jewish clients). There is no factual assertion that could be "known to be false," and therefore there can be no knowledge of falsity or reckless disregard for truth.

## VII.   PLAINTIFF'S CIVIL CONSPIRACY CLAIM FAILS AS A MATTER OF LAW.

Count IV alleges "Civil Conspiracy to Interfere with a Business Relationship With Peculiar Power of Persuasion." DE 60 at ¶¶ 73-77. This claim fails for multiple independent reasons.

### A.   Civil Conspiracy Requires an Underlying Actionable Wrong.

"[C]ivil conspiracy is not an independent cause of action, it depends upon the commission of an underlying tort." *Raimi v. Furlong*, 702 So. 2d 1273, 1285-86 (Fla. 4th DCA 1997). Because

Plaintiff has failed to state actionable claims for tortious interference (Counts I and II) or defamation (Count III) for the reasons stated above, the derivative conspiracy claim necessarily fails as well.

### B.   Plaintiff Fails to Plead Sufficient Facts Supporting an Agreement.

To state a claim for civil conspiracy under Florida law, a plaintiff must allege: "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Raimi*, 702 So. 2d at 1284. The first element— an agreement—is essential. The entirety of Plaintiff's allegations regarding an agreement between Defendants appears at paragraph 34 of the Corrected Amended Complaint:

> Upon information and belief, Defendants Gadi and Beth Beer conspired to submit Plaintiff's Instagram post to the Jewhatedb Instagram page and had advance notice that Ms. Khorashi was going to be 'exposed' as an alleged antisemite and Jew hater on February 18, 2024. Their simultaneous appearances in the comments section of Jewhatedb immediately following the posting was for the sole and improper purpose of providing the critical missing information that was required to launch the doxing attack: Plaintiff's real name and a link to her Firm profile at Chartwell Law.

This is precisely the kind of "naked assertion devoid of further factual enhancement" that *Iqbal* held insufficient. 556 U.S. at 678. The sole factual allegation is that both Defendants posted comments after the JewhateDB post appeared. As *Twombly* held, "parallel conduct does not suggest conspiracy" without additional allegations of actual agreement. 550 U.S. at 557. Two married people commenting on the same Instagram post at the same time is consistent with independent action—or simply being in the same room looking at the same content—particularly where the post was viewed by 137,000 followers.[9] Moreover, even if an agreement could be

---

[9]To be clear: Defendants did not submit Plaintiff's post to JewhateDB and had no advance notice of the February 18 post. Plaintiff's allegation to the contrary is pleaded "upon information and belief," but the CFAC provides no factual basis for this critical assertion. Plaintiff does not allege that Defendants had any prior contact with JewhateDB or its

inferred, civil liability may not be imposed for "the practice of persons sharing common views banding together to achieve a common end." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 909–15 (1982).

### C. The "Peculiar Power of Persuasion" Theory Is Inapplicable.

Plaintiff invokes a "peculiar power of persuasion" theory, DE 60 at ¶ 77, but this narrow exception does not apply here. Plaintiff has not alleged facts sufficient to meet the doctrine's "rigorous requirement" of proof of a "peculiar power of coercion possessed by the conspirators by virtue of their combination, which an individual acting alone does not possess," nor that "the result of the defendants' concerted action [is] different from anything that could have been accomplished separately." *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1319 (S.D. Fla. 2014) (internal citations and quotations omitted). Most notably, Plaintiff has not alleged Defendants possess any "peculiar power." Plaintiff's theory is that Defendants "utilized the affiliated public self-service doxing platforms provided by Jewhatedb and Stopantisemitism." DE 60 at ¶ 76. But access to Instagram is not "peculiar power"—it is ubiquitous capability available to anyone with a smartphone. There is nothing "peculiar" about Defendants' ability to do what millions do daily.

### VIII.    CONCLUSION.

WHEREFORE, Defendants, Gadi Beer and Beth Gellman Beer, respectfully request that this Court enter an Order dismissing Plaintiff's Corrected First Amended Complaint [DE 60] with prejudice, awarding Defendants their attorneys' fees and costs pursuant to Fla. Stat. § 768.295(4), and granting such further relief that the Court may deem just and proper.

---

administrators. She does not allege that Defendants communicated with "stellaingerescobedo" or StopAntisemitism.org before February 18. She does not identify any statement, document, or circumstance suggesting Defendants knew the post would appear before it was published. The sole factual allegation is that both Defendants commented on the post *after* it appeared—conduct equally consistent with two individuals independently discovering a public Instagram post about someone they knew. Plaintiff asks the Court to infer a conspiracy from the mere fact that a married couple appeared in the same comment thread—a conclusion that requires speculation, not reasonable inference.

Respectfully Submitted,

/s/ Jaclyn S. Clark

KENNETH G. TURKEL
Florida Bar No. 867233
Email: kturkel@tcb-law.com
TURKEL CUVA BARRIOS, P.A.
100 N. Tampa Street, Suite 1900
Tampa, FL 33602
Phone: (813) 834-9191
Fax:    (813) 443-2193

JACLYN S. CLARK
Florida Bar No. 117652
Email: Jaclyn@thelawfareproject.org
THE LAWFARE PROJECT
633 THIRD AVENUE, 21st Floor
New York, NY 10017
Phone: (212) 339-6995

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on January 30, 2026 the foregoing was electronically filed with the

Clerk of Court using the CM/ECF system, which will automatically send e-mail notification to

all counsel of record.

/s/ Jaclyn S. Clark_____
Counsel