UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(Miami Division)

Case No. 25-cv-23202-JB

ZOHRA KHORASHI,

    Plaintiff,

v.

GADI BEER AND BETH GELLMAN BEER,

    Defendants.

_____/

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

Defendants, Gadi Beer and Beth Gellman Beer ("Defendants"), by and through their undersigned counsel, reply as follows to Plaintiff's Response to Defendants' Motion to Dismiss Corrected First Amended Complaint [DE 65] (the "Response").

## INTRODUCTION

Plaintiff's Response spans nineteen pages and cites approximately forty cases. Not one supports her claims. Her opposition rests on three failures: (1) reliance on a pleading standard *Twombly* explicitly rejected nearly two decades ago; (2) systematic mischaracterization of authority — presenting dicta as holdings, summary-judgment rulings as pleading rules, and inapposite cases as controlling; and (3) persistent refusal to confront the dispositive causation deficiency this Court has already identified: Plaintiff's own allegations establish that Chartwell made an independent termination decision based on factors wholly unrelated to Defendants' February 18 comments.

After dismissing the Original Complaint, this Court expressly directed Plaintiff to address whether truthful information can constitute tortious interference. She still cannot identify a single case so holding. Nor can she cite authority for her remaining theories — that rhetorical questions and subjective opinions amount to defamatory assertions of fact, that a married couple commenting on the same Instagram post establishes a conspiracy, or that posting on a platform accessible to anyone with a smartphone constitutes "peculiar power of coercion." These are not oversights. They reflect the absence of any legal support for Plaintiff's theories.

## MEMORANDUM OF LAW

### I. PLAINTIFF RELIES ON AN ABROGATED PLEADING STANDARD.

Plaintiff opens her opposition by citing *Shands Teaching Hospital & Clinics, Inc. v. Beech Street Corp.* for the proposition that "dismissal is warranted only where it is clear that no relief could be granted under any set of facts consistent with the allegations." DE 65 at 2 (citing 208 F.3d 1308, 1310 (11th Cir. 2000)). That standard was decided seven years before *Twombly* explicitly retired it: "This 'no set of facts' language . . . is best forgotten as an incomplete, negative

gloss on an accepted pleading standard." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 563 (2007). Under *Twombly* and *Iqbal*, a complaint must cross "the line from conceivable to plausible." 556 U.S. at 570. The question is not whether *any* set of facts could support relief, but whether the *pleaded* facts plausibly do so. That Plaintiff leads with abrogated authority tells the Court everything it needs to know about the strength of her position.

## II. THE ANTI-SLAPP STATUTE AND FIRST AMENDMENT BAR PLAINTIFF'S CLAIMS.

Plaintiff's opposition does not meaningfully engage with Defendants' Anti-SLAPP analysis. She does not dispute that Defendants' comments were made "in connection with" a news report or similar work, nor that the Israeli-Palestinian conflict and antisemitism are matters of public concern. Instead, she recharacterizes Defendants' comments as "weaponization" and asserts the statute "was never intended" to reach this conduct. DE 65, p. 3. But legislative intent arguments cannot override statutory text, and the case law forecloses her position. In a recent decision, the Middle District of Florida expressly held that Florida's Anti-SLAPP statute "applies to statements made on social media," reasoning that such platforms qualify as media used "for widely disseminating protected First Amendment speech" and that an issue is "'public' if the speech exists in a medium accessible to the public." *Sterling v. De La Rosa*, 2025 U.S. Dist. LEXIS 255739, at *27–28 (M.D. Fla. Dec. 9, 2025). The court concluded that "Twitter certainly qualifies as a social medium accessible to the public, and the subject Tweets are therefore statements made 'in connection with a public issue.'" *Id.* at *28. Instagram — a public platform with 137,000 followers on the JewhateDB account alone — is no different.

Plaintiff's First Amendment arguments fare no better. She invokes *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490 (1949), and *Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942), for the proposition that the First Amendment does not protect speech used as an "instrument of

3

unlawful conduct." DE 65, p. 4. These citations border on frivolous. *Giboney* involved union picketing used to directly induce criminal conduct—price-fixing in violation of Missouri's antitrust statute. 336 U.S. at 498. *Chaplinsky* involved face-to-face fighting words directed at a city marshal likely to provoke an immediate violent reaction. 315 U.S. at 571–72. Neither case involved publication of truthful information, commentary on public issues, social media, or civil tort liability. Plaintiff asks this Court to import doctrines developed for criminal price-fixing and street-corner provocations into the context of online commentary about a public controversy. That is not what those cases stand for.[1]

Most telling is what Plaintiff does not address. She conspicuously ignores *Florida Star v. B.J.F.*, 491 U.S. 524, 533 (1989), which Defendants cited prominently in their opening brief. DE 63, p. 8. *Florida Star* holds that imposing liability for publishing truthful, lawfully obtained information violates the First Amendment absent a state interest of "the highest order." *Id.* Plaintiff does not argue any such interest exists here—because none does—and *Florida Star* directly forecloses claims seeking to punish someone for linking to a publicly available attorney profile in the course of public debate.

### III. ALL CLAIMS FAIL FOR LACK OF CAUSATION.

Plaintiff's causation arguments fail because her own allegations defeat them. She invokes *Emergency Recovery Inc. v. GEICO*, No. 8:23-CV-957-KKM-AEP, 2025 WL 3750697, at *6 (M.D. Fla. Dec. 29, 2025), for the proposition that Defendants' conduct need only "contribute substantially" to the harm. This does not help her. *Emergency Recovery* was decided at summary

---

[1] Plaintiff's citation to *Fox v. Hamptons at Metrowest Condominium Ass'n*, 223 So. 3d 453, 457 (Fla. 5th DCA 2017), fares no better. *Fox* involved a civil contempt proceeding against a private condominium association for violation of a settlement agreement. The quoted language about unprotected speech categories is pure dictum—it says nothing about whether private tort liability may be imposed for social media commentary on matters of public concern.

judgment, not on the pleadings. And the very standard Plaintiff quotes is fatal to her claim. The court held that conduct must "directly and in natural and continuous sequence produce[], or contribute[] substantially to producing, the loss, *such that it is reasonable to conclude that, but for the conduct, the loss would not have occurred*." *Id.* (emphasis added).

Apply that standard to Plaintiff's own allegations and her claim collapses. Chartwell was independently monitoring Plaintiff's social media beginning in late 2023—before Defendants ever commented. DE 60, ¶ 22. Chartwell warned Plaintiff on January 11, 2024. *Id.* ¶¶ 22–23. Plaintiff posted 50+ additional times while Chartwell continued watching. *Id.* ¶ 27. After Defendants' February 18 comments, Chartwell did nothing for eleven days. Then, on February 28, a *different* organization posted about Plaintiff on a *different* platform. Chartwell terminated Plaintiff the next day, expressly citing "the doxing incident on February 28" as having "resulted in widespread criticism and hostility towards Chartwell Law." *Id.* ¶ 48. Under the "but for" test Plaintiff herself invokes, the termination would have happened even if Defendants had never posted a word.

Plaintiff's reliance on *Marabella v. NCL (Bahamas), Ltd.*, 437 F. Supp. 3d 1221, 1229 (S.D. Fla. 2020), only deepens her problem. *Marabella* permits causation to be inferred at the pleading stage, but only where the alleged facts paint a sufficiently detailed picture of how the defendant's conduct led to the harm. *Id.* Here, Plaintiff has supplied that detail, but it implicates someone else entirely. Her own allegations trace a chain running through Chartwell's independent social media monitoring beginning in late 2023, its January 11 warning, Plaintiff's 50+ subsequent posts, an eleven-day gap of inaction following Defendants' February 18 comments, a February 28 post by a different organization on a different platform, and Chartwell's termination decision expressly citing that February 28 incident as the cause. DE 60, ¶¶ 22–27, 41–49. That sequence does not connect Defendants to Plaintiff's termination. It shows they had nothing to do with it.

5

*Bell v. Beyel Bros., Inc.*, No. 16-CV-14461, 2017 WL 1337267 (S.D. Fla. Apr. 7, 2017), is likewise distinguishable. There, the court assessed whether an admiralty contribution counterclaim adequately alleged that a boat owner's breaches of navigational duty caused a vessel to capsize and injure passengers—a straightforward maritime negligence causation question with no intervening actor and a direct physical nexus between the alleged breaches and the harm. Here, Defendants posted comments on a public platform; there is no allegation Chartwell even saw those comments; there is an eleven-day gap; and Plaintiff herself identifies an intervening independent cause. *See also Ethyl Corp. v. Balter*, 386 So. 2d 1220, 1223–24 (Fla. 3d DCA 1980) (reversing judgment on tortious interference claim where plaintiff showed "at most, that steps taken by [the defendant] very indirectly led to" the alleged harm, and holding "[t]here is no such thing as a cause of action for interference which is only negligently or consequentially effected").[2]

Plaintiff's "foreseeable escalation" theory amounts to the following proposition: it was foreseeable that someone else might eventually do something on a different platform that would cause Chartwell to act. That is not "substantial contribution"—it is speculation about hypothetical chain reactions. *See St. Johns River Water Mgmt. Dist. v. Fernberg Geological Servs., Inc.*, 784 So.2d 500, 505 (Fla. 5th DCA 2001) (holding that "suppositions" about what a third party would have done are insufficient to establish causation, and directing verdict where there was a "complete absence of competent substantial evidence").

---

[2] Causation also fails for an independent reason the Corrected First Amended Complaint ("CFAC") itself exposes: there is no allegation that Chartwell was ever aware of Defendants' February 18 comments. The CFAC identifies the February 28 Stopantisemitism.org post as the event that generated the "widespread criticism and hostility" that prompted Chartwell's termination decision. DE 60, ¶ 48. There is no allegation that Chartwell saw, was directed to, or acted upon the February 18 Jewhatedb post or Defendants' specific comments. A defendant cannot tortiously interfere with a business relationship through speech the decisionmaker never encountered. This gap is not a detail to be explored in discovery—it is a structural deficiency that Plaintiff's own complaint makes plain.

## IV. TRUTHFUL INFORMATION CANNOT SUPPORT TORTIOUS INTERFERENCE.

Plaintiff attempts to sidestep *Worldwide Primates, Inc. v. McGreal*, 26 F.3d 1089, 1092 (11th Cir. 1994), and *Wesley Financial Group, LLC v. Westgate Resorts, Ltd.*, 746 F. Supp. 3d 1342, 1359 (M.D. Fla. 2024), by labeling them "procedurally inapposite" because they were decided post-trial. DE 65, pp. 11–12. The argument is backwards. The Eleventh Circuit's holding that "a plaintiff *cannot succeed* in a tortious interference case if the defendant merely gave a third-party truthful information," *Wesley Financial Group*, 746 F. Supp. 3d at 1359 (citing *Worldwide Primates*, 26 F.3d at 1092), is a **substantive rule of law,** not a procedural artifact. "Cannot succeed" means at any stage—including the pleading stage. If truthful information cannot sustain a tortious interference verdict after full discovery and trial, it certainly cannot state a plausible claim in a complaint.

Plaintiff next argues that truthful information becomes actionable if disclosed with "malice or improper purpose," citing *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985), and *Salit v. Ruden*, 742 So. 2d 381, 386 (Fla. 4th DCA 1999). DE 65, pp. 11–12. Neither case says what Plaintiff needs it to say. *Tamiami* addressed whether *otherwise actionable conduct* becomes permissible if done with proper motive—not whether protected speech becomes tortious if done with bad intent. *Salit* involved interference through other improper means beyond truthful information. Neither creates a "malice exception" to the categorical rule of *Worldwide Primates*. This Court identified this exact deficiency when dismissing Plaintiff's original Complaint: "the cases you cite don't hold that." Tr. 17:21–18:4. Months later, Plaintiff still has not found a single case that does.

*Walters v. Blankenship*, 931 So. 2d 137, 140–41 (Fla. 5th DCA 2006), does not rescue Plaintiff's claim. The Fifth District reversed dismissal where the plaintiff adequately alleged both

causation and improper purpose through means **beyond truthful speech**. It did not hold that improper purpose alone saves a claim where the sole alleged means of interference is the publication of truthful, publicly available information. Here, Plaintiff lacks both adequate causation and actionable means.[3]

## V.    THE DEFAMATION BY IMPLICATION CLAIM FAILS AS A MATTER OF LAW.

Plaintiff accurately describes the *Block v. Matesic* framework, 789 F. Supp. 3d 1131, 1155–56 (S.D. Fla. 2025), but cannot satisfy it. Even under the *Jews for Jesus, Inc. v. Rapp* standard, 997 So. 2d 1098, 1108 (Fla. 2008), a defendant is liable for a defamatory implication "*unless it qualifies as an opinion*." *Id.* (emphasis added). Beth Beer's comment—"I wonder how her Jewish clients would feel about her public posts. This one is innocuous compared to her regular posts. It's disgraceful"—is opinion from start to finish. "I wonder how . . . would feel" is a rhetorical question. "Innocuous compared to her regular posts" is a subjective comparison. "Disgraceful" is a value judgment. Not one word of it implies a provably false assertion of fact.

Plaintiff contends the statement implied she was "a virulent and irredeemable antisemite whose visceral hatred of Jews . . . made her unfit as an attorney." DE 60, ¶ 66. No reasonable reader would extract that meaning from a rhetorical question about how clients might feel about public posts. The distance between the actual statement and Plaintiff's interpretation is vast—and

---

[3] Two additional points foreclose Plaintiff's malice argument as well. First, this Court's ruling at the prior hearing—that Plaintiff's cited cases do not support a malice exception to the truthful information rule, Tr. 17:21–18:4—directly addresses the same legal question now re-presented in this amended complaint. Plaintiff has provided no reason for the Court to revisit that determination, and she still has not produced a single Florida case holding what she claims. Second, Plaintiff's allegations of "malice" and "improper purpose" are legal conclusions, not factual allegations entitled to a presumption of truth under *Iqbal* and *Twombly*. Permitting any allegation of subjective bad motive to override the categorical rule of *Worldwide Primates* would gut the rule entirely—since any plaintiff can allege malice, the truthful information defense would be illusory. That is not what Florida law permits.

no amount of creative reading can close it. What's more, Plaintiff *herself* admits her posts "could be misconstrued by some people as antisemitism." DE 60, ¶ 18. Beth Beer's suggestion that Jewish clients might have concerns about those admittedly controversial posts is opinion vindicating a risk Plaintiff herself acknowledged. Plaintiff's reliance on out-of-circuit authority—*Taylor v. Carmouche*, 214 F.3d 788, 793 (7th Cir. 2000), and *Small v. Anchorage Homeowners Ass'n, LLC*, 2019 WL 1317636, at *11 (S.D. Ind. Mar. 21, 2019)—is unpersuasive. Both involved specific factual assertions about discriminatory conduct, not rhetorical questions about hypothetical client reactions to admittedly controversial social media posts.[4]

Finally, Plaintiff is a limited-purpose public figure who posted more than 50 times about Gaza to her 300,000 followers. DE 60, ¶¶ 18, 27. She must therefore establish actual malice—knowledge of falsity or reckless disregard for truth. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974). She cannot. Beth Beer's statement contains no factual assertion capable of being "known to be false." And when a plaintiff *admits* her speech "could be misconstrued" in exactly the way the defendant characterized it, actual malice is not merely unpled—it is unpleadable.

## VI. THE CIVIL CONSPIRACY CLAIM FAILS AS A MATTER OF LAW

### A. No Factual Basis for Agreement.

---

[4] Plaintiff's effort to anchor her defamation claim to the allegedly altered Jewhatedb post also fails as a matter of law. Defamation by implication requires that the *defendant*—not a third-party platform operator—create the false impression through strategic juxtaposition or omission of facts. *Jews for Jesus*, 997 So. 2d at 1108. The CFAC contains no allegation that Beth Beer knew the Jewhatedb post had been manipulated, no allegation that she had any role in altering it, and no allegation that she had a duty to investigate whether the underlying post had been modified before commenting on what was publicly visible. Her comment responded to the content of the post as it appeared on the platform. Whatever the platform operator may have done in framing or editing the post, that conduct cannot be attributed to a commenter who had no alleged part in creating or altering it. Extending defamation-by-implication liability to commenters for a platform's editorial choices would stretch the tort well beyond its recognized boundaries and far beyond what *Block v. Matesic* or *Jews for Jesus* contemplates.

Plaintiff's own authorities expose the fatal gap in her conspiracy claim. *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010), holds that "information and belief" pleading is permissible only where "the belief is based on factual information that makes the inference of culpability plausible," and critically, where the allegations are "supported by factual assertions." *Id.* at 121. *Arista* further distinguished permissible inferences from speculation: "where the complaint's factual allegations described only actions that were parallel, and were doctrinally consistent with lawful conduct, the conclusory allegation on information and belief that the observed conduct was the product of an unlawful agreement was insufficient to make the claim plausible." *Id.* That is precisely the situation here. Plaintiff alleges parallel conduct—two people commenting on the same viral Instagram post—that is entirely consistent with independent action. The CFAC identifies no communications between Defendants and JewhateDB, no evidence of prior coordination, no factual basis for inferring orchestration beyond the bare fact that a married couple appeared in the same comment thread on a post viewed by 137,000 followers. Under *Arista's* own standard, this is textbook insufficiency.[5]

**B. No Peculiar Power of Coercion.**

Plaintiff's extended quotation from *Snipes v. W. Flagler Kennel Club, Inc.*, 105 So. 2d 164, 166 (Fla. 1958), proves Defendants' point, not hers. *Snipes* requires "pressure . . . and results brought about different in kind from anything that could have been accomplished by separate individuals." *Id.* (emphasis added). A single person could have posted the same hyperlink, made

---

[5] Plaintiff cites *Interstate Circuit v. United States*, 306 U.S. 208, 221 (1939), for the proposition that conspiracy need not be pled with specificity. But *Interstate Circuit* involved extensive factual support: identical letters sent to all defendants, simultaneous responses, clear economic incentives for coordination, and uniform departure from prior independent behavior—facts making conspiracy so clearly indicated as to justify an inference that agreement existed. 306 U.S. at 222–23. Plaintiff provides nothing remotely comparable. Two spouses commenting on the same Instagram post does not come close.

the same comment, and linked to the same publicly available profile. There is nothing about two people doing what one could do that creates "peculiar power."

Plaintiff's citation to *Margolin v. Morton F. Plant Hospital Ass'n, Inc.*, 342 So. 2d 1090, 1092-93 (Fla. 2d DCA 1977), illustrates exactly why her claim fails. *Margolin* involved a group of anesthesiologists who were the only providers of anesthesia services at a hospital and conspired to collectively refuse those services to the plaintiff surgeon, effectively barring him from operating at the hospital where he practiced — a result no individual anesthesiologist could have produced alone. The "peculiar power" arose from their collective control over a necessary resource that no individual doctor could deny alone. Here, Defendants controlled nothing. Chartwell—and Chartwell alone—decided whether to continue employing Plaintiff. Any of JewhateDB's 137,000 followers could have posted the identical publicly available information. The contrast could not be starker.

Plaintiff likewise misapplies *Walters* to her conspiracy theory. In *Walters*, multiple condominium owners acted in concert to depress auction prices by simultaneously posting "for sale by owner" signs—conduct that was ineffective individually but coercive collectively because it suppressed competitive bidding. 931 So. 2d at 139–41. Posting on Instagram is not more powerful when done by two people than by one. Defendants had no special access to the platform, no unique credibility with Chartwell, no economic leverage, and no ability to produce results that any single follower could not have achieved independently.

## CONCLUSION

WHEREFORE, Defendants respectfully request that this Court enter an Order dismissing Plaintiff's Corrected First Amended Complaint [DE 60] with prejudice and awarding Defendants their reasonable attorneys' fees and costs under Fla. Stat. § 768.295(4).

11

Dated: February 20, 2026.

                Respectfully Submitted,

                */s/ Jaclyn S. Clark*

                KENNETH G. TURKEL
                Florida Bar No. 867233
                Email: kturkel@tcb-law.com
                DAVID A. HAYES
                Florida Bar No. 96657
                TURKEL • CUVA • BARRIOS • GUERRA
                100 N. Tampa Street, Suite 1900
                Tampa, FL 33602
                Phone: (813) 834-9191
                Fax:   (813) 443-2193

                JACLYN S. CLARK
                Florida Bar No. 117652
                Email: Jaclyn@thelawfareproject.org
                THE LAWFARE PROJECT
                633 THIRD AVENUE, 21st Floor
                New York, NY 10017
                Phone: (212) 339-6995

                *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2026, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification to all counsel of record.

                */s/ Jaclyn S. Clark*
                Counsel