**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-cv-23202-JB**

ZOHRA KHORASHI,

Plaintiff,

v.

GADI BEER and
BETH GELLMAN BEER,

Defendants.
_________________________________________/

**ORDER GRANTING MOTION TO DISMISS**
**CORRECTED FIRST AMENDED COMPLAINT**

**THIS CAUSE** comes before the Court on Defendants Gadi Beer and Beth Gellman Beer's Motion to Dismiss the Corrected First Amended Complaint. ECF Nos. [60] (the "Amended Complaint), [63] (the "Motion"). Plaintiff Zohra Khorashi filed a Response in Opposition, ECF No. [65], to which Defendants filed a Reply in support of the Motion, ECF No. [66]. Upon due consideration of the parties' written submissions, the pertinent portions of the record, the relevant authorities, and for the reasons stated, the Motion to Dismiss is **GRANTED**.

## I. BACKGROUND

This is a state-law tort action arising out of an online "doxing" incident that preceded Plaintiff's termination from her prior employer, Chartwell Law Offices LLP ("Chartwell"). Defendant Gadi Beer helped launch Chartwell in 2002 and served in

senior leadership roles before leaving the firm in early 2023.[1] ECF No. [60] ¶ 8. Plaintiff alleges, upon information and belief, that he retained an equity interest in the firm and remained in regular contact with its founding partners. *Id.* ¶¶ 8, 11, 14. Defendant Beth Beer, Gadi Beer's wife, is a licensed attorney who served as a Regional Director in the U.S. Department of Education's Office for Civil Rights during the relevant period. *Id.* ¶ 9.

Plaintiff, a Muslim woman of Pakistani origin, was employed as an associate attorney in Chartwell's Miami office from 2018 until her termination on February 29, 2024. *Id.* ¶¶ 7, 10. Throughout her employment, Plaintiff maintained a public Instagram account, "thatlawyermomlife," using her real name and the same profile picture that appeared on Chartwell's website, but her Instagram page did not include any reference to Chartwell or her place of employment. *Id.* ¶ 15. After the October 7, 2023 attack on Israel, Plaintiff began posting prolifically in support of the Palestinian cause. *Id.* ¶¶ 16–17. She alleges she was "well-aware" that her posts "could be misconstrued by some people as antisemitism" and therefore consciously avoided negative references to Jews or Judaism, directing her criticism instead at Israel's government, the IDF, and Zionism. *Id.* ¶ 18. Her account was known to coworkers, some of whom followed and engaged with her content. *Id.* ¶ 19.

---

[1] ECF No. [60] is internally inconsistent as to Gadi Beer's former title. He is referenced as "CFO" in the introduction (¶ 4), but as "CEO" in the parties section and counts (¶¶ 8, 53, 59). This discrepancy does not affect the Court's analysis; both versions place him in senior leadership with knowledge of Plaintiff's employment, which is the more dispositive point.

Beginning in late November 2023, Plaintiff alleges that an account using the handle "Beth Margot" attacked nearly every one of her posts about Gaza. *Id.* ¶ 21. The comments became "increasingly obsessive, vile and hateful," so Plaintiff blocked the account. *Id.* Plaintiff later determined that "Beth Margot" was a pseudonym used by Defendant Beth Beer. *Id.* ¶ 40.

On January 11, 2024, the firm's two founding partners, General Counsel, and HR Director met with Plaintiff, telling her that the firm had been monitoring her posts after unidentified individuals expressed "concerns" that some could be perceived as antisemitic. *Id.* ¶¶ 22–23. In this meeting, Plaintiff was counseled to be "mindful" and "positive" going forward. *Id.* During a second meeting about eight days later, firm leadership raised similar concerns. *Id.* ¶¶ 24–25. Plaintiff contends, however, that at no time was she told any post violated firm policy, asked to remove any post, or directed to stop posting entirely. Plaintiff also notes she posted more than fifty additional times between January 19 and February 29, 2024, but "Chartwell did not find issues with her content during that time frame." *Id.* ¶¶ 23, 26–27, 45.

On February 18, 2024, Plaintiff was "doxed" on an Instagram page called "Jew Hate Database" ("Jewhatedb"), which Plaintiff alleges is operated by the organization StopAntisemitism.org. *Id.* ¶¶ 30, 32. The Jewhatedb Instagram post displayed an altered version of one of Plaintiff's Instagram posts: the page claimed to have "fixed it" by crossing out the pronoun "they" and substituting the word "Jews." *Id.* ¶ 30, Ex. 1. The image did not state Plaintiff's name or employer, but it displayed her

Instagram account handle, on which Plaintiff's real name was disclosed. *Id.* ¶¶ 15, 31 & Ex. 1. The post generated dozens of hostile comments, speculation about where she worked, and demands that her employer fire her. *Id.* ¶ 31.

Plaintiff alleges, upon information and belief, that Defendants "conspired to submit Plaintiff's Instagram post to the Jewhatedb Instagram page and had advance notice" of the February 18 post, and that their "simultaneous appearances in the comments section . . . immediately following the posting" on Jewhatedb served "the sole and improper purpose of providing the critical missing information that was required to launch the doxing attack: Plaintiff's real name and a link to her firm profile." ECF No. [60] ¶ 34. As to the comments themselves, Plaintiff alleges the following sequence:

> (1) A commenter urged others to "find out who this person is and have her fired ... she's a lawyer, should be easy to find her." *Id.* ¶ 35.
>
> (2) Defendant Beth Beer, posting as "Beth Margot," responded that Plaintiff "works at Chartwell Law Offices" and posted a link to Plaintiff's firm profile, which included her work email, telephone number, and the Miami office's contact information. *Id.*
>
> (3) She also commented: "I wonder how her Jewish clients would feel about her public posts. This one is innocuous compared to her regular posts. It's disgraceful." *Id.* ¶ 36.
>
> (4) Defendant Gadi Beer reposted the link to Chartwell Law that "Beth Margot" had originally posted. *Id.*

Plaintiff alleges the reference to her Jewish clients rested on "non-public and highly confidential information ... that only [Beth Beer] and her husband possessed." *Id.* After another commenter stated he "[f]ound her in a second" using the link, Gadi Beer re-posted the same link to Plaintiff's Chartwell profile. *Id.*

Ten days later, on February 28, 2024, Plaintiff was doxed a second time by StopAntisemitism.org's X account, which has more than 237,000 followers and which identified Plaintiff by name and by her position at Chartwell. ECF No. [60] ¶ 41. That afternoon, Plaintiff received dozens of threatening emails, voicemails, and calls at work, and Chartwell began receiving "an overwhelming number" of communications demanding her termination. *Id.* ¶¶ 46–47. The next morning, February 29, 2024, one of the firm's founding partners, its General Counsel, and its HR Manager informed Plaintiff she was being terminated "because the doxing incident on February 28 had resulted in widespread criticism and hostility towards Chartwell Law on its own social media pages," had damaged the firm's reputation and client relationships, and had made some Jewish employees fearful of working with her. *Id.* ¶ 48. Plaintiff alleges that Chartwell "itself referred to" the February 28 doxing incident as "the climactic triggering event" that resulted in her termination. *Id.* ¶ 49. The Amended Complaint does not allege that Defendants authored, contributed to, or had advance knowledge of the February 28 StopAntisemitism.org post, nor that Chartwell viewed Defendants' February 18 comments.

The Amended Complaint asserts four counts: tortious interference with a business relationship against Gadi Beer (Count I) and Beth Beer (Count II), each premised on "submitting one of Plaintiff's social media posts to the doxing website Jewhatedb, and then posting the direct link to Plaintiff's profile at Chartwell Law," *Id.* ¶¶ 54, 60; defamation by implication against Beth Beer only, premised on her

February 18 comment (Count III), *Id.* ¶¶ 64–72; and civil conspiracy with "peculiar power of coercion" against both Defendants (Count IV), *Id.* ¶¶ 73–77. Plaintiff seeks compensatory and punitive damages on each count.

## II. THE INSTANT MOTION

Defendants previously moved to dismiss Plaintiff's initial complaint, which alleged two claims for tortious interference (one against each Defendant). ECF No. [17]. Defendants argued that Plaintiff failed to state a claim because she did not allege unjustified interference or a causal relationship between Defendants' purported interference and her damages. *Id.* at 4–5. Defendants also argued that Plaintiff's claims were barred by Florida's Anti-SLAPP statute, Fla. Stat. § 768.295. *Id.* at 5–6. Following full briefing and oral argument, the Court granted the motion to dismiss in part for failure to state a claim and dismissed the Complaint without prejudice. ECF No. [30]. At oral argument, the Court explained the deficiencies in Plaintiff's tortious interference claims and gave her leave to amend. ECF No. [31].

Plaintiff did so and filed a Corrected First Amended Complaint. ECF No. [60]. Defendants thereafter filed the instant Motion to Dismiss. ECF No. [63]. Defendants raise the same arguments as in their prior motion. That is, Defendants again argue that Corrected First Amended Complaint is barred by Florida's Anti-SLAPP statute on the basis that she raises meritless claims based primarily on protected speech made in connection with a post by a page acting in its reporting function. *Id.* at 5–7. Defendants also argue that the Corrected First Amended Complaint is barred by the

First Amendment, which protects both the publication of truthful, lawfully obtained, publicly available information and expressions of opinion. *Id.* at 7–9.

Further, Defendants argue that all claims fail for lack of causation because Plaintiff's own allegations establish that Chartwell made an independent decision to terminate Plaintiff after months of monitoring, two meetings, and eleven days of inaction following Defendants' comments on an entirely different post. *Id.* at 9–12.

In addition, Defendants argue that each count independently fails as a matter of law. As to Plaintiff's tortious interference claims, Defendants again argue that Florida law prohibits such claims when they are based on truthful information. *Id.* at 12–14. Defendants also argue that Plaintiff's "upon information and belief" allegations that Defendants "conspired to submit Plaintiff's Instagram post to the Jewhatedb Instagram page and had advance notice" of the February 18 post are insufficient. *Id.* at 15. With respect to Plaintiff's claim for defamation by implication, Defendants assert that Plaintiff did not plead special damages, the comment is non-actionable opinion, no reasonable reader would draw the alleged implication, and Plaintiff cannot establish actual malice. *Id.* at 15–19. Lastly, Defendants argue that Plaintiff's civil conspiracy claim fails because it lacks an underlying actionable wrong and factual allegations of an agreement, as well as because the peculiar-power theory is inapplicable. *Id.* at 19–21.

Plaintiff filed a Response in opposition to the Motion. ECF No. [65]. Plaintiff argues that the Anti-SLAPP statute "was never intended to be used as a mechanism to accomplish intentional interference with private employment," and the First

Amendment does not immunize the "weaponization" of truthful information. *Id*. at 3–6. Plaintiff further argues that she sufficiently pleads unjustified interference and asserts that disclosure of truthful information should not negate her tortious inference claims. *Id*. at 6–7, 11–13. Plaintiff also contends that she has sufficiently alleged causation through an escalating sequence of events that Defendants foreseeably set in motion, and that her "upon information and belief" allegations are sufficient because they are supported by other factual allegations. *Id*. at 7–10, 13–14. As for her defamation by implication claim, Plaintiff argues that her claim is adequately pled. *Id*. at 15–16. Finally, Plaintiff asserts that her civil conspiracy claim is sufficient because an independent tort is not required given her allegations that Defendants possessed a peculiar power of persuasion, and a conspiratorial agreement may be inferred from Defendants' coordinated conduct. *Id*. at 16–19.

## III. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court accepts well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor, it is "not bound to accept as true a legal conclusion couched as a factual allegation," nor obligated to make unreasonable inferences. *Id.*

Further, because this Court sits in diversity, it applies state substantive law and federal procedural law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). In doing so, this Court must "ascertain and apply" Florida law as declared by the Florida Supreme Court; but, where that court has not spoken, this Court "must predict how the highest court would decide," *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018) (citing *Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.*, 420 F.3d 1317, 1326 n.5 (11th Cir. 2005). Further, this Court is "bound to adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise." *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1021 (11th Cir. 2014) (quoting *Provau v. State Farm Mut. Auto. Ins. Co.*, 772 F.2d 817, 820 (11th Cir.1985). In making that determination, the Court may consider "such sources as the Restatements of Law, treatises and law review commentary, and the majority rule." *Putman v. Erie City Mfg. Co.*, 338 F.2d 911, 917 (5th Cir. 1964) (quotation omitted); *see also Emergency Recovery, Inc. v. Gov't Emps. Ins. Co.*, 773 F. Supp. 3d 1304, 1315 (M.D. Fla. 2025).

## IV. ANALYSIS

As an initial matter, the Court addresses Defendants' argument that Florida's Anti-SLAPP statute, Fla. Stat. § 768.295, bars this action because it raises only meritless claims based on Defendants' exercise of free speech on a public issue. ECF No. [63] at 5–7. As another court in this District observed when considering a motion to dismiss on these grounds, the Eleventh Circuit has not settled "whether Florida's

Anti-SLAPP statute can be applied to actions in federal court." *Condo. Ass'n of Parker Plaza Ests., Inc. v. Moreff*, No. 22-61638-CIV, 2023 WL 3600495, at *1 (S.D. Fla. Mar. 2, 2023). Here, neither party has addressed the threshold question of whether Florida's Anti-SLAPP statute is an independent basis to dismiss a federal court complaint on the merits. Thus, the Court refrains from ruling on Defendants' Anti-SLAPP arguments.

The Court now turns to Defendants' remaining arguments.

**A. Plaintiff's Tortious Interference Claims Fail as a Matter of Law.**

Under Florida law, a claim for tortious interference with a business relationship requires: (1) the existence of a business relationship under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship. *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994); *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985). Plaintiff has sufficiently alleged the first two elements, as she plausibly pleads an existing, identifiable employment relationship and both Defendants' knowledge of it. *See* ECF No. [60] ¶¶ 10, 53, 59. Nonetheless, Counts I and II fail to state a claim because truthful information cannot constitute unjustified interference.

The Second Restatement of Torts states:

> One who intentionally causes a third person not to perform a contract or not to enter into a prospective contractual relation with another does not improperly interfere with

> the other's contractual relation, by giving the third person
> (a) truthful information …

Restatement (Second) of Torts § 772. The Eleventh Circuit recognized this principle in *Worldwide Primates, Inc. v. McGreal*, 26 F.3d 1089 (11th Cir. 1994). In *Worldwide Primates*, the defendant obtained government inspection reports documenting the plaintiff's treatment of its animals, excerpted their most damaging portions, and mailed them to the plaintiff's prospective business partner with a cover letter designed to end the relationship. *Id.* at 1090. The plaintiff brought suit for tortious interference with an advantageous business relationship, which the defendant moved to dismiss. *Id.* The Eleventh Circuit held that the plaintiff's opposition to the motion to dismiss warranted Rule 11 sanctions because the plaintiff "could not reasonably have believed, as required by Rule 11, that its claim was well grounded in fact or law." *Id.* at 1093.

The *Worldwide Primates* court reasoned that the plaintiff "could establish no cause of action for interference with its business relationship ... when all [the defendant] did was give [the recipient] truthful information." *Id.* at 1092. In so doing, the Court relied upon § 772 of the Restatement (Second) of Torts, as well as the comment to it, which states that:

> There is of course no liability for interference with a contract or with a prospective contractual relation on the part of one who merely gives truthful information to another. The interference in this instance is *clearly not improper*. This is true even though the facts are marshaled in such a way that they speak for themselves and the person to whom the information is given immediately recognizes them as a reason for breaking his contract or refusing to deal with another.

Restatement (Second) of Torts § 772, cmt. b. (1979) (emphasis added). Importantly, the Eleventh Circuit recognized that "[t]his rule seems to reflect the law of Florida." *Id*. at 1092 (citing *Gutierrez v. Ocean Bank*, 594 So. 2d 827, 2828 (Fla. 3d DCA 1992) (per curiam); *Rose v. Stroock & Stroock & Lavan*, 441 So.2d 172 (Fla. 3d DCA 1983) (per curiam); *The Florida Bar Standard Jury Instructions Civil 85-1*, 475 So.2d 682, 691 (Fla. 1985)).

Courts in this circuit have consistently applied this rule to bar tortious interference claims. *See Wesley Fin. Grp., LLC v. Westgate Resorts, Ltd.*, 746 F. Supp. 3d 1342, 1359 (M.D. Fla. 2024) ("A plaintiff cannot be successful in a tortious interference case if the defendant merely gave a third party truthful information"); *Cherestal v. Sears Roebuck & Co.,* 2014 WL 644727, at *4-5 (M.D. Fla. Feb. 19, 2014) (recognizing that "a plaintiff cannot be successful in a tortious interference case if the defendant merely gave a third party truthful information" and holding that actions of the defendant's employee in "providing [plaintiff's employer] with truthful information were justified."). Indeed, the Eleventh Circuit recently reaffirmed this principle when it stated that "[a] plaintiff cannot establish a cause of action in a tortious interference case if the defendant merely provided truthful information to a third party." *Commodores Entm't Corp. v. McClary*, 822 F. App'x 904, 914 (11th Cir. 2020) (citing *Worldwide Primates,* 26 F.3d at 1092).

Here, the Amended Complaint makes clear that the tortious conduct alleged is the provision of truthful information, which cannot constitute tortious interference. Plaintiff alleges that Defendants took two actions amounting to unjustified

interference: (1) "submitting one of Plaintiff's social media posts to the doxing website Jewhatedb" and (2) "posting the direct link to Plaintiff's profile at Chartwell Law in response to a request to 'find out who this person is and have her fired' . . . ."). ECF No. [60] ¶¶ 54, 60. Even taking these allegations as true, they are insufficient to state a claim for relief.

In particular, Plaintiff does not dispute that the Instagram post submitted to Jewhatedb was her actual Instagram post. Indeed, Plaintiff nowhere alleges that Defendants altered her Instagram post. To the contrary, Plaintiff affirmatively alleges that a third party—Jewhatedb—did so. *Id.* ¶ 30 ("To falsely portray Plaintiff as antisemitic, *Jewhatedb* claimed to have 'fixed it' a post from her Instagram page condemning the perpetrators of violence against Gaza by crossing out and replacing the pronoun "they" with the word 'Jews.'") (emphasis supplied). Similarly, Plaintiff does not dispute that the link to her publicly available firm profile was accurate and portrayed truthful information. *Id.* ¶ 35. To be sure, Plaintiff alleges that a commentator "exclaimed that he 'Found her [Plaintiff] in a second' with the link" provided. *Id.* ¶ 36.

Plaintiff contends that "[e]ven otherwise lawful or truthful conduct may constitute tortious interference when undertaken out of spite, ill will, or for an improper purpose rather than to protect a legitimate interest." ECF No. [65] at 11. That said, the cases that Plaintiff cites in support do not stand for this proposition and are factually distinguishable. In particular, Plaintiff relies upon *Tamiami Trail Tours, Inc. v. Cotton*, but there the Florida Supreme Court rejected a requirement

that a plaintiff show "the interference was intended to secure a business advantage over the plaintiff" because "we see no logical reason why one who damages another in his business relationships should escape liability because his motive is malice rather than greed." 463 So.2d 1126, 1127–28 (Fla. 1985). Plaintiff does not allege that Defendants tortiously interfered to secure a business advantage. Next, Plaintiff cites to *Walters v. Blankenship* which involved the provision of *false* information. 931 So.2d 137 (Fla. 5th DCA 2006). In *Walters*, the court found that the plaintiffs stated a claims for tortious interference with a prospective business advantage where they alleged that the defendants posted "for sale" signs when "their units were not for sale and their signs were removed as soon as the last of the [plaintiffs'] units was sold." *Id*. at 140. Plaintiff's citation to *Salit v. Ruden*, 742 So.2d 381 (Fla. 4th DCA 1999), is likewise unavailing. In *Salit*, the court evaluated "the 'privilege to interfere' enjoyed by an officer or employee of a contracting party." *Id*. at 386. The *Salit* court noted that this privilege is "destroyed where an employee acts solely with ulterior purposes, without an honest belief that his actions would benefit the employer, and the employee's conduct concerning the contract or business relationship is not in the employer's best interest." That is not the case here, as neither Defendant is alleged to have acted as an employee or officer of a contracting party.

Notably, *Worldwide Primates* demonstrates that truthful information is non-actionable interference regardless of motive. In *Worldwide Primates*, the activist's letters were expressly designed to end the plaintiff's business relationship, yet the Eleventh Circuit still held that the plaintiff's tortious interference claim had no basis

in law because the information was truthful. 26 F.3d at 1093. Defendants' conduct is a step removed from the conduct at issue in *Worldwide Primates* because there, the defendant mailed his information directly to the plaintiff's client whereas here, Defendants posted public information in a comment thread that Plaintiff does not allege her employer ever saw.

In sum, the tortious conduct alleged here is materially indistinguishable from the conduct held non-actionable in *Worldwide Primates*. In both cases, the defendants selected truthful information and delivered it to an audience primed to act upon it with the alleged intent to damage the plaintiff's business relationship. Under Florida law, Defendants' provision of truthful information cannot state a claim for tortious interference with a business relationship. *See Worldwide Primates*, 26 F.3d at 1092; *Cherestal*, 2014 WL 644727, at *5 (actions of defendant's employee in providing truthful information to plaintiff's employer that "cast [plaintiff] in a negative light with [her employer], which led to her termination" did not constitute unjustified interference). Accordingly, Counts I and II of the Amended Complaint fail to state a claim for relief.[2]

---

[2] Plaintiff fails to state a claim for tortious interference for another reason. She alleges that Chartwell told her she was being terminated "because the doxing incident on February 28 had resulted in widespread criticism and hostility towards Chartwell Law," and that Chartwell itself called the February 28 attack "the climactic triggering event" that resulted in her termination. ECF No. [60] ¶¶ 48–49. According to the Amended Complaint, though, Defendants' comments appear only on the February 18 Jewhatedb post. *Id.* ¶¶ 34–36. In her Response, Plaintiff contends that "the challenged conduct need not be the sole or primary cause of the harm." ECF No. [65] at 8 (citing cases). In any event, Florida law requires that a defendant directly interfere with the business relationship as "[t]here is no such thing as a cause of action for interference which is only negligently or consequentially effected." *Ethyl*

Given that there is no dispute that the information Defendants allegedly provided or posted was true, there are no facts Plaintiff could allege that would render Defendants' actions viable tortious interference. Notably, the Court previously warned Plaintiff that "one of the deficiencies that have to be addressed . . . [is] that truthful information can't constitute tortious interference." ECF No. [31] at 17:21–24. The Court also explained that Plaintiff's response and supporting cases, which she repeats here, are insufficient. *Id.* at 17:25–18:2 ("You respond that it can if it's done with malice or a[n] [il]legitimate purpose. I just note for the record that the cases you cite don't hold that."). Despite this guidance, Plaintiff has been unable to cure this deficiency in her tortious interference claims. Accordingly, Counts I and II are dismissed with prejudice because any further amendment would be futile.

---

*Corp. v. Balter*, 386 So.2d 1220, 1223–24 (Fla. 3d DCA 1980) ("proof of a direct interference with [the] agreement . . . is indispensible to the existence of an actionable wrong."); *see also Peninsula Fed. Sav. & Loan Ass'n v. DKH Prop., Ltd.*, 616 So.2d 1070, 1073 n.4 ("Even if it is assumed that the Peninsula–OCE agreement created some indirect interference with the OCE-borrower agreement . . . 'such conduct does not meet the requirements of the *intentional* tort of interference. There is no such thing as a cause of action for interference which is only negligently or consequentially effected. *Restatement (Second) of Torts* § 766C (1979)" (quoting *Ethyl Corp.*, 386 So.2d at 1223–24)). The Amended Complaint contains no allegations that Defendants communicated with Chartwell; rather Plaintiff's path from Defendants' February 18 comments to her February 29 termination runs through the conduct of others. ECF No. [60] ¶¶ 22–27, 33, 41–44. Plaintiff has alleged, "at most, that steps taken by [Defendants] very indirectly led to [her termination] . . . such conduct simply does not meet the requirements of the intentional tort of interference." *Ethyl Corp.*, 386 So.2d at 1223–24. The Court previously brought this deficiency to Plaintiff's attention during oral argument on Defendants' initial motion to dismiss, where the Court observed that "the law firm ended up acting upon totally different comments that the Beers have nothing to do with." ECF No. [31] at 13:20–22. As explained herein, Plaintiff has failed to cure this pleading defect.

### B. Plaintiff's Defamation by Implication Claim Fails as a Matter of Law.

In Count III, Plaintiff alleges that Defendant Beth Beer defamed Plaintiff by implication when she commented on the February 18 Jewhatedb post: "I wonder how her Jewish clients would feel about her public posts. This one is innocuous compared to her regular posts. It's disgraceful." ECF No. [60] ¶¶ 36, 65. Plaintiff alleges that, in context, the comment falsely implied that she is "a virulent and irredeemable antisemite" unfit to represent Jewish clients. *Id.* ¶¶ 66–70.

Defamation by implication is not a freestanding tort; it is "a well-recognized species of defamation" that is "subsumed within the tort of defamation." *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). Whether a defendant's statements constitute defamation by implication is a question of law. *Turner v. Wells*, 879 F.3d 1254, 1269 (11th Cir. 2018 (citing *Brown v. Tallahassee Democrat, Inc.*, 440 So. 2d 588, 590 (Fla. 1st DCA 1983)). A plaintiff proceeding on an implication theory must therefore plead the same five elements as any defamation claim: (1) publication; (2) falsity; (3) that the actor acted with knowledge or reckless disregard as to the falsity on a matter concerning a public figure, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) a statement that is defamatory. *Id.*; *Ozyesilpinar v. Reach PLC*, 365 So. 3d 453, 458 (Fla. 3d DCA 2023). "Defamation by implication arises, not from what is stated, but from what is implied when a defendant (1) juxtaposes a series of facts so as to imply a defamatory connection between them, or (2) creates a defamatory implication by omitting facts." *Klayman v. Jud. Watch, Inc.*, 22 F. Supp. 3d 1240, 1255 (S.D. Fla. 2014) (citing *Jews*

*for Jesus,* 997 So. 2d at 1106). Unlike a statement of fact, pure opinion is "not readily capable of being proven false." *Turner*, 879 F.3d at 1262.

Here, the implication on which Count III rests is an opinion, and the claim thus fails as a matter of law. The implication Plaintiff pleads that she "was a virulent and irredeemable antisemite … unfit as an attorney to represent any Jewish clients," ECF No. [60] ¶ 66, is a subjective characterization of her publicly available posts, not a verifiable assertion of fact. "Whether an accusation of bigotry is actionable depends on whether the statement appeared to be supported by reasonably specific facts that are capable of objective proof of truth or falsity." *Ward v. Zelikovsky*, 136 N.J. 516, 543 (N.J. 1994). That is not the case here.

Plaintiff alleges that her posts are criticisms of Israel's government rather than its people, while Defendant Beth Beer allegedly reads them to mean she is an "antisemite." *Id.* ¶¶ 18, 66. Yet, neither reading of the same public posts can be proven true or false because it is a subjective assessment and thus, an opinion. *Turner*, 879 F.3d at 1264 (a "subjective assessment" of conduct "is not readily capable of being proven true or false"); *see also Trump v. Cable News Network, Inc.,* 2025 WL 3213203, at *1–2 (11th Cir. Nov. 18, 2025) (affirming Rule 12(b)(6) dismissal with prejudice of defamation claim where the implication carried by the phrase "Big Lie," namely to associate the plaintiff "with Hitler and Nazi propaganda," was a "subjective assessment" of the plaintiff's conduct "not readily capable of being proven true or false") (citing *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1252 (11th Cir. 2021)). In other words, Plaintiff's conduct at issue in Defendant Beth

Beer's February 18 comment—that is, Plaintiff's Instagram posts—"is susceptible to multiple subjective interpretations" and, as the Eleventh Circuit has repeatedly recognized, "one person's 'subjective assessment' is not rendered false by another person's 'different conclusion.'" *Trump*, 2025 WL 3213203, at *1 (citing *Turner*, 879 F.3d at 1264).

As a result, even viewing the allegations in the light most favorable to Plaintiff, she fails to state a claim for defamation because the implication is a subjective characterization of Plaintiff's publicly available posts that cannot be proven true or false. *See Ward v. Zelikovsky*, 136 N.J. 516, 543 (N.J. 1994) (accusation that plaintiffs "hate Jews" was non-actionable slander); *Trump*, 2025 WL 3213203, at *2 (plaintiff failed to "adequately allege the falsity of [defendant's] statements" because "[defendant's] subjective assessment of [plaintiff's] conduct is not readily capable of being true or false."). Plaintiff cannot cure this deficiency through further amendment because the comment Defendant Beth Beer published will remain the same, and the implication it conveys will remain an expression of opinion as a matter of law. Accordingly, Count III is dismissed with prejudice.

### C. Plaintiff Does Not Allege Sufficient Facts to State a Plausible Claim for Civil Conspiracy.

Count IV of the Amended Complaint alleges that Defendants conspired to terminate Plaintiff's employment by using the affiliated Jewhatedb and StopAntisemitism.org platforms and, by so doing, Defendants acquired a "peculiar power of coercion" which gives rise to an independent tort for conspiracy. ECF No. [60] ¶¶ 74–77. To state a claim for civil conspiracy under Florida law, a plaintiff must

allege: "(a) a conspiracy between parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts performed pursuant to the conspiracy." *Great Am. Insurance Company v. Pino Kaoba & Associates*, Inc., 2009 WL 10668191, at *5 (S.D. Fla. May 11, 2009); *Walters v. Blankenship*, 931 So.2d 137, 140 (Fla. 5th DCA 2006); *Florida Fern Growers Ass'n, Inc. v. Concerned Citizens of Putnam County*, 616 So.2d 562 (Fla. 5th DCA 1993). In any event, civil conspiracy is not an independent tort and thus requires an underlying actionable wrong. *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997). Indeed, "the gravamen of a civil conspiracy is the underlying tort carried out by virtue of the conspiracy." *Rashada v. Hathcock*, 780 F. Supp. 3d 1212, 1231 (N.D. Fla. 2025). In other words, a conspiracy claim must rest on the wrong actually pleaded, not on a different tort. *Id.*

Florida recognizes a narrow exception and allows civil conspiracy to be an independent tort where the plaintiff can show a "peculiar power of coercion" possessed by the conspirators by virtue of their combining forces; importantly, this must be a power that no individual acting alone would possess. *Churruca v. Miami Jai-Alai, Inc.*, 353 So. 2d 547, 550 (Fla. 1977) ("[I]f the plaintiff can show some peculiar power of coercion possessed by the conspirators by virtue of their combination, which power an individual would not possess, then conspiracy itself becomes an independent tort."); *Snipes v. W. Flagler Kennel Club, Inc.*, 105 So. 2d 164, 166 (Fla. 1958) ("[I]n order to prove an independent tort for conspiracy upon the basis of 'Mere force of numbers acting in unison,' it must be shown that there was some 'peculiar power of

coercion' of the plaintiff possessed by the defendants in combination which any individual standing in a like relation to the plaintiff would not have had.") (citation omitted). "The essential elements of this tort are a malicious motive and coercion through numbers or economic influence." *Churruca,* 353 So. 2d at 550.

Here, Plaintiff's conspiracy claim fails for two reasons. *First*, Plaintiff has not sufficiently alleged the "core" of a civil conspiracy claim—an agreement. *Mickens v. Tenth Jud. Circuit*, 181 F. App'x 865, 876 (11th Cir. 2006) ("The core of a conspiracy claim is an agreement between the parties; thus, where the plaintiff fails to allege an agreement, the pleading is deficient.") According to the Amended Complaint:

> [u]pon information and belief, Defendants Gadi and Beth Beer conspired to submit Plaintiff's Instagram post to the Jewhatedb Instagram page and had advance notice that [Plaintiff] was going to be 'exposed' as an alleged antisemite and Jew hater on February 18, 2024. Their simultaneous appearances in the comments section of Jewhatedb immediately following the posting was for the sole and improper purpose of providing the critical missing information that was required to launch the doxing attack: Plaintiff's real name and a link to her Firm profile at Chartwell Law.

ECF No. [60] ¶ 34. There are no facts alleged that give rise to a reasonable inference that Defendants had "advance notice that [Plaintiff] was going to be exposed." The Court need not accept conclusory allegations as true. Similarly, Plaintiff's allegation that both Defendants commented on the February 18 Jewhatedb post close in time does not give rise to a reasonable inference of an agreement because it is equally possible that they did so independently of one another. "[T]o nudge a claim 'across the line from conceivable to plausible,' a plaintiff must plead facts that, if true, 'allo[w] the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged,' and to rule out 'obvious alternative explanation[s]' for the defendant's conduct." *Hikma Pharm. USA Inc. v. Amarin Pharma, Inc.*, 146 S. Ct. 1391, 1400 (2026) (citations omitted).

Nor does Plaintiff plead facts from which the Court can reasonably infer that either Defendant agreed with the Jewhatedb or StopAntisemitism.org platform to work together to achieve Plaintiff's termination. For example, Plaintiff fails to allege any communications between Defendants and the administrators of these platforms. Importantly, there are no allegations that the February 28 StopAntisemitism.org X post—which Plaintiff alleges was the basis for her termination, ECF No. [60] ¶ 48—even contained a communication from Defendants. "[T]he linchpin for conspiracy is agreement, which presupposes communication." *Bailey v. Bd. of Com'ty Comm'rs of Alachua County*, 956 F.2d 1112, 1122 (11th Cir. 1992).

Moreover, even if Plaintiff sufficiently alleged an agreement, her civil conspiracy claim still fails because it is not based on an actionable underlying tort given that the Court has dismissed Counts I–III with prejudice for the reasons explained above. Although Plaintiff alleges that Defendants possessed a peculiar power of coercion, thereby relieving her of the underlying tort requirement, ECF No. [60] ¶ 77, other allegations of the Amended Complaint contradict this assertion. Plaintiff affirmatively alleges that "there was a possibility that the commentators calling for Plaintiff's termination would eventually discover the information themselves," ECF No. [60] ¶ 35, given that Plaintiff's real name appeared on her public Instagram page. Plaintiff also alleges that a commentator "exclaimed that he

'Found [Plaintiff] in a second' with the link provided," *id.* ¶ 36, which demonstrates that Defendants could have carried out the act alone, possessing the same power together as they would have separately.

While Plaintiff alleges that Defendants "utilized" the Jewhatedb and StopAntisemitism.org platforms "to publicly expose Plaintiff as an alleged Jew hater and antisemite . . . and ultimately interfere with her employment relationship with Chartwell Law," *id.* ¶ 76, the Amended Complaint is devoid of facts showing that Defendants submitted Plaintiff's Instagram post to either platform. Plaintiff merely alleges "[u]pon information and belief" that Defendants "conspired to submit Plaintiff's Instagram post to the Jewhatedb Instagram page . . . ." ECF No. [60] ¶ 34. Even if the Jewhatedb Instagram post interfered with Plaintiff's employment—Plaintiff does not allege that it did—this allegation is insufficient to survive a motion to dismiss. "Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard." *Phoenix Entm't Partners, LLC v. Orlando Beer Garden, Inc.*, No. 6:16-cv-80, 2016 WL 1567590, at *5 (M.D. Fla. Mar. 30, 2016) (quotation marks and citation omitted).

The only fact Plaintiff alleges is that each Defendant commented on the February 18 Jewhatedb Instagram post. However, Plaintiff alleges that Chartwell terminated her because of the StopAntisemitism.org doxing incident on February 28—not the February 18 Jewhatedb Instagram post. ECF No. [60] ¶ 48. As such, Defendants' February 18 comments do not support the inference that they possessed

a peculiar power of coercion by combining forces with each other or with Jewhatedb to achieve Plaintiff's termination. Further, Defendants' actions in commenting on the February 18 Jewhatedb Instagram post alone cannot give rise to a reasonable inference of "coercion through numbers or economic influence" lest every person who comments on a public Instagram post automatically becomes a co-conspirator. It bears repeating that "peculiar power of coercion" is a "narrow exception." *Churruca*, 353 So.2d at 550.

For these reasons, Count IV fails to state a claim for civil conspiracy. The Court notes that Plaintiff has not requested leave to amend in the event that Defendants' Motion to Dismiss is granted. Accordingly, Count IV is dismissed without prejudice and without leave to amend.

## V. CONCLUSION

For the reasons stated, it is hereby **ORDERED AND ADJUDGED** that Defendants' Motion, ECF No. [63], is **GRANTED** as follows:

1. Counts I, II, and III of the Corrected First Amended Complaint, ECF No. [60], are **DISMISSED WITH PREJUDICE**.
2. Count IV is **DISMISSED WITHOUT PREJUDICE**.
3. The Clerk is directed to **CLOSE** this case.
4. The Court will issue its ruling regarding the nature of any other sanctions to be imposed in connection with Defendants' Motion for Sanctions by separate order. *See* ECF No. [78], *Paperless Order*

*Memorializing Hearing*.

**DONE AND ORDERED** in Miami, Florida, this 27th day of August, 2026.

**JACQUELINE BECERRA**
**UNITED STATES DISTRICT JUDGE**